DONALD M. FALK (State Bar No. 150256)
  dfalk@mayerbrown.com
RENA CHNG (State Bar No. 209665)
  rchng@mayerbrown.com
MAYER BROWN LLP
Two Palo Alto Square
3000 El Camino Real, Suite 300
Palo Alto, CA 94306-2112
Telephone: (650) 331-2000
Facsimile: (650) 331-2060
          - and -
VICTORIA R. COLLADO (*pro hac vice*)
  vcollado@mayerbrown.com
SARAH E. REYNOLDS (*pro hac vice*)
  sreyholds@mayerbrown.com
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL  60606
Telephone:    (312) 701-0700
Facsimile:    (312) 701-7711

Attorneys for Defendant
AT&T MOBILITY LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| ZOLTAN STIENER and YNEZ STIENER,<br><br>            Plaintiffs,<br><br>  v.<br><br>APPLE COMPUTER, INC., AT&T MOBILITY, LLC, and DOES 1 through 50, inclusive,<br><br>            Defendants. | Case No.: C 07-04486 SMA<br><br>**DECLARATION OF VICTORIA R. COLLADO IN SUPPORT OF DEFENDANT AT&T MOBILITY LLC'S MOTION TO STAY ITS OBLIGATIONS UNDER THE COURT'S INITIAL SCHEDULING ORDER PENDING RESOLUTION OF ITS SOON-TO-FILED MOTION TO COMPEL ARBITRATION**<br><br>Date:  February 5, 2008<br>Time:  1:00 p.m.<br>Ctrm:  400<br>Judge:  Honorable Saundra B. Armstrong |

Dockets.Justia.com

I, Victoria R. Collado, do hereby declare:

1.  I am Counsel with the law firm of Mayer Brown LLP, and I am one of the attorneys representing defendant AT&T Mobility, LLC ("ATTM") in this action. I have personal knowledge of the matters stated herein, and, if called upon, I could and would testify thereto.

2.  On October 16, 2007, I called plaintiffs' counsel to request that plaintiffs consent to stay the responsibilities outlined in the Court's Order Setting Initial Case Management Conference and ADR Deadlines ("Initial Scheduling Order") pending the resolution of ATTM's soon-to-be filed motion to compel arbitration. Plaintiffs' counsel would not consent to this request, although he did agree to a stay of the deadlines specified in the Initial Scheduling Order pending resolution of this motion—i.e., ATTM's motion to stay its obligations under the Initial Scheduling Order.

3.  No party to this case has previously requested any extension of the deadlines provided in the Court's Initial Scheduling Order. Plaintiffs and ATTM have on two occasions stipulated to an extension of time for ATTM to respond to the Complaint. *See* Docket Nos. 10, 22.

4.  Attached hereto as Exhibit 1 is a true and correct copy of AT&T's Terms of Service.

5.  Attached hereto as Exhibit 2 is a true and correct copy of the Order entered on October 10, 2007, in the matter *Trujillo vs. Apple Computer, Inc. et al.*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed at Chicago, Illinois this 6th day of November 2007.

/s/ Victoria R. Collado
Victoria R. Collado

*Filer's Attestation:  Pursuant to General Order No. 45, I, Rena Chng, attest that I obtained concurrence in the filing of this document from the signatory.*

# EXHIBIT 1

# Terms of Service



The new at&t
Your world. Delivered.

# TABLE OF CONTENTS

| | |
|---|---|
| Terms of Service | 1 |
| Service Commitment; Early Termination Fee | 1 |
| 30-Day Cancellation Period/Termination | 2 |
| Charges and Disputes | 2-3 |
| Authority to Use | 3-4 |
| Unlimited Voice Services | 4 |
| Off-Net Usage | 4 |
| Billing and Payment | 4-6 |
| Dishonored Checks and Other Instruments | 6 |
| Changes to Terms and Rates | 6-7 |
| Contingent Benefits | 7-8 |
| Equipment | 8 |
| Advance Payments and/or Deposits | 8-9 |
| Late Payment Charges | 9 |
| Service Limitations; Limitation of Liability | 9-11 |
| Account Access | 11 |
| Voicemail Service | 11 |
| Dispute Resolution by Binding Arbitration | 11-12 |
| Arbitration Agreement | 12-15 |
| Miscellaneous | 16 |
| Questions About Your Service | 16-17 |

# TERMS OF SERVICE

"AT&T" or "we," "us" or "our" refers to AT&T Mobility, LLC, acting on behalf of its FCC-licensed affiliates doing business as AT&T. "You" or "your" refers to the person or entity that is the customer of record. PLEASE READ THIS AGREEMENT CAREFULLY TO ENSURE THAT YOU UNDERSTAND EACH PROVISION. **This Agreement requires the use of arbitration to resolve disputes and also limits the remedies available to you in the event of a dispute.**

## SERVICE COMMITMENT; EARLY TERMINATION FEE

Your Service Commitment begins on the day we activate your service. You have received certain benefits from us in exchange for any Service Commitment greater than one month. If we terminate your service for nonpayment or other default before the end of the Service Commitment, or if you terminate your service for any reason other than (a) in accordance with the cancellation policy; or (b) pursuant to a change of terms, conditions, or rates as set forth below, you agree to pay us with respect to each Equipment identifier or telephone number assigned to you, in addition to all other amounts owed, an Early Termination Fee of $175 ("Early Termination Fee"). The Early Termination Fee is not a penalty, but rather a charge to compensate us for your failure to satisfy the Service Commitment on which your rate plan is based. AFTER YOUR SERVICE COMMITMENT, THIS AGREEMENT SHALL AUTOMATICALLY RENEW ON A MONTH-TO-MONTH BASIS UNTIL EITHER PARTY GIVES NOTICE PURSUANT TO THE TERMINATION PROVISION BELOW.

1

## 30-DAY CANCELLATION PERIOD/TERMINATION

You may terminate this Agreement within thirty (30) days after activating service without paying an Early Termination Fee. You will pay for service fees and charges incurred through the termination date, but AT&T will refund your activation fee, if any, if you terminate within three (3) days of activating the service. Also, you may have to return any handsets and accessories purchased with this Agreement. If you terminate after the 30th day but before expiration of the Agreement's Service Commitment, you will pay AT&T an Early Termination Fee for each wireless telephone number associated with the service. Either party may terminate this Agreement at any time after your Service Commitment ends with thirty (30) days notice to the other party. We may terminate this Agreement at any time without notice if we cease to provide service in your area. We may interrupt or terminate your service without notice for any conduct that we believe violates this Agreement or any terms and conditions of your rate plan, or if you behave in an abusive, derogatory, or similarly unreasonable manner with any of our representatives, or if we discover that you are underage, or if you fail to make all required payments when due, or if we have reasonable cause to believe that your Equipment is being used for an unlawful purpose or in a way that may adversely affect our service, or if you provided inaccurate credit information or we believe your credit has deteriorated and you refuse to pay any requested advance payment or deposit.

## CHARGES AND DISPUTES

You are responsible for paying all charges for or resulting from services provided under this Agreement. You will receive monthly bills that are due in full as shown thereon. YOU MUST, WITHIN 100 DAYS OF THE DATE OF THE BILL, NOTIFY US IN WRITING AT AT&T, BILL DISPUTE, SUITE 1400, 5565 GLENRIDGE CONNECTOR, P.O. BOX 16, ATLANTA, GA 30342 ("AT&T'S ADDRESS") OF ANY DISPUTE YOU HAVE WITH RESPECT TO THE BILL, INCLUDING ANY CHARGES ON THE BILL AND ANY SERVICE WE PROVIDED FOR WHICH YOU WERE

2

BILLED, OR YOU WILL HAVE WAIVED YOUR RIGHT TO DISPUTE THE BILL OR SUCH SERVICES AND TO BRING, OR PARTICIPATE IN, ANY LEGAL ACTION RAISING ANY SUCH DISPUTE. Charges include, without limitation, airtime, roaming, recurring monthly service, activation, administrative, and late payment charges; regulatory cost recovery and other surcharges; optional feature charges; toll, collect call and directory assistance charges; restoral and reactivation charges; any other charges or calls billed to your phone number; and applicable taxes and governmental fees, whether assessed directly upon you or upon AT&T. To determine your primary place of use ("PPU") and which jurisdiction's taxes and assessments to collect, you are required to provide us with your residential or business street address. If you do not provide us with such address, or if it falls outside our licensed service area, we may reasonably designate a PPU within the licensed service area for you. Subscriber must live and have a mailing address within AT&T's owned network coverage area.

**AUTHORITY TO USE**

You are responsible for all devices containing a SIM assigned to your account. Except if your device is reported lost or stolen, if those devices are used by others, you are responsible for such usage, and you are giving those users your authority 1) to order goods and services from the devices, such as ringtones and other downloads, and 2) to give any consent required for those goods and services, such as the consent to use that user's location information to deliver customized information to that user's device, or to make any representation required for those goods and services, including a representation of the user's age, if requested. Certain usage by others on your account can be restricted by use of parental controls or similar features offered from time to time by us. Check our website for details.

In some cases our directory assistance service (411) will use the location of a device to deliver relevant customized information based upon the user's request. By using this

3

service, you are consenting to our use of your location information for such purpose.

## UNLIMITED VOICE SERVICES

Unlimited voice services are provided solely for live dialog between two individuals. Unlimited voice services may not be used for conference calling, call forwarding, monitoring services, data transmissions, transmission of broadcasts, transmission of recorded material, or other connections which do not consist of uninterrupted live dialog between two individuals. If AT&T finds that you are using an unlimited voice service offering for other than live dialog between two individuals, AT&T may, at its option terminate your service or change your plan to one with no unlimited usage components. AT&T will provide notice that it intends to take any of the above actions, and you may terminate the agreement.

## OFF-NET USAGE

If your minutes of use (including unlimited services) on other carrier networks ("off-net usage") during any two consecutive months exceed your off-net usage allowance, AT&T may, at its option terminate your service, deny your continued use of other carriers' coverage or change your plan to one imposing usage charges for off-net usage. Your off-net usage allowance is equal to the lesser of 750 minutes or 40% of the Anytime Minutes included with your plan. AT&T will provide notice that it intends to take any of the above actions, and you may terminate the agreement.

## BILLING AND PAYMENT

Except as provided below, monthly service and certain other charges are billed one month in advance, and there is no proration of such charges if service is terminated on other than the last day of your billing cycle. Monthly service and certain other charges are billed in arrears if you are a former customer of AT&T Wireless and maintain uninterrupted service on select AT&T rate plans, provided, however, that in either case, if you elect to receive your

4

bills for your AT&T services combined with your landline phone bill (where available) you will be billed in advance as provided above. You agree to pay for incoming and outgoing calls, and data services sent to and from your Equipment. AIRTIME AND OTHER MEASURED USAGE ("CHARGEABLE TIME") IS BILLED IN FULL-MINUTE INCREMENTS, AND ACTUAL AIRTIME AND USAGE ARE ROUNDED UP TO THE NEXT FULL-MINUTE INCREMENT AT THE END OF EACH CALL FOR BILLING PURPOSES. AT&T CHARGES A FULL MINUTE OF AIRTIME USAGE FOR EVERY FRACTION OF THE LAST MINUTE OF AIRTIME USED ON EACH WIRELESS CALL. DATA TRANSPORT IS BILLED IN FULL-KILOBYTE INCREMENTS, AND ACTUAL TRANSPORT IS ROUNDED UP TO THE NEXT FULL-KILOBYTE INCREMENT AT THE END OF EACH DATA SESSION FOR BILLING PURPOSES. AT&T CHARGES A FULL KILOBYTE OF DATA TRANSPORT FOR EVERY FRACTION OF THE LAST KILOBYTE OF DATA TRANSPORT USED ON EACH DATA SESSION. NETWORK OVERHEAD, SOFTWARE UPDATE REQUESTS, AND RESEND REQUESTS CAUSED BY NETWORK ERRORS CAN INCREASE MEASURED KILOBYTES. If you select a rate plan that includes a predetermined allotment of services (for example, a predetermined amount of airtime, megabytes or text messages), unless otherwise specifically provided as a part of such rate plan, any unused allotment of services from one billing cycle will not carry over to any other billing cycle. We may bill you in a format as we determine from time to time. Additional charges may apply for additional copies of your bill, or for detailed information about your usage of services. Charges for usage of services on networks maintained by other carriers or on networks acquired by AT&T after August 31, 2004, may appear on your bill after the billing cycle in which the usage occurred. Chargeable Time begins for outgoing calls when you press SEND (or similar key) and for incoming calls when a signal connection from the caller is established with our facilities. Chargeable Time ends after you press END (or similar key), but not until your wireless telephone's signal of call disconnect is received by our facilities and the call disconnect signal has been confirmed. All outgoing calls for which we receive answer supervision or which have at least 30 seconds of Chargeable Time, including ring time, shall incur a minimum of one minute airtime charge. Answer

**5**

supervision is generally received when a call is answered; however, answer supervision may also be generated by voicemail systems, private branch exchanges, and interexchange switching equipment. Chargeable Time may include time for us to recognize that only one party has disconnected from the call, time to clear the channels in use, and ring time. Chargeable Time may also occur from other uses of our facilities, including by way of example, voicemail deposits and retrievals, and call transfers. Calls that begin in one rate period and end in another rate period may be billed in their entirety at the rates for the period in which the call began. If your wireless phone or other device ("Equipment") is lost or stolen, you must contact us immediately to report the Equipment lost or stolen. You may be responsible for all charges incurred on your phone number until you report the theft or loss. You will cooperate with us in the investigation of the loss or theft and will provide a police report number to us if requested. AT&T will take into account the information provided by the customer to evaluate on an individual basis whether grounds exist for further relief. You also remain responsible for paying your monthly service fee if your service is suspended for nonpayment. We may require payment by money order, cashier's check, or a similarly secure form of payment at our discretion.

**DISHONORED CHECKS AND OTHER INSTRUMENTS**

We will charge you $30 or the highest amount allowed by law, whichever is less, for any check or other instrument (including credit card chargebacks) tendered by you and returned unpaid by a financial institution for any reason. You agree to reimburse us the fees of any collection agency, which may be based on a percentage at a maximum of 33% of the debt, and all costs and expenses, including reasonable attorneys' fees, we incur in such collection efforts.

**CHANGES TO TERMS AND RATES**

We may change any terms, conditions, rates, fees, expenses, or charges regarding your

6

service at any time. We will provide you with notice of such changes (other than changes to governmental fees, proportional charges for governmental mandates, roaming rates or administrative charges) either in your monthly bill or separately. You understand and agree that State and Federal Universal Service fees and other governmentally imposed fees, whether or not assessed directly upon you, may be increased based upon the government's or our calculations. IF WE INCREASE THE PRICE OF ANY OF THE SERVICES TO WHICH YOU SUBSCRIBE, BEYOND THE LIMITS SET FORTH IN YOUR RATE PLAN BROCHURE, OR IF WE MATERIALLY DECREASE THE GEOGRAPHICAL AREA IN WHICH YOUR AIRTIME RATE APPLIES (OTHER THAN A TEMPORARY DECREASE FOR REPAIRS OR MAINTENANCE), WE WILL DISCLOSE THE CHANGE AT LEAST ONE BILLING CYCLE IN ADVANCE (EITHER THROUGH A NOTICE WITH YOUR BILL, A TEXT MESSAGE TO YOUR EQUIPMENT, OR OTHERWISE), AND YOU MAY TERMINATE THIS AGREEMENT WITHOUT PAYING AN EARLY TERMINATION FEE OR RETURNING OR PAYING FOR ANY PROMOTIONAL ITEMS, PROVIDED YOUR NOTICE OF TERMINATION IS DELIVERED TO US WITHIN THIRTY (30) DAYS AFTER THE FIRST BILL REFLECTING THE CHANGE. If you lose your eligibility for a particular rate plan, we may change your rate plan to one for which you qualify.

**CONTINGENT BENEFITS**

You may receive or be eligible for certain rate plans, discounts, features, promotions, and other benefits ("Benefits") through a business or government customer's agreement with us ("Business Agreement"). Any and all such Benefits are provided to you solely as a result of the corresponding Business Agreement, and such Benefits may be modified or terminated without notice. If a business or government entity pays your charges or is otherwise liable for the charges, you authorize us to share your account information with that entity and/or its authorized agents. If you are on a rate plan and/or receive certain Benefits tied to a Business Agreement with us, but you are liable for your own charges, then you authorize us to share enough account information with that entity and/or its authorized agents to

7

verify your continuing eligibility for those Benefits and/or that rate plan. You may receive Benefits because of your agreement to have the charges for your service billed ("Joint Billing") by a landline company affiliated with AT&T ("Affiliate") or because you subscribe to certain services provided by an Affiliate. If you cancel Joint Billing or the Affiliate service your rates will be adjusted without notice to a rate plan for which you qualify.

## EQUIPMENT

Your Equipment must be compatible with, and not interfere with, our service and must comply with all applicable laws, rules, and regulations. We may periodically program your Equipment remotely with system settings for roaming service and other features that cannot be changed manually. Equipment purchased for use on AT&T's system is designed for use exclusively on AT&T's system. You agree that you will not make any modifications to the Equipment or programming to enable the Equipment to operate on any other system. AT&T may, at its sole and absolute discretion, modify the programming to enable the operation of the Equipment on other systems. You can get details on AT&T policies for modifying Equipment by calling 1-866-246-4852.

## ADVANCE PAYMENTS AND/OR DEPOSITS

We may require you to make deposits or advance payments for services, which we may offset against any unpaid balance on your account. Interest will not be paid on advance payments or deposits unless required by law. We may require additional advance payments or deposits if we determine that the initial payment was inadequate. Based on your creditworthiness as we determine it, we may establish a credit limit and restrict service or features. If your account balance goes beyond the limit we set for you, we may immediately interrupt or suspend service until your balance is brought below the limit. Any charges you incur in excess of your limit become immediately due. If you have more than one account with us, you must keep all accounts in good standing to maintain service. If

8

one account is past due or over its limit, all accounts in your name are subject to interruption or termination and all other available collection remedies.

**LATE PAYMENT CHARGES**

Late payment charges are based on the state to which the area code of the wireless telephone number assigned to you is assigned by the North American Numbering Plan Administration. (for area code assignments see http://www.nationalnanpa.com/area_code_maps.) You agree that for amounts not paid by the due date, AT&T may charge, as a part of its rates and charges, and you agree to pay, a late payment fee of $5 in CT, D.C., DE, IL, KS, MA, MD, ME, MI, MO, NH, NJ, NY, OH, OK, PA, RI, VA, VT WI, WV; the late payment charge is 1.5% of the balance carried forward to the next bill in all other states.

**SERVICE LIMITATIONS; LIMITATION OF LIABILITY**

Service may be interrupted, delayed, or otherwise limited for a variety of reasons, including environmental conditions, unavailability of radio frequency channels, system capacity, priority access by National Security and Emergency Preparedness personnel in the event of a disaster or emergency, coordination with other systems, equipment modifications and repairs, and problems with the facilities of interconnecting carriers. We may block access to certain categories of numbers (e.g, 976, 900, and international destinations) or certain websites at our sole discretion. We may, but do not have the obligation to, refuse to transmit any information through the service and may screen and delete information prior to delivery of that information to you. There are gaps in service within the service areas shown on coverage maps, which, by their nature, are only approximations of actual coverage. WE DO NOT GUARANTEE YOU UNINTERRUPTED SERVICE OR COVERAGE. WE CANNOT ASSURE YOU THAT IF YOU PLACE A 911 CALL YOU WILL BE FOUND. Airtime and other service charges apply to all calls, including involuntarily terminated calls. AT&T MAKES NO WARRANTY, EXPRESS OR IMPLIED, OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, SUITABILITY, OR

6

PERFORMANCE REGARDING ANY SERVICES OR GOODS, AND IN NO EVENT SHALL AT&T BE LIABLE, WHETHER OR NOT DUE TO ITS OWN NEGLIGENCE, for any: (a) act or omission of a third party; (b) mistakes, omissions, interruptions, errors, failures to transmit, delays, or defects in the service provided by or through us; (c) damage or injury caused by the use of service or Equipment, including use in a vehicle; (d) claims against you by third parties; (e) damage or injury caused by a suspension or termination of service by AT&T; or (f) damage or injury caused by failure or delay in connecting a call to 911 or any other emergency service. Notwithstanding the foregoing, if your service is interrupted for 24 or more continuous hours by a cause within our control, we will issue you, upon request, a credit equal to a pro-rata adjustment of the monthly service fee for the time period your service was unavailable, not to exceed the monthly service fee. Our liability to you for service failures is limited solely to the credit set forth above. Unless applicable law precludes parties from contracting to so limit liability, and provided such law does not discriminate against arbitration clauses, AT&T shall not be liable for any indirect, special, punitive, incidental or consequential losses or damages you or any third party may suffer by use of, or inability to use, service or Equipment provided by or through AT&T, including loss of business or goodwill, revenue or profits, or claims of personal injuries. To the full extent allowed by law, you hereby release, indemnify, and hold AT&T and its officers, directors, employees and agents harmless from and against any and all claims of any person or entity for damages of any nature arising in any way from or relating to, directly or indirectly, service provided by AT&T or any person's use thereof (including, but not limited to, vehicular damage and personal injury), INCLUDING CLAIMS ARISING IN WHOLE OR IN PART FROM THE ALLEGED NEGLIGENCE OF AT&T or any violation by you of this Agreement. This obligation shall survive termination of your service with AT&T. AT&T is not liable to you for changes in operation, equipment, or technology that cause your Equipment or software to be rendered obsolete or require modification. SOME STATES, INCLUDING THE STATE OF KANSAS, DO NOT ALLOW DISCLAIMERS OF IMPLIED WARRANTIES OR LIMITS ON REMEDIES FOR BREACH. THEREFORE, THE ABOVE LIMITATIONS

10

OR EXCLUSIONS MAY NOT APPLY TO YOU. THIS AGREEMENT GIVES YOU SPECIFIC LEGAL RIGHTS, AND YOU MAY HAVE OTHER RIGHTS WHICH VARY FROM STATE TO STATE.

**ACCOUNT ACCESS**

You authorize us to provide information about and to make changes to your account, including adding new service, upon the direction of any person able to provide information we deem sufficient to identify you.

**VOICEMAIL SERVICE**

We may deactivate your voicemail service if you do not initialize it within a reasonable period after activation. We will reactivate the service upon your request.

**DISPUTE RESOLUTION BY BINDING ARBITRATION**
**Please read this carefully. It affects your rights.**

**Summary:**

Most customer concerns can be resolved quickly and to the customer's satisfaction by calling our customer service department at 1 800-331-0500. **In the unlikely event that AT&T's customer service department is unable to resolve a complaint you may have to your satisfaction (or if AT&T has not been able to resolve a dispute it has with you after attempting to do so informally), we each agree to resolve those disputes through binding arbitration or small claims court instead of in courts of general jurisdiction.** Arbitration is more informal than a lawsuit in court. Arbitration uses a neutral arbitrator instead of a judge or jury, allows for more limited discovery than in court, and is subject to very limited review by courts. Arbitrators can award the same damages and relief that a court can award. **Any arbitration under this Agreement will take place on an individual basis; class arbitrations and class actions are not permitted.** AT&T will pay all costs of arbitration, no matter who wins, so long as your claim is not frivolous. Moreover, in

11

arbitration you are entitled to recover attorneys' fees from AT&T to at least the same extent as you would be in court. In addition, under certain circumstances (as explained below), AT&T will pay you and your attorney a special premium if the arbitrator awards you an amount that is greater than what AT&T has offered you to settle the dispute.

**ARBITRATION AGREEMENT**

(1) AT&T and you agree to arbitrate **all disputes and claims** between us. This agreement to arbitrate is intended to be broadly interpreted. It includes, but is not limited to:

- claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory;

- claims that arose before this or any prior Agreement (including, but not limited to, claims relating to advertising);

- claims that are currently the subject of purported class action litigation in which you are not a member of a certified class; and

- claims that may arise after the termination of this Agreement.

References to "AT&T," "you", and "us" include our respective subsidiaries, affiliates, agents, employees, predecessors in interest, successors, and assigns, as well as all authorized or unauthorized users or beneficiaries of services or equipment under this or prior Agreements between us. Notwithstanding the foregoing, either party may bring an individual action in small claims court. **You agree that, by entering into this Agreement, you and AT&T are each waiving the right to a trial by jury or to participate in a class action.** This Agreement evidences a transaction in interstate commerce, and thus the Federal Arbitration Act governs the interpretation and enforcement of this provision. This arbitration provision shall survive termination of this Agreement.

(2) A party who intends to seek arbitration must first send to the other, by certified mail, a written Notice of Dispute ("Notice"). The Notice to AT&T should be addressed to: General

**12**

Counsel, AT&T, 5565 Glenridge Connector, 20th Floor, Atlanta, GA 30342 ("Notice Address"). The Notice must (a) describe the nature and basis of the claim or dispute; and (b) set forth the specific relief sought ("Demand"). If AT&T and you do not reach an agreement to resolve the claim within 30 days after the Notice is received, you or AT&T may commence an arbitration proceeding. During the arbitration, the amount of any settlement offer made by AT&T or you shall not be disclosed to the arbitrator until after the arbitrator determines the amount, if any, to which you or AT&T is entitled. You may download or copy a form Notice and a form to initiate arbitration at http://www.cingular.com/arbitration-forms.

(3) After AT&T receives notice at the Notice Address that you have commenced arbitration, it will promptly reimburse you for your payment of the filing fee. (The filing fee currently is $125 for claims under $10,000 but is subject to change by the arbitration provider. If you are unable to pay this fee, AT&T will pay it directly upon receiving a written request at the Notice Address.) The arbitration will be governed by the Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer Related Disputes (collectively, "AAA Rules") of the American Arbitration Association ("AAA"), as modified by this Agreement, and will be administered by the AAA. The AAA Rules are available online at www.adr.org, by calling the AAA at 1-800-778-7879, or by writing to the Notice Address. (You may obtain information that is designed for non-lawyers about the arbitration process at http://www.cingular.com/arbitration-information.) All issues are for the arbitrator to decide, including the scope of this arbitration provision, but the arbitrator is bound by the terms of this Agreement. Unless AT&T and you agree otherwise, any arbitration hearings will take place in the county (or parish) of your billing address. If your claim is for $10,000 or less, we agree that you may choose whether the arbitration will be conducted solely on the basis of documents submitted to the arbitrator, through a telephonic hearing, or by an in-person hearing as established by the AAA Rules. If your claim exceeds $10,000, the right to a hearing will be determined by the AAA Rules. Except as otherwise provided for

13

herein, AT&T will pay all AAA filing, administration, and arbitrator fees for any arbitration initiated in accordance with the notice requirements above. If, however, the arbitrator finds that either the substance of your claim or the relief sought in the Demand is frivolous or brought for an improper purpose (as measured by the standards set forth in Federal Rule of Civil Procedure 11(b)), then the payment of all such fees will be governed by the AAA Rules. In such case, you agree to reimburse AT&T for all monies previously disbursed by it that are otherwise your obligation to pay under the AAA Rules.

(4) If, after finding in your favor in any respect on the merits of your claim, the arbitrator issues you an award that is:

- equal to or less than the greater of (a) $5,000 or (b) the maximum claim that may be brought in small claims court in the county of your billing address; and
- greater than the value of AT&T's last written settlement offer made before an arbitrator was selected,

then AT&T will:

- pay you the greater of (a) $5,000 or (b) the maximum claim that may be brought in small claims court in the county of your billing address ("the premium") instead of the arbitrator's award; and
- pay your attorney, if any, twice the amount of attorneys' fees, and reimburse any expenses that your attorney reasonably accrues for investigating, preparing, and pursuing your claim in arbitration ("the attorney premium").

If AT&T did not make a written offer to settle the dispute before an arbitrator was selected, you and your attorney will be entitled to receive the premium and the attorney premium, respectively, if the arbitrator awards you any relief on the merits. The arbitrator may make rulings and resolve disputes as to the payment and reimbursement of fees, expenses, and the premium and the attorney premium at any time during the proceeding and upon request from either party made within 14 days of the arbitrator's ruling on the merits.

14

(5) The right to attorneys' fees and expenses discussed in paragraph (4) supplements any right to attorneys' fees and expenses you may have under applicable law. Thus, if you would be entitled to a larger amount under the applicable law, this provision does not preclude the arbitrator from awarding you that amount. However, you may not recover duplicative awards of attorneys' fees or costs. Although under some laws AT&T may have a right to an award of attorneys' fees and expenses if it prevails in an arbitration, AT&T agrees that it will not seek such an award.

(6) The arbitrator may award injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim. **YOU AND AT&T AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.** Further, unless both you and AT&T agree otherwise, the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding. If this specific provision is found to be unenforceable, then the entirety of this arbitration provision shall be null and void.

(7) Notwithstanding any provision in this Agreement to the contrary, we agree that if AT&T makes any change to this arbitration provision (other than a change to the Notice Address) during your Service Commitment, you may reject any such change and require AT&T to adhere to the language in this provision if a dispute between us arises.

**MISCELLANEOUS**
This Agreement, the signature or rate summary sheet, the terms included in the rate

15

brochure(s) describing your plan and services, terms of service for products and services not otherwise described herein that are posted on applicable AT&T websites, and any documents expressly referred to herein or therein, make up the complete agreement between you and AT&T and supersede any and all prior agreements and understandings relating to the subject matter of this Agreement. If any provision of this Agreement is found to be unenforceable by a court or agency of competent jurisdiction, the remaining provisions will remain in full force and effect. The foregoing does not apply to the prohibition against class or representative actions that is part of the arbitration clause; if that prohibition is found to be unenforceable, the arbitration clause (but only the arbitration clause) shall be null and void. AT&T may assign this Agreement, but you may not assign this Agreement without our prior written consent. The law of the state of your billing address shall govern this Agreement except to the extent that such law is preempted by or inconsistent with applicable federal law. Your caller identification information (such as your name and phone number) may be displayed on the equipment or bill of the person receiving your call; technical limitations may, in some circumstances, prevent you from blocking the transmission of caller identification information. You consent to the use by us or our authorized agents of regular mail, predictive or autodialing equipment, email, text messaging, facsimile or other reasonable means to contact you to advise you about our services or other matters we believe may be of interest to you. In any event, we reserve the right to contact you by any means regarding customer service-related notifications, or other such information. The original version of this Agreement is in the English language. Any discrepancy or conflicts between the English version and any other language version will be resolved with reference to and by interpreting the English version.

**Connecticut Customers/Questions About Your Service:**
If you have any questions or concerns about your AT&T Mobility service, please call Customer Care at 1-800-331-0500, dial 611 from your wireless phone or visit www.att.com/wireless. If you have questions about the Unlimited Local or Unlimited Long Distance service, please call

**16**

1-800-288-2020 or visit www.att.com. If you are a Connecticut customer and we cannot resolve your issue, you have the option of contacting the Department of Public Utility Control (DPUC). Online: www.state.ct.us/dpuc; Phone: 866-381-2355; Mail: Connecticut DPUC, 10 Franklin Square, New Britain, CT 06051.

**17**



76214

© 2007 AT&T Knowledge Ventures. All rights reserved. AT&T, AT&T logo are trademarks of AT&T Knowledge Ventures and/or AT&T affiliated companies.

FMS TC T 0307 0097 E

The new 
Your world. Delivered.

# EXHIBIT 2

Order Form (01/2005)    Case 1:07-cv-04946    Document 34    Filed 10/10/2007    Page 1 of 1

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 07 C 4946 | **DATE** | 10/10/2007 |
| **CASE TITLE** | Trujillo vs. Apple Computer, Inc., et al. | | |

**DOCKET ENTRY TEXT**

The Court, having reviewed defendant AT&T Mobility LLC's "terms of service," grants AT&T Mobility LLC's motion to stay its obligations under the court's initial standing order pending resolution of its anticipated motion to compel arbitration [docket nos. 27, 29]. This ruling is conditioned upon AT&T Mobility LLC's timely filing of its motion and supporting briefs.

Docketing to mail notices.

| | Courtroom Deputy Initials: | |
|---|---|---|

07C4946 Trujillo vs. Apple Computer, Inc., et al.                                         Page 1 of 1