DONALD M. FALK (SBN 150256)
  dfalk@mayerbrown.com
RENA CHNG (SBN 209665)
  rchng@mayerbrown.com
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA  94306-2112
Telephone: (650) 331-2000
Facsimile:  (650) 331-2060
        -and-
VICTORIA R. COLLADO (*pro hac vice*)
  vcollado@mayerbrown.com
SARAH E. REYNOLDS (*pro hac vice*)
  sreynolds@mayerbrown.com
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL  60606
Telephone:  (312) 701-0700
Facsimile:  (312) 701-7711

Attorneys for Defendant AT&T MOBILITY LLC

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| ZOLTAN STIENER and YNEZ STIENER,<br><br>                Plaintiffs,<br><br>  v.<br><br>APPLE COMPUTER, INC., AT&T MOBILITY, LLC, and DOES 1 through 50, inclusive,<br><br>                Defendants. | Case No.: C 07-04486 SBA<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANT AT&T MOBILITY LLC TO COMPEL ARBITRATION AND TO DISMISS CLAIMS PURSUANT TO THE FEDERAL ARBITRATION ACT**<br><br>Date:     February 26, 2008<br>Time:     1:00 p.m.<br>Ctrm:    400<br>Judge:   Honorable Saundra B. Armstrong |

1

**TABLE OF CONTENTS**

2

TABLE OF AUTHORITIES ..........................................................................................ii

3

STATEMENT OF ISSUE TO BE DECIDED................................................................ 1

4

INTRODUCTION ......................................................................................................... 1

5

BACKGROUND ........................................................................................................... 2

6

ARGUMENT................................................................................................................. 7

7

I.      THE FAA MANDATES ENFORCEMENT OF PLAINTIFFS' CONTRAC-
8       TUAL AGREEMENT TO ARBITRATE ......................................................... 7

9

II.     ATTM'S ARBITRATION PROVISION IS NOT UNCONSCIONABLE UNDER
10      CALIFORNIA LAW. ...................................................................................... 8

11

III.    THE FAA WOULD PREEMPT ANY HOLDING THAT ATTM'S ARBITRA-
        TION PROVISION IS UNENFORCEABLE UNDER CALIFORNIA LAW............... 15

12

CONCLUSION............................................................................................................ 17

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISS
CASE NO. C 07-04486 SBA

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*American Software, Inc. v. Ali*, 54 Cal. Rptr. 2d 477 (Ct. App. 1996) ..........................................17

*Aron v. U-Haul Co. of California*, 49 Cal. Rptr. 3d 555 (Ct. App. 2006) ...................................8, 9

*Armendariz v. Foundation Health Psychcare Services, Inc.*, 6 P.3d 669
    (Cal. 2000) ........................................................................................................................8

*Belton v. Comcast Cable Holdings, LLC*, 60 Cal. Rptr. 3d 631 (Ct. App. 2007) ...............8, 10, 16

*California Grocers Association v. Bank of America*, 27 Cal. Rptr. 2d 396
    (Ct. App. 1994) ..................................................................................................................8

*Carbajal v. H & R Block Tax Services Inc.*, 372 F.3d 903 (7th Cir. 2004) ...................................17

*Dean Witter Reynolds, Inc. v. Superior Court*, 259 Cal. Rptr. 789
    (Ct. App. 1989) ..................................................................................................................9

*Discover Bank v. Superior Court*, 113 P.3d 1100 (Cal. 2005) .............................................1, 2, 12

*Equal Employment Opportunity Commission v. Waffle House, Inc.*,
    534 U.S. 279 (2002) ...........................................................................................................7

*Gatton v. T-Mobile USA, Inc.*, 61 Cal. Rptr. 3d 344 (Ct. App. 2007) ..........................9, 10, 11, 14

*Gentry v. Superior Court*, 165 P.3d 556 (Cal. 2007) ....................................................................15

*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991) .......................................................7

*Herbert v. Lankershim*, 71 P.2d 220 (Cal. 1937) .....................................................................8, 16

*Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159
    (5th Cir. 2004) ..................................................................................................................16

*Koehl v. Verio, Inc.*, 48 Cal. Rptr. 3d 749 (Ct. App. 2006) .........................................................17

*Marin Storage & Trucking, Inc. v. Benco Contracting & Engineering, Inc.*,
    107 Cal. Rptr. 2d 645 (Ct. App. 2001) ........................................................................9, 15

*Morris v. Redwood Empire Bancorp*, 27 Cal. Rptr. 3d 797 (Ct. App. 2005) .................................9

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*,
    460 U.S. 1 (1983) ...............................................................................................................7

*Odell v. Moss*, 62 P. 555 (Cal. 1900) ............................................................................................8

- ii -

1

2

**TABLE OF AUTHORITIES**
(continued)

Page(s)

3

*People v. Municipal Court*, 574 P.2d 425 (Cal. 1978) ....................................................13

4

*Provencher v. Dell Inc.*, 409 F. Supp. 2d 1196 (C.D. Cal. 2006)...................................10

5

6

*Riensche v. Cingular Wireless LLC*, 2007 WL 3407137
    (W.D. Wash. Nov. 9, 2007) .........................................................................................10

7

*Santisas v. Goodin*, 951 P.2d 399 (Cal. 1998) ..............................................................13

8

*Shroyer v. New Cingular Wireless Services, Inc.*, 498 F.3d 976 (9th Cir. 2007) ................. *passim*

9

*Sparling v. Hoffman Construction Co.*, 864 F.2d 635 (9th Cir. 1988) ..........................17

10

*Szetela v. Discover Bank*, 118 Cal. Rptr. 2d 862 (Ct. App. 2002)...................................9

11

12

*Thinket Ink Information Resources, Inc. v. Sun Microsystems, Inc.*,
    368 F.3d 1053 (9th Cir. 2004) ....................................................................................17

13

*Ting v. AT&T*, 319 F.3d 1126 (9th Cir. 2003) ...............................................................16

14

*Trend Homes, Inc. v. Superior Court*, 32 Cal. Rptr. 3d 411 (Ct. App. 2005)...............10

15

*United States v. Corum*, 362 F.3d 489 (8th Cir. 2004) ....................................................7

16

*United States v. Weathers*, 169 F.3d 336 (6th Cir. 1999) ...............................................7

17

18

*Villa Milano Homeowners Association v. Il Davorge*, 102 Cal. Rptr. 2d 1
    (Ct. App. 2000) .............................................................................................................9

19

*Wayne v. Staples, Inc.*, 37 Cal. Rptr. 3d 544 (Ct. App. 2006) ........................................9

20

*Wheeler v. St. Joseph Hospital*, 133 Cal. Rptr. 775 (Ct. App. 1976) ...........................10

21

**Statutes**

22

9 U.S.C. §§ 1–16.................................................................................................................1

23

24

9 U.S.C. § 2....................................................................................................................7, 16

25

9 U.S.C. § 3......................................................................................................................17

26

9 U.S.C. § 4........................................................................................................................8

27

15 U.S.C. § 1681n............................................................................................................13

28

Federal Rule of Civil Procedure 11(b)..............................................................................4

- iii -

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

California Business & Professions Code § 17200 ...........................................................6

California Civil Code § 54.3(a) ...................................................................................13

California Code Civil Procedure § 116.221...................................................................4

California Commercial Code § 2314 .............................................................................6

**Miscellaneous**

Stephen A. Broome, *An Unconscionable Application of the Unconscionability Doctrine:
     How the California Courts Are Circumventing the Federal Arbitration Act*, 3
     Hastings Bus. L.J. 39 (2006) .............................................................................9

Christopher R. Drahozal, *Arbitration Costs and Contingent Fee Contracts*, 59 Vand. L.
     Rev. 729 (2006) ...............................................................................................15

Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs:
     An Empirical Study*, 53 UCLA L. Rev. 1303 (2006)..........................................13

Lewis L. Maltby, *Employment Arbitration and Workplace Justice*,
     38 U.S.F. L. Rev. 105 (2003)...........................................................................14

1 J. Story, Commentaries on Equity Jurisprudence § 244 (14th ed. 1918))............................8

**STATEMENT OF ISSUE TO BE DECIDED**

Whether the Federal Arbitration Act, 9 U.S.C. §§ 1–16, requires plaintiffs Zoltan and Ynez Stiener to pursue their claims against defendant AT&T Mobility LLC in accordance with their arbitration agreement.

**INTRODUCTION**

Defendant AT&T Mobility LLC ("ATTM") respectfully moves to compel arbitration and to dismiss this putative class action. When plaintiffs Zoltan and Ynez Stiener contracted for wireless service, they expressly agreed to arbitrate any claims against ATTM on an individual (rather than class-wide) basis or to bring them in small claims court. The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, as well as applicable state law, requires them to honor their promises.

The Stieners will likely oppose this motion by arguing that, because their arbitration agreement requires the resolution of disputes on an individual basis, they are unconscionable under the California Supreme Court's decision in *Discover Bank v. Superior Court*, 113 P.3d 1100 (Cal. 2005), and the Ninth Circuit's decision in *Shroyer v. New Cingular Wireless Services, Inc.*, 498 F.3d 976 (9th Cir. 2007). Any such argument should be rejected. *Discover* did not impose an across-the-board ban on class-arbitration waivers in consumer contracts, and *Shroyer* invalidated an earlier—and materially different—version of the arbitration provision at issue in this case. The unprecedentedly pro-consumer provision that is applicable here specifies that, if an arbitrator awards a California customer more than the amount of ATTM's last settlement offer, ATTM will pay the customer *$7,500* or the amount of the award, whichever is greater, and in addition will pay the customer's lawyers *twice* the amount of their reasonable attorneys' fees. This new provision directly addresses the concern of the California Supreme Court and the Ninth Circuit that "when the potential for individual *gain* is small, very few plaintiffs, if any, will pursue individual arbitration or litigation, which greatly reduces the aggregate liability a

company faces when it has exacted small sums from millions of consumers." *Shroyer*, 498 F.3d at 986 (emphasis in original) (citing *Discover*, 113 P.3d at 1106–10).

Moreover, any ruling that ATTM's arbitration provision is unenforceable under California law would be preempted by the FAA.  It is true that the FAA permits courts to refuse to enforce arbitration agreements based on *generally applicable* state-law principles.  But it would require a marked deviation from those principles to invalidate ATTM's arbitration provision, which ensures that customers have a realistic means of obtaining redress for small claims on an individual basis.  Section 2 of the FAA expressly preempts any such deviation from generally applicable contract law.  Although in *Shroyer* the Ninth Circuit rejected a similar argument in the course of striking down the class-arbitration prohibition in a materially different arbitration provision, it did so on the ground that "[t]he rule announced in *Discover Bank* is simply a refinement of the unconscionability analysis applicable to contracts generally in California."  *Shroyer*, 498 F.3d at 987.  That manifestly cannot be said of any holding that ATTM's *revised* arbitration provision is unenforceable.  To call this provision "unconscionable" notwithstanding the incentives it provides to customers and their lawyers would be to drain the concept of "unconscionability" of all meaning.  Accordingly, the holding in *Shroyer* is not dispositive of the preemption argument in this case.

## BACKGROUND

**A.   Plaintiffs Agree To Resolve Any Dispute With ATTM Either Through Individual Arbitration Or In Small Claims Court.**

The Stieners are California residents.  Compl. ¶ 3.  In June 2007, they purchased two iPhones at a store.  Compl. ¶ 29; *see also* Declaration of Neal S. Berinhout ¶ 6.  To use their iPhones with ATTM's wireless service, the Stieners were required to activate them online.  *Id*. ¶ 9.  As part of the activation process, users are required to click on a box next to the statement "I have read and agree to the AT&T Service Agreement."  *Id*.  The text of the service agreement,

including its terms of service, was displayed in a text box immediately above the statement that the Stieners were required to check.  *Id.* Ex. 4, at 7.  The first sentence advised the Stieners that, by checking the box next to the acknowledgment below, they would be "bound" to "the Terms of Service, including the ***binding arbitration clause***."  *Id.* (emphasis added).

The Terms of Service that are part of the service agreement between the Stieners and ATTM were also available on ATTM's web site and in the store in which plaintiffs bought their iPhones.  *Id.* ¶ 8.  In addition, ATTM mailed the Stieners the applicable Terms of Service booklet when they activated their iPhones.  *Id.* ¶ 10.  The Terms of Service contain an arbitration provision that states that "[ATTM] and you agree to arbitrate **all disputes and claims** between us" or to pursue such disputes in small claims court.  *Id.* Ex. 3, at 12 (emphasis in original).  The provision specifies that arbitration must be conducted on an individual rather than class-wide basis.  *Id.* Ex. 3, at 12, 15.

**B.     ATTM's Arbitration Provision Is Uniquely Favorable To Consumers.**

ATTM's recently revised arbitration provision is, to ATTM's knowledge, the most pro-consumer arbitration provision in the country.  Richard Nagareda, a law professor at Vanderbilt University whose scholarship focuses on aggregate dispute resolution, observes that he has "never seen an arbitration provision that has gone as far as this one to provide incentives for consumers and their prospective attorneys to bring claims" on an individual basis.  Declaration of Richard A. Nagareda ¶ 11.  The provision includes the following features that were designed to make arbitration convenient and inexpensive for ATTM's customers (Berinhout Dec. ¶ 8 & Ex. 3, at 12–15):

- **Cost-free arbitration**:  "[ATTM] will pay all [American Arbitration Association ('AAA')] filing, administration and arbitrator fees" unless the arbitrator determines that

-3-

the claim "is frivolous or brought for an improper purpose (as measured by the standards set forth in Federal Rule of Civil Procedure 11(b))";[1]

- **$7,500 minimum award**:  If the arbitrator issues an award in favor of the customer that is greater than "[ATTM]'s last written settlement offer before an arbitrator was selected" but less than $7,500, ATTM will pay the customer $7,500 rather than the smaller arbitral award;[2]

- **Double attorneys' fees**:  If the arbitrator awards the customer more than ATTM's last written settlement offer, then "[ATTM] will * * * pay [the customer's] attorney, if any, twice the amount of attorneys' fees, and reimburse any expenses, that [the customer's] attorney reasonably accrues for investigating, preparing, and pursuing [the customer's] claim[s] in arbitration";[3]

- **Small claims court option**:  Either party may bring a claim in small claims court;

- **Geographic proximity**:  Arbitration will take place "in the county * * * of [the customer's] billing address";

- **No confidentiality requirement**:  There is no requirement that the arbitration be kept confidential;

- **Punitive damages available**:  There is no limitation on the availability of punitive damages;

- **AAA consumer procedures**:  Arbitration will be conducted under the AAA's Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer Related Disputes; and

- **Choice of in-person, telephonic, or no hearing**:  For claims of $10,000 or less, customers like plaintiffs have the exclusive right to choose whether the arbitrator will conduct an in-person hearing, a telephonic hearing, or a "desk" arbitration in which "the

---

[1]     In the event that an arbitrator concludes that a customer's claim is frivolous, the AAA's consumer arbitration rules would cap a consumer's arbitration costs at $125.  *See* Berinhout Dec. Exs. 9–10 (AAA, Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer Related Disputes ("*AAA Consumer Procedures*") § C-8).

[2]     The amount of the minimum payment varies from state to state because it is tied to the jurisdictional maximum of the customer's local small claims court.  Berinhout Dec. Ex. 3, at 14.  In California, the jurisdictional limit for small claims court is $7,500.  *See* Cal. Code Civ. Proc. § 116.221.

[3]     This attorney premium "supplements any right to attorneys' fees and expenses [that the customer] may have under applicable law."  Berinhout Dec. Ex. 3, at 15.  In other words, even if an arbitrator were to award a customer less than ATTM's last settlement offer, the customer would be entitled to an award of attorneys' fees to the same extent as if his or her claim had been brought in court.

arbitration will be conducted solely on the basis of documents submitted to the arbitrator."[4]

**C.   Dispute Resolution Under ATTM's Arbitration Provision Is Convenient For ATTM's Customers.**

ATTM has tailored other aspects of the dispute-resolution process to ensure its effectiveness for consumers.  Customers can obtain redress without the need for arbitration by contacting ATTM's customer care department by phone or e-mail.  *Id.* ¶ 15.  This process works: In September 2007 (the most recent month for which data are available), ATTM's customer service representatives dispensed over $119 million in credits for customer concerns and complaints.  *Id.* ¶ 16.  Over the preceding 12 months, ATTM representatives dispensed over $1 billion in credits.  *Id.*

If a customer is unsatisfied with the resolution offered by the customer care department, he or she can take the next step—as provided in ATTM's arbitration provision—of notifying ATTM of the dispute in writing.  That is as simple as mailing a letter to ATTM or submitting a one-page Notice of Dispute form that ATTM has posted on its web site (at http://www.att.com/arbitration-forms).  *Id.* ¶ 13 & Ex. 7.

ATTM generally responds to a dispute notice with a written settlement offer.  *See id.* ¶ 19.  If ATTM and the customer cannot resolve the dispute within 30 days, the customer may begin the formal arbitration process.  To do so, the customer need only fill out a one-page Demand for Arbitration form and send copies to the AAA and to ATTM.  Customers may either obtain a copy of the demand form from the AAA's web site (at http://www.adr.org) or use the simplified form that ATTM has posted on its web site (at http://www.att.com/arbitration-forms).  *Id.* ¶ 13 & Ex. 8.  To further assist its customers, ATTM has posted on its web site a layperson's

---

[4]   Under the AAA rules that would otherwise apply, either party may insist on a hearing in cases involving claims of $10,000 or less.  Berinhout Dec. Exs. 6–7 (*AAA Consumer Procedures* §§ C-5, C-6).  For claims exceeding $10,000, a hearing would be held unless both parties agreed to forgo it.  *Id.*

guide on how to arbitrate a claim.  *Id.* ¶ 12 & Ex. 6 (http://www.att.com/arbitration-information).

Not surprisingly, many ATTM customers have found individual arbitration to be a viable dispute resolution mechanism:  Between January 1 and October 31, 2007, ATTM received over 500 notices of dispute or demands for arbitration.  *Id.* ¶ 20.[5]

**D.    Plaintiffs File This Putative Class Action Lawsuit Notwithstanding Their Agreement To Arbitrate.**

Despite having agreed to arbitrate all disputes against ATTM (or to bring them in small claims court), the Stieners filed this putative class action, naming ATTM as a defendant.  They allege that, in marketing the iPhone, Apple Computer, Inc. ("Apple") and ATTM failed to disclose adequately the details of the iPhone battery-replacement program, thus violating California's Unfair Competition Law, Cal Bus. & Prof. Code § 17200 *et seq*. (Compl. ¶¶ 58–59) and breaching an implied warranty of merchantability (Cal. Comm. Code § 2314) (Compl. ¶¶ 49–52).  Plaintiffs also raise a variety of common-law claims, including breach of contract (Compl. ¶¶ 45–48) and fraudulent concealment (Compl. ¶¶ 53–57), and request an accounting (Compl. ¶¶ 60–62).  They seek to represent a class consisting of "all individuals or entities who at any time from June 29, 2007 to the date of judgment in this action bought and implemented the iPhone and sustained damages as a result."  Compl. ¶ 32.

On October 16, 2007, counsel for ATTM called plaintiffs' counsel and discussed the plaintiffs' service agreement with ATTM, including the obligation to pursue claims in arbitration or small claims court.  Declaration of Victoria R. Collado ¶ 2.  On October 18, 2007, counsel for ATTM received a letter from plaintiffs' counsel indicating that plaintiffs would not comply with their agreement.  *Id.* ¶ 3, Ex. 1.

---

[5]    In addition, as noted above, ATTM's arbitration provision gives customers the option of filing claims in small claims court.  ATTM responded to almost 850 such claims in 2005 and 2006.  Berinhout Dec. ¶ 21.

**ARGUMENT**

I.   **THE FAA MANDATES ENFORCEMENT OF PLAINTIFFS' CONTRACTUAL AGREEMENT TO ARBITRATE.**

The FAA mandates that written agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Congress enacted the FAA to "reverse the longstanding judicial hostility to arbitration agreements[,] * * * to place [these] agreements on the same footing as other contracts[,] * * * [and to] manifest a liberal federal policy favoring arbitration agreements." *Equal Employment Opportunity Comm'n v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24–25 (1991) (internal quotation marks omitted)). As the Supreme Court has explained, "questions of arbitrability must be addressed with a healthy regard for [this] federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

An arbitration agreement must meet two basic conditions for the FAA to apply: (1) the agreement must be "written"; and (2) it must be in a contract "evidencing a transaction involving commerce." 9 U.S.C. § 2. Both criteria are met here: ATTM's arbitration provision is in writing (*see* Berinhout Dec. ¶ 8, Ex. 3) and plaintiffs' agreement involves commerce, as "[i]t is well-established that telephones, even when used intrastate, are instrumentalities of interstate commerce." *United States v. Corum*, 362 F.3d 489, 493 (8th Cir. 2004); *accord United States v. Weathers*, 169 F.3d 336, 341 (6th Cir. 1999).

There also can be no question that plaintiffs' claims fall within the scope of the arbitration provision, which applies to "all disputes and claims between [the parties]." Berinhout Dec. Ex. 3, at 12. When, as here, an arbitration provision is governed by the FAA and the plaintiff's claims fall within the scope of that provision, the duty of the district court is clear: It must compel arbitration. *See* 9 U.S.C. § 4.

## II.   ATTM'S ARBITRATION PROVISION IS NOT UNCONSCIONABLE UNDER CALIFORNIA LAW.

We anticipate that plaintiffs will argue that their agreement to arbitrate is unconscionable under California law.  Although some courts have refused to enforce ***previous*** ATTM arbitration provisions, no California court has considered the enforceability of—much less invalidated—the recently revised ATTM arbitration provision at issue in this case.

Under California law, a party opposing enforcement of a contractual provision on grounds of unconscionability must prove both procedural ***and*** substantive unconscionability. *See, e.g.*, *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 690 (Cal. 2000). Procedural unconscionability involves "oppression" or "surprise" in the making of the agreement (*id.*), while substantive unconscionability focuses on whether the contractual term in question is so "overly harsh" or "one-sided" (*id.*) as to "shock the conscience." *Belton v. Comcast Cable Holdings*, LLC, 60 Cal. Rptr. 3d 631, 649–50 (Ct. App. 2007); *Aron v. U-Haul Co. of Cal.*, 49 Cal. Rptr. 3d 555, 564 (Ct. App. 2006).  Put another way, the term must be one that "***no man in his senses, and not under delusion***, would make on the one hand, and [that] no honest and fair man would accept on the other." *Herbert v. Lankershim*, 71 P.2d 220, 257 (Cal. 1937) (emphasis added) (quoting *Odell v. Moss*, 62 P. 555, 557 (Cal. 1900) (quoting in turn 1 J. Story, Commentaries on Equity Jurisprudence § 244 (14th ed. 1918))); *see also Cal. Grocers Ass'n v. Bank of Am.*, 27 Cal. Rptr. 2d 396, 402 (Ct. App. 1994).

In performing the unconscionability inquiry, California courts employ a "sliding scale": "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz*, 6 P.3d at 690 (quotation marks omitted).  In other words, if "the procedural unconscionability, although extant, [is] not great," the party attacking the term must prove "a greater degree of substantive unfairness." *Marin Storage & Trucking, Inc. v. Benco Contracting*

& *Eng'g, Inc.*, 107 Cal. Rptr. 2d 645, 656–57 (Ct. App. 2001).  Under California's sliding-scale

approach, ATTM's arbitration provision is fully enforceable.

### A.   Plaintiffs Can Establish At Most Only A Modest Degree Of Procedural Unconscionability.

We acknowledge that the Ninth Circuit held in *Shroyer* that "a contract may be

procedurally unconscionable under California law when the party with substantially greater

bargaining power presents a 'take-it-or-leave-it' contract to a customer—even if the customer

has a meaningful choice as to service providers."  *Shroyer*, 498 F.3d at 985 (internal quotation

marks omitted).[6]  As the California Court of Appeal has made clear, however, the non-negotiable

nature of an agreement suffices only to establish "a minimal degree of procedural

unconscionability."  *Gatton*, 61 Cal. Rptr. 3d at 356.

---

[6]     For purposes of preserving this issue for possible Supreme Court review, we submit that the Ninth Circuit erred in "follow[ing] the [California] courts that reject the notion that the existence of 'marketplace alternatives' bars a finding of procedural unconscionability," and declining to follow the conflicting line of California cases that have held that there can be no procedural unconscionability when the customer has meaningful alternatives to contracting with the defendant.  *See Shroyer*, 498 F.3d at 985.  The two competing lines of cases reveal an unmistakable pattern.  The state-court decisions that find non-negotiable form contracts to be per se procedurally unconscionable regardless of the availability of market alternatives ***all involve arbitration provisions***.  *See Gatton v. T-Mobile USA, Inc.*, 61 Cal. Rptr. 3d 344, 352–57 (Ct. App. 2007); *Szetela v. Discover Bank*, 118 Cal. Rptr. 2d 862, 867 (Ct. App. 2002); *Villa Milano Homeowners Ass'n v. Il Davorge*, 102 Cal. Rptr. 2d 1, 5–6 (Ct. App. 2000).  In contrast, the state-court cases that reject the argument that form contracts are procedurally unconscionable when meaningful substitutes are available ***all involve other types of contractual provisions***.  *See Belton*, 60 Cal. Rptr. 3d at 650 (requirement that cable music subscribers receive basic cable television); *Wayne v. Staples, Inc.*, 37 Cal. Rptr. 3d 544, 556 (Ct. App. 2006) (declared-value insurance for package shipping); *Aron*, 49 Cal. Rptr. 3d at 564 (rental truck refueling policy); *Morris v. Redwood Empire Bancorp*, 27 Cal. Rptr. 3d 797, 807 (Ct. App. 2005) (termination fee); *Dean Witter Reynolds, Inc. v. Super. Ct.*, 259 Cal. Rptr. 789, 795 (Ct. App. 1989) (termination and annual fee).  The conflict thus hinges entirely on whether an arbitration provision is at issue.  *See generally* Stephen A. Broome, *An Unconscionable Application of the Unconscionability Doctrine: How the California Courts Are Circumventing the Federal Arbitration Act*, 3 HASTINGS BUS. L.J. 39, 60–67 (2006) (explaining the de facto disparate treatment of arbitration provisions under California's procedural-unconscionability doctrine).  Because the FAA forbids California from applying a different standard of procedural unconscionability to arbitration provisions than it applies to other provisions, the Ninth Circuit erred in adopting California's arbitration-specific rule.

Plaintiffs cannot establish any other measure of oppression.  A cell phone—and especially an iPhone—plainly is a "nonessential recreational" good, and plaintiffs "always ha[d] the option of simply forgoing" wireless service.  *Belton*, 60 Cal. Rptr. 3d at 650 (holding that cable music service is non-essential); *see also Provencher v. Dell Inc.*, 409 F. Supp. 2d 1196, 1202 (C.D. Cal. 2006) (personal computers are non-essential); *cf. Riensche v. Cingular Wireless LLC*, 2007 WL 3407137, at * 8 (W.D. Wash. Nov. 9, 2007) ("telephone service, particularly cellular service, is not a necessity").[7]

Nor can the Stieners claim that they were "surprised" by their arbitration agreement, as a recent decision of the California Court of Appeal illustrates.  In *Gatton*, a group of wireless customers challenged on unconscionability grounds the class waiver in T-Mobile's service agreement.  The court concluded that "plaintiffs ha[d] not shown surprise" because "[t]he arbitration provision was not disguised or hidden, and T-Mobile made affirmative efforts to bring the provision to the attention of its customers."  61 Cal. Rptr. 3d at 352.  Specifically, (i) the contract both referred to the terms and conditions contained in a separate Welcome Guide and expressly mentioned the arbitration provision; (ii) the terms and conditions began by admonishing customers to read the terms and informed them that they had to agree with the terms in order to use the service; and (iii) the box containing the phone was sealed with a sticker that adverted to the terms and conditions, including the arbitration provision.  *Id*. at 347.

Similarly, to activate their iPhones plaintiffs were required to click on a box next to the

_____

[7]    The California Court of Appeal has reached this same conclusion about the purchase of a home—a far weightier matter than initiating cell phone service.  As that court explained, the purchase of a home "does not involve the same concerns [another] court had about hospital admissions * * *—while home buying may be stressful, it is not a traumatic experience like being admitted to the hospital, and no one is directing a home buyer to purchase a particular home like a doctor directs a patient to a particular hospital."  *Trend Homes, Inc. v. Super. Ct.*, 32 Cal. Rptr. 3d 411, 418 (Ct. App. 2005) (citing *Wheeler v. St. Joseph Hosp.*, 133 Cal. Rptr. 775, 786 (Ct. App. 1976)).

-10-

statement "I have read and agree to the AT&T Service Agreement." Berinhout Dec. ¶ 9. The text of the service agreement, including its terms of service, was displayed in a text box immediately above the statement the plaintiffs checked (*id.* Ex. 4, at 7), and the first sentence of text plainly advised plaintiffs that, by checking the box next to the acknowledgment below, they would be "bound" to "the Terms of Service, including the ***binding arbitration clause***." *Id.* (emphasis added). The terms of service were also available on ATTM's web site and in the store in which plaintiffs bought their iPhones. *Id.* ¶ 8. In addition, ATTM mailed plaintiffs the applicable Terms of Service booklet upon activation. *Id.* ¶ 10. The top of the first page of the Terms of Service booklet prominently states: "**This Agreement requires the use of arbitration to resolve disputes** * * *." *Id.* Ex. 3, at 1 (emphasis in original). The first paragraph of the arbitration provision itself states: "**Any arbitration under this Agreement will take place on an individual basis; class arbitrations and class actions are not permitted.**" *Id.* Ex. 3, at 11 (emphasis in original). In light of these facts, plaintiffs simply cannot claim that they were "surprised" by the arbitration agreement's class waiver.

In short, the fact that ATTM's arbitration provision is contained in a form contract implicates at most only a minimal quantum of procedural unconscionability. Accordingly, under California's sliding-scale approach plaintiffs must "make a ***strong showing*** of substantive unconscionability to render [their] arbitration provision unenforceable." *Gatton*, 61 Cal. Rptr. 3d at 356 (emphasis added). As we next explain, plaintiffs cannot demonstrate that ATTM's arbitration provision is substantively unconscionable at all, much less make the requisite "strong showing" of substantive unfairness.

**B.    ATTM's Arbitration Provision Is Not Substantively Unconscionable At All, Much Less "Great[ly]" So.**

In *Discover Bank*, the California Supreme Court held that a class-arbitration prohibition in a credit-card issuer's arbitration provision was substantively unconscionable because it

effectively "insulate[d]" the company from liability for the $29 claims at issue in that case.  113

P.3d at 1109.  The court made clear, however, that it was not holding "that *all* class action

waivers are necessarily unconscionable."  *Id.* at 1110 (emphasis added).  In particular, whether a

class-action prohibition is substantively unconscionable turns on whether the plaintiff may

feasibly vindicate "small" claims without using the class-action mechanism and, conversely,

whether the prohibition threatens to insulate the company from liability for cheating its

customers.  *Id.*

Applying *Discover Bank*, the Ninth Circuit recently held that the class-arbitration

prohibition in an earlier version of ATTM's arbitration provision was substantively

unconscionable.  *Shroyer*, 498 F.3d at 986–87.  That arbitration provision specified that ATTM

(then known as Cingular Wireless) would pay the full cost of arbitration and, in addition, would

pay the   plaintiff's attorneys' fees if the arbitrator awarded the plaintiff the amount of his or her

demand or more.  *Id.* at 986.  The Ninth Circuit found ATTM's "attempt to distinguish *Discover*

*Bank* based on the availability of attorneys' fees and arbitration costs [to be] without merit."  *Id.*

According to the Ninth Circuit, "the [California Supreme Court] was concerned that when the

potential for individual *gain* is small, very few plaintiffs, if any, will pursue individual arbitration

or litigation, which greatly reduces the aggregate liability a company faces when it has exacted

small sums from millions of consumers.  It did not suggest that a [class action] waiver is

unconscionable only when or because a plaintiff in arbitration may experience a net loss

(including attorneys' fees and costs)."  *Id.* (emphasis in original; citation omitted).

*Shroyer* suggests that the class-arbitration prohibition in ATTM's *revised* arbitration

provision is not unconscionable under *Discover Bank*.  As noted above, ATTM has built the

necessary "individual gain" into its arbitration provision by providing that any California

customer who obtains an arbitral award in excess of ATTM's last settlement offer will receive a

-12-

minimum of **$7,500**, while his or her counsel will receive **double** attorneys' fees. *See* page 4 & n.3, *supra*. These amounts far exceed the level of damages that Congress and the California Legislature have deemed sufficient to encourage individuals and their counsel to pursue statutory claims. *See* Nagareda Dec. ¶ 14 (citing $500 statutory damages provision in Telephone Consumer Protection Act and $1,000 statutory damages provision in Cable Act); 15 U.S.C. § 1681n (statutory damages of between $100 and $1,000 available under Fair Credit Reporting Act); Cal. Civ. Code § 54.3(a) ($1,000 statutory damages under Disabled Persons Act).[8] The premiums available under ATTM's arbitration procedures also substantially exceed the typical incentive payments awarded to class representatives as part of court-approved class settlement agreements. *See* Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L. REV. 1303, 1333 & tbl. 5 (2006) (finding median incentive award for class representatives in consumer and consumer credit cases to be $2,089 and $1,045 respectively).

In light of the opportunities for "individual gain" that are built into ATTM's arbitration provision, the concerns that caused the California Supreme Court and the Ninth Circuit to invalidate the class-arbitration prohibitions in *Discover Bank* and *Shroyer* are inapplicable here. ATTM has not immunized itself from liability because ATTM's arbitration provision, and the premiums that are available under it, serve as affirmative inducements for customers to pursue

---

[8]     These legislative determinations of the amount needed to encourage vindication of statutory rights are entitled to great (if not dispositive) weight. *See Santisas v. Goodin*, 951 P.2d 399, 413 (Cal. 1998) (noting court's "reluctan[ce] to declare contractual provisions void or unenforceable on public policy grounds without firm legislative guidance"); *People v. Mun. Ct.*, 574 P.2d 425, 427 (Cal. 1978) (the courts' "common law powers * * * should never be exercised in such a manner as to * * * frustrate legitimate legislative policy") (internal quotation marks omitted).

their claims in arbitration and for lawyers to represent such customers.[9]  The premium provisions also encourage ATTM to try to resolve disputes quickly—*i.e.*, before arbitration—by making settlement offers that satisfy its customers.  If it fails to resolve a customer's claims, ATTM runs the risk of paying substantial premiums to the customer and his or her counsel, as well as the full costs of arbitration, which can run into the thousands of dollars.[10]

In short, ATTM's arbitration provision does not operate as an exculpatory clause.  As Professor Nagareda explains, although arbitration provisions containing class-arbitration prohibitions may be substantively unconscionable when their enforcement would result in "the effective elimination of consumers' private rights of action" (Nagareda Dec. ¶ 7), ***ATTM's*** arbitration provision is not of that ilk.  It "reduces dramatically the cost barriers to the bringing of individual consumer claims, is likely to facilitate the development of a market for fair settlement of such claims, and provides financial incentives for consumers (and their attorneys, if any) to pursue arbitration in the event that they are dissatisfied with whatever offer ATTM has made to settle their disputes."  *Id.* ¶ 11.  It therefore is not substantively unconscionable at all.  At minimum, taking into account the (at most) modest level of procedural unconscionability, this unprecedentedly pro-consumer arbitration provision does not rise sufficiently high on the spectrum of substantive unconscionability as to warrant refusing to enforce it.  *See Gatton*, 61 Cal. Rptr. 3d at 356 (requiring "strong showing" of substantive unconscionability when only basis for finding procedural unconscionability is fact that contract is non-negotiable); *Marin*

---

[9]    It bears noting in this regard a recent study's conclusion that the de facto monetary threshold for obtaining the assistance of an attorney is lower in arbitration than in court.  *See* Lewis L. Maltby, *Employment Arbitration and Workplace Justice*, 38 U.S.F. L. REV. 105, 115–17 (2003).

[10]    The bare minimum in arbitration costs that ATTM must pay if a customer selects an in-person hearing is $1,700:  $750 in administrative fees, a $200 case service fee, and $750 in arbitrator fees.  Berinhout Dec. Ex. 9–10 (*AAA Consumer Procedures* § C-8).

*Storage*, 107 Cal. Rptr. 2d at 656–57 (when procedural unconscionability, "although extant, [is] not great," party seeking to evade contractual obligation must prove "a greater degree of substantive unfairness").[11]

### III.   THE FAA WOULD PREEMPT ANY HOLDING THAT ATTM'S ARBITRATION PROVISION IS UNENFORCEABLE UNDER CALIFORNIA LAW.

If, notwithstanding the opportunities for "individual gain" that ATTM has built into its arbitration provision, this Court were to conclude that the class-arbitration prohibition is unconscionable under California law, so construed California law would be preempted by the FAA.  We acknowledge that in *Shroyer* the Ninth Circuit rejected ATTM's express and conflict preemption arguments.  *See Shroyer*, 498 F.3d at 987–93.  Although the Ninth Circuit's holding on conflict preemption is binding on this Court,[12] for reasons we discuss below (at pages 16–17) its holding on express preemption is not.

Section 2 of the FAA specifies that arbitration provisions "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of ***any*** contract." 9 U.S.C. § 2 (emphasis added).  The Ninth Circuit has recognized that this means that

---

[11]    Any attempt by plaintiffs to invoke the California Supreme Court's recent decision in *Gentry v. Superior Court*, 165 P.3d 556 (Cal. 2007), would be misguided.  *Gentry* involved the "statutory right to receive overtime pay," a right which the court held is expressly "unwaivable." *See id.* at 563.  No unwaivable statutory rights are at issue here.  Moreover, given ATTM's exceptionally pro-consumer arbitration procedures discussed above, plaintiffs cannot show that class arbitration would "be a *significantly* more effective practical means of vindicating [plaintiffs' rights] than individual litigation or arbitration" and that "disallowance of the class action [would] likely lead to a less comprehensive enforcement of [the applicable] laws."  *Id.* at 568 (emphasis added).

[12]    We disagree with that holding and preserve for possible further review our contention that the use of unconscionability law to bar businesses from requiring that arbitration be conducted on an individual basis conflicts with the objectives of the FAA and is, for that reason, preempted.  *See generally* Christopher R. Drahozal, *Arbitration Costs and Contingent Fee Contracts*, 59 VAND. L. REV. 729, 776 (2006) ("[S]tate law challenges to arbitration agreements cannot be based on unique characteristics of the arbitration process, such as the lack of class relief.").

---

a law that applies only to "a limited set of transactions * * * is not a law of 'general applicability'" and therefore is preempted by Section 2. *Ting v. AT&T*, 319 F.3d 1126, 1148 (9th Cir. 2003). Moreover, "[e]ven when using doctrines of general applicability, state courts are not permitted to employ those general doctrines in ways that subject arbitration clauses to special scrutiny." *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 167 (5th Cir. 2004). That would be precisely the situation if this Court were to hold that the class-arbitration prohibition in ATTM's arbitration provision is unconscionable under *Discover Bank* and *Shroyer* notwithstanding the ample opportunities for "individual gain" that ATTM built into the arbitration provision.

Under California's generally applicable unconscionability principles, a contractual term is substantively unconscionable only if it so "shock[s] the conscience" (*Belton*, 60 Cal. Rptr. 3d at 651) that a person would have to be "under delusion" (*Herbert*, 71 P.2d at 257) to agree to it. The Ninth Circuit held in *Shroyer* that "[t]he rule announced in *Discover Bank* is simply a refinement of the unconscionability analysis applicable to contracts generally in California." 498 F.3d at 987. Accepting *arguendo* that the Ninth Circuit's decision striking down ATTM's superseded arbitration provision entailed a mere "refinement" of California's generally applicable "shock the conscience" standard, the same surely could not be said of any holding that ATTM's **revised** arbitration provision, with its extraordinary opportunities for "individual gain," is unenforceably unconscionable. To declare this exceptionally pro-consumer arbitration provision unconscionable would require a total distortion of what it means to "shock the conscience"—one that would enable courts to justify striking down virtually any contractual provision that they think is unfair to one of the contracting parties. That is manifestly not California law—at least not with respect to any contractual provisions other than ones agreeing to resolve disputes on an individual basis. As the California Court of Appeal has put it, "with a

-16-

concept as nebulous as 'unconscionability,' it is important that courts not be thrust in the paternalistic role of intervening to change contractual terms that the parties have agreed to merely because the court believes the terms are unreasonable." *Koehl v. Verio, Inc.*, 48 Cal. Rptr. 3d 749, 769 (Ct. App. 2006) (quoting *Am. Software, Inc. v. Ali*, 54 Cal. Rptr. 2d 477, 480 (Ct. App. 1996)).

In short, as the Seventh Circuit has pointed out, "[t]he cry of 'unconscionable!' just repackages the tired assertion that arbitration should be disparaged as second-class adjudication. It is precisely to still such cries that the Federal Arbitration Act equates arbitration with other contractual terms." *Carbajal v. H & R Block Tax Servs. Inc.*, 372 F.3d 903, 906 (7th Cir. 2004). Because it would take far more than a mere "refinement" of California's "shock the conscience" standard to justify invalidating the class-arbitration prohibition in ATTM's path-breaking arbitration provision, the Court should hold that Section 2 of the FAA precludes interpreting *Discover Bank* and *Shroyer* to invalidate the requirement of individual dispute resolution in ATTM's arbitration provision.

**CONCLUSION**

ATTM's motion to compel arbitration should be granted, and plaintiffs' claims against ATTM should be dismissed.[13]

DATED:  November 21, 2007              MAYER BROWN LLP

                                       By: /s/ Donald M. Falk
                                           Donald M. Falk

                                       *Attorneys for Defendant AT&T MOBILITY LLC*

---

[13]     District courts may dismiss claims when they are subject to arbitration.  *See Thinket Ink Info. Res., Inc. v. Sun Microsys., Inc.*, 368 F.3d 1053, 1060 (9th Cir. 2004); *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988) (Section 3 of the FAA "did not limit the [district] court's authority to grant a dismissal").

1

**PROOF OF SERVICE**

2

3        I am employed in Santa Clara County, California.  I am over the age of eighteen

4   years and not a party to the within-entitled action.  My business address is Two Palo Alto

5   Square, Suite 300, Palo Alto, California  94306-2112.

6        On November 21, 2007, I served the foregoing document(s) described as

7    •    **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
          MOTION OF DEFENDANT AT&T MOBILITY LLC TO COMPEL
8          ARBITRATION AND TO DISMISS CLAIMS PURSUANT TO THE
          FEDERAL ARBITRATION ACT**

9

10   on each interested party, as follows:

11        by transmitting via facsimile the document(s) listed above to the fax number(s) set
          forth below on this date before 5:00 p.m.

12

13   X    by placing the document(s) listed above in a sealed envelope with postage thereon
          fully prepaid, in the United States mail at Palo Alto, California addressed as set
14        forth below.

15        by placing the document(s) listed above in a sealed facsimile & U.S. Mail envelope
          and affixing a pre-paid air bill, and causing the envelope to be delivered to a fac-
16        simile & U.S. Mail agent for delivery.

17   X    by personally delivering the document(s) listed above to the person(s) at the ad-
          dress(es) set forth below.

18

19   H. Tim Hoffman                          Max Flokenflik
     Hoffman & Lazear                        Folkenflik & McGerity
20   180 Grand Avenue, Suite 1550            1500 Broadway, 21st Floor
     Oakland, CA 94612                       New York, NY 10036
21   510-763-5700

22   VIA HAND DELIVERY                       VIA U.S. MAIL

23        I declare under penalty of perjury under the laws of the United States of America that the

24   above is true and correct.

25        Executed on November 21, 2007, at Palo Alto, California.

26

27                                    /s/ Meghan C. Samora
                                          Meghan C. Samora
28