FOLKENFLIK & McGERITY
Max Folkenflik, Esq.
1500 Broadway, 21st Floor
New York, NY 10036
Telephone: (212) 757-0400

HOFFMAN & LAZEAR
H. Tim Hoffman, Esq.
Arthur W. Lazear, Esq.
180 Grand Avenue, Suite 1550
Oakland, CA 94612
Telephone: (510) 763-5700

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| ZOLTAN STIENER and YNEZ STIENER, | Case No. C 07-04486 SBA |
| Plaintiffs, | [Assigned to the Honorable Saundra Brown Armstrong] |
| v. | |
| APPLE COMPUTER, INC., AT&T MOBILITY, LLC, and DOES 1 through 50, inclusive, | ***PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION*** |
| Defendants. | |

Dockets.Justia.com

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES**...................................................................................................ii - iv

**PRELIMINARY STATEMENT**.........................................................................................1

**STATEMENT OF FACTS**..................................................................................................4

    A.     The Nature of the Claim..................................................................................4

    B.     The Formation of the Contract Between AT&T and the Stieners...........................4

    C.     The Arbitration Clause.....................................................................................5

**ARGUMENT:**......................................................................................................................7

    **POINT I:**     **THERE IS NO ENFORCEABLE
               AGREEMENT TO ARBITRATE**.............................................................7

        A.     The Legal Standards for Enforcement of
              Arbitration Agreements...................................................................................7

        B.     The Arbitration Agreement is Unconscionable
              and Unenforceable...........................................................................................7

    **POINT II:**    **IF THERE WERE AN ENFORCEABLE ARBITRATION
               AGREEMENT, THE MOTION STILL SHOULD BE
               DENIED BECAUSE THE STIENERS' CLAIMS FOR
               PUBLIC INJUNCTIVE RELIEF ARE NOT SUBJECT
               TO ARBITRATION**..................................................................................16

**CONCLUSION**....................................................................................................................16

1

**TABLE OF AUTHORITIES**

2

3

FEDERAL CASES

4
5

*Bradberry v. T-Mobile USA, Inc.*
U.S. Dist LEXIS 348226 (N.D. Cal. Apr. 27, 2007)...........................................................................3

6
7

*Cervantes v. Pacific Bell Wireless,*
2006 U.S. Dist. LEXIS 89198 (S.D. Cal. Mar. 8, 2006)....................................................................3

8
9

*Ford v. Verisign, Inc.,*
2006 U.S. Dist. LEXIS 88856 (S.D. Cal. Mar. 8, 2006)....................................................................3

10
11

*Green Tree Financial Corp. v. Bazzle,*
539 U.S. 444 (2003)........................................................................................................................16

12
13

*Hoffman v. Cingular Wireless, LLC,*
2006 U.S. Dist. LEXIS 79067 (S.D. Cal. Oct. 26, 2006)..................................................................3

14
15

*Iberia Credit Bureau, Inc. v. Cingular Wireless LLC,*
379 F.3d 159 (5th Cir. 2004)........................................................................................................15

16
17

*Ingle v. Circuit City Stores, Inc.,*
328 F.3d 1165, 1176 (9th Cir. 2003)............................................................................................11

18
19

*Janda v. T-Mobile, USA, Inc.,*
2006 U.S. Dist. LEXIS 15748 (N.D. Cal. Mar. 17, 2006)................................................................3

20
21

*Laster v. T-Mobile United States, Inc.,*
407 F. Supp. 2d 1181 (S.D. Cal. 2005).............................................................................................3

22
23

*Lozano v. AT&T Wireless Servs.,*
2007 U.S. App. LEXIS 22430 (9th Cir. 2007)..................................................................................3

24
25

*Mastrobuono v. Shearson Lehman Hutton, Inc.,*
514 U.S. 52, 60 (1995).......................................................................................................................7

26
27

*Shroyer v. New Cingular Wireless Servs.,*
498 F.3d 976 (9th Cir. 2007)....................................................................................................Passim

28

ii

*Stern v. Cingular Wireless Corp.,*
453 F. Supp. 2d 1138 (2006)...............................................................................................................3

*Southland Corp. v. Keating*
465 U.S. 1 (1984)...............................................................................................................................13

*Ting v. AT&T,*
319 F.3d 1126, 1151 (9th Cir. 2003)................................................................................................3,11

*Volt Info. Scis., Inc. v. Bd. of Trustees of leland Stanford Junior Univ.,*
489 U.S. 468 (1989).............................................................................................................................7

*Winig v. Cingular Wireless, LLC.,*
2006 U.S. Dist. LEXIS 73137 (N.D. Cal. Sept. 27, 2006)...............................................................3

## STATE CASES

*America Online, Inc. v. Superior Court,*
90 CAL. App. 4th 1 (2001).................................................................................................................11

*Armenduriz v. Foundation Health Psychcare Services, Inc.*
24 Cal. 4th 83 (2000).........................................................................................................................11

*Blue Chip Stamps v. Superior Court of Los Angeles County,*
18 Cal. 3d 381 (1976)........................................................................................................................12

*Cohen v. DirecTV, Inc.,*
142 Cal. App. 4th 1442 (2006)...........................................................................................................8

*Cruz v. PacificCare Health Systems, Inc.*
(2003) 30 Cal. 4th 303......................................................................................................................16

*Discover Bank v. Superior Court,*
36 Cal. 4th 148 (2005).................................................................8, 9, 10, 11, 12, 13, 14, 15

*Gatton v. T-Mobile USA, Inc.,*
152 Cal. App. 4th 571 (2007)..............................................................................................................9

*Herrington v. Verisign, Inc.,*
No. 1915 (S.D. Cal. Aug. 3, 2006).....................................................................................................3

iii

*Keating v. Superior Court,*
31 Cal.3d 584 (1982)............................................................................................................13, 14, 15

*Klussman v. Cross Country Bank,*
134 Cal. App. 4th 1283 (2005)...................................................................................................8

*Linder v. Thrifty Oil Co.,*
23 Cal. 4th 429, 445-446 (Cal. 2000).....................................................................................12, 15

*Little v. Auto Stiegler, Inc.*
29 Cal. 4th 1064 (2003)..............................................................................................................14

*Page v. Verisign, Inc.,*
No. 06-0906 (S.D. Cal. Aug. 3, 2006)..........................................................................................3

*Scott v. Cingular Wireless,*
160 Wn.3d 843, 855 (Wash. 2007).........................................................................................3, 15

*Szetela v. Discover Bank,*
97 Cal. App. 4th 1094 (Cal. Ct. App. 2002)..........................................................................10, 11

*Vasquez v. Superior Court*
4 Cal.3d 800, 808 (1971)............................................................................................................12

## PRELIMINARY STATEMENT

This is a motion by Defendant AT&T Mobility, LLC, ("AT&T") against Plaintiffs Zoltan Stiener and Ynez Stiener (the "Stieners"), to compel enforcement of an arbitration clause which contains a class action waiver. AT&T claims that when the Stieners "contracted for wireless service they expressly agreed to arbitrate . . . on an individual (rather than a class-wide) basis" and that "[t]he Federal Arbitration Act . . . as well as applicable state statutes requires them [to arbitrate]. AT&T Mem. at 1. In fact, however, none of that is true.

First, the law is clear that class action waiver in the contractual agreement, which is governed by California law, is unconscionable and unenforceable. Indeed, the law in the Ninth Circuit, which clearly and repeatedly has held such clauses to be unenforceable under California law (which applies here), has been made chiefly in cases where this very same defendant has sought to enforce its agreements with the same class action waiver and which are unconscionable and unenforceable for the same reasons.

*Shroyer v. New Cingular Wireless Servs.*, 498 F.3d 976 (9th Cir. 2007), decided by the Ninth Circuit just last August, is directly on point and governs this case. There, this same defendant,[1] represented by the same lead counsel as is appearing here, made the same arguments it now makes to enforce a materially similar contract with a class action waiver. The Ninth Circuit did not hesitate, however, to invalidate the class action waiver as unconscionable. *See, id.* at 981-97. Because AT&T had drafted the agreement so that if the class action waiver failed, the arbitration clause automatically failed also, and the clause was stricken. *Id.* at 986-87. In so doing,

---

[1] AT&T Corporation, AT&T Mobility LLC, New Cingular Wireless Services, Inc., and Cingular Wireless, LLC, are all corporate successors, predecessors or affiliates. AT&T Corporation is the parent company. A 2004 merger between Cingular Wireless LLC and AT&T Wireless Services, Inc. created New Cingular Wireless Services, Inc. *See, Shroyer, supra.* at 979.

the Ninth Circuit noted that it was in agreement with at least ten recent district court decisions construing substantially similar contracts in cell phone agreements,[2] half of which involved this same Defendant.[3] Defendants' other argument, that the Federal Arbitration Act pre-empts California law on unconscionability of class action waivers, was also definitively rejected by the Ninth Circuit in *Shroyer*. Contrary to AT&T's claims, that aspect of the decision is also binding on this Court.

Nor was that the first time the Ninth Circuit has rejected this Defendants' unconscionable attempts to avoid class actions. Four years ago in *Ting v. AT&T*, 319 F.3d 1126 (9th Cir. 2003), the Circuit invalidated AT&T's attempt to impose a class action waiver.[4] Similar efforts in state courts within the Ninth Circuit have also been rebuffed. *See*, *Scott v. Cingular Wireless*, 160 Wn.2d 843, 855 (Wash. 2007).

---

[2] The Court held: "Our conclusion here is similar to that reached by district judges in the Northern, Central and Southern Districts of California in at least ten other cases. *See Bradberry v. T-Mobile USA, Inc.*, No. 06-6567, 2007 U.S. Dist. LEXIS 34826 (N.D. Cal. Apr. 27, 2007) (Wilken, J.); *Winig v. Cingular Wireless, LLC*, 06-4297, 2006 U.S. Dist. LEXIS 73137 (N.D. Cal. Sept. 27, 2006) (Chesney, J.); *Hoffman v. Cingular Wireless, LLC*, No. 06-1021, 2006 U.S. Dist. LEXIS 79067 (S.D. Cal. Oct. 26, 2006) (Whelan, J.); *Page v. Verisign, Inc.*, No. 06-0906 (S.D. Cal. Aug. 3, 2006) (Miller, J.); *Herrington v. Verisign, Inc.*, No. 1915 (S.D. Cal. Aug. 3, 2006) (Miller, J.); *Stern v. Cingular Wireless Corp.*, 453 F. Supp. 2d 1138 (2006) (Snyder, J.); *Janda v. T-Mobile, USA, Inc.*, No. 05-3729, 2006 U.S. Dist. LEXIS 15748 (N.D. Cal. Mar. 17, 2006) (White, J.); *Ford v. Verisign, Inc.*, No. 05-0819, 2006 U.S. Dist. LEXIS 88856 (S.D. Cal. Mar. 8, 2006) (Miller, J.) (discussing the court's December 19, 2005 order); *Cervantes v. Pacific Bell Wireless*, No. 05-1469, 2006 U.S. Dist. LEXIS 89198 (S.D. Cal. Mar. 8, 2006) [**3] (Miller, J.) (discussing the court's January 10, 2006 order); *Laster v. T-Mobile United States, Inc.*, 407 F. Supp. 2d 1181 (S.D. Cal. 2005) (Sabraw, J.).

*Shroyer, supra*, 498 F.3d at 978.

[3] In addition to the cases where Cingular is named in the case name, the Cingular agreement was also ruled unconscionable in the *Ford* and *Cervantes* cases.

[4] In *Lozano v. AT&T Wireless Servs.*, 2007 U.S. App. LEXIS 22430 (9th Cir. 2007), the Circuit had remanded a District Court decision to compel arbitration to be reconsidered in light of *Ting*. On remand, the District Court denied arbitration. The Defendant initially appealed, then withdrew its appeal of the arbitration issue. *Id.* at 7-8.

It is true that AT&T has sought to tinker with the terms of the arbitration clause, as it has in the past, this time to offer "premium" payments which it claims provide an "incentive" to individual actions. As we show below, however, the contractual difference, is more cosmetic than real. The vaunted "incentives" to bring individual actions can be readily defeated by offering the plaintiff a settlement payment of the small amount at stake which, in this case, could be as little as $20. If on a contingency, the attorney's fee would barely pay for the cup of coffee served to the client at the initial consultation. For the client to pay an attorney for services in these circumstances would be madness.

Even were these "incentives" not illusory, which they are whenever small amounts are at stake, they still do not address the core defects which have caused the California Supreme Court, and the Ninth Circuit to hold arbitration clauses with class action waivers unconscionable under California law.

Further, even if the arbitration clause and the Class Action waiver were not unconscionable, the motion must be denied because Plaintiffs' request for public injunctive relief is not arbitrable.

## STATEMENT OF FACTS

### A.    The Nature of the Claim

This action arises out of Defendants' pattern and practice of failing to inform a nationwide group of initial purchasers of the iPhone cellular telephone that fees of over $100 would be required to replace the iPhone battery and maintain service while the battery was being replaced. Effectively, Plaintiffs complain that the Defendants have engineered the product so that the battery is not replaceable by the consumer and have used that fact to extract an unfairly high price for battery replacement. It is alleged that this was not disclosed prior to the Plaintiffs' (or other class members) purchase of the iPhone.

**B.   The Formation of the Contract Between AT&T and the Stieners**

Plaintiffs bought two iPhones for $599 each, plus tax, on June 29, 2007, in San Francisco, California. As a condition of using the iPhone, Plaintiffs were obligated to agree to a two-year service plan with AT&T. Complaint ¶29. When the Stieners purchased their iPhones and contracted for AT&T telephone service for their cell phones, apparently they were given only a document summarizing AT&T's rate plans and a handout that describes the activation process. *See* Declaration of Neal S. Berinhout, submitted in support of the motion (hereinafter Berinhout Dec.) and AT&T Exhibits 1 and 2.

Apparently, at the time of purchase somewhere in the store there was an AT&T Terms of Service Booklet which contains an arbitration clause. Berinhout Dec. ¶8, and Defendants' Exhibit 3. The Terms of Service agreement was also available on the web site, http://www.wireless.att.com, if one knows where to look. *See*, screenshot of AT&T web site annexed as Exhibit B to the Declaration of Max Folkenflik, submitted herewith. Significantly, neither of the two documents given to the Stieners at the point of purchase directed them to the Terms of Service Agreement in the store, or to the agreement on the web site. *See* Defendants' Exhibits 1 and 2.

Thereafter, in order to use the iPhones, Stieners had to "activate" them. That process involves connecting the iPhone to a computer, and the computer to the internet and using Apple's iTunes program to complete the activation process. *See* Berinhout Dec. ¶9.   A video of the activation process can be found at YouTube at http://www.youtube.com/watch?v=TP52icBd-jM (hereinafter YouTube Activation Video).

**C.   The Arbitration Clause**

During the course of activation, a screen comes up that states "Accept AT&T Service Agreement" and the Terms of Service, which are 18 pages long, including cover and index, *see*, Defendants' Exhibit 3, show up in a box on the screen that can only show a page or less at a time.

The customer is required to scroll through screen after screen in order to read its terms. See, Defendants' Exhibit 4 at page 7, and YouTube Activation Video at 3:40-4:00.

The Terms of Service Agreement, which appears on the activation screen, differs in at least one material way from the printed version that allegedly was "available" at the AT&T store and is submitted as Defendants' Exhibit 3: in the Exhibit, the sentence "This Agreement requires the use of arbitration to resolve disputes and also limits the remedies available to you in the event of a dispute," appears in bold text. However, on the computer screen, that sentence is buried in the middle of the screen and is not in bold text or in any other way "conspicuous." Defendants' Exhibit 4 at page 7. Thus, when Defendants quote the arbitration language in Exhibit 3 in bold text and notes "emphasis in the original," it is not true that the "emphasis" was in the original on the computer screen shown to the Stieners.

The arbitration agreement provides an elaborate system of dispute resolution. First, a Notice of Dispute must be sent to AT&T's General Counsel in Georgia, and if no resolution is agreed to in 30 days, then arbitration must be commenced before the American Arbitration Association ("AAA"). Exhibit 3 at 12-13.

The arbitration is on an individual basis only, not on a class or combined basis. Exhibit 3 at 12 and 15. The arbitrator is without authority to rule on a class basis and without authority to issue injunctive relief other than on an individual basis. Exhibit 3 at 15. While the agreement has a general severability clause, if the limits on class arbitrability are determined to be unenforceable, the entire arbitration clause fails. Exhibit 3 at 15.

AT&T agrees to pay the costs of the proceeding, a contract term previously held by the Courts to be insufficient to change the unconscionability analysis, but not attorneys' fees, except as provided by law or, if they are awarded, subject to the premium payments described below.

Exhibit 3 at 15.

The "premium payments" are a superficially attractive innovation. They provide under certain circumstances that a claimant can earn the greater of the amount of his/her award or the small claims jurisdictional amount in the relevant jurisdiction ($7,500 in California) as well as double attorneys' fees. Exhibit 3 at 14; Amex Mem. at 4; Cal. Code Civ. Proc. §116.221.

The catch, however, and it is a big one, is that to earn the premium payment, the arbitrator must make an award greater than any settlement offer made by AT&T. Exhibit 3 at 14. Accordingly, if the amount at issue is small, as in this case, and a plaintiff seeks to pursue arbitration, then AT&T can simply offer the plaintiff the $10 or $20 or $100 that is in dispute and the potential for any "premium payments" evaporates.

## ARGUMENT

### POINT 1

### THERE IS NO ENFORCEABLE AGREEMENT TO ARBITRATE

**A. The Legal Standards for Enforcement of Arbitration Agreements**

The parties agree that under AT&T's agreement, California law applies to determine this dispute over arbitrability unless that law is preempted by the Federal Arbitration Act.

It is firmly established that that decision on whether an agreement exists, and all defenses to enforcement under Section 2 of the FAA, 9 U.S.C. §2, are governed by the applicable state law. *See, Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 60 n.4 (1995); *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ,* 489 U.S. 468, 474, 478 (1989).

**B. The Arbitration Agreement is Unconscionable and Unenforceable**

It is well settled under California law, as the Ninth Circuit has repeatedly recognized, that arbitration clauses containing class action waivers are unconscionable and unenforceable.

*Shroyer v. New Cingular Wireless Servs.*, 498 F.3d 976 (9th Cir. 2007), is controlling. There, this same defendant, using a materially similar contract formation process sought to enforce a materially similar arbitration clause with a class action substantially identical waiver. The Ninth Circuit held the clause to be unconscionable and unenforceable as a matter of California law under the rule of *Discover Bank v. Superior Court*, 36 Cal. 4th 148 (2005).

Under *Shroyer*, in order to apply the rule of *Discover Bank*, the court is required to engage in a three-part inquiry (one, surprisingly left unmentioned by AT&T): "(1) whether the agreement is "'a consumer contract of adhesion'" drafted by a party that has superior bargaining power; (2) whether the agreement occurs "'in a setting in which disputes between the contracting parties predictably involve small amounts of damages;'" and (3) whether "'it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money.'" *Shroyer, supra.* at 983, citing, *Cohen v. DirecTV, Inc.,* 142 Cal. App. 4th 1442, 1451-53 (2006) (quoting *Discover Bank*, 36 Cal. 4th at 162-63); and *Klussman v. Cross Country Bank*, 134 Cal. App. 4th 1283, 1297 (2005).

*Shroyer* provides controlling answers to (1) and (2). In a contract formation process that cannot be distinguished meaningfully from that which occurred here, the Ninth Circuit found AT&T's agreement to be a contract of adhesion and procedurally unconscionable. In the same setting, with the same defendant as in this case, the Ninth Circuit also found that disputes with AT&T customers would predictably involve small amounts of damages.

The third *Shroyer* factor is supplied by the complaint. It is alleged that AT&T carried out a scheme to overcharge customers for battery replacements and to conceal that overcharge from

initial iPhone purchasers. *See*, Complaint ¶¶1, 30-31, 39. *Shroyer* is controlling and puts an end to this motion.[5]

AT&T does not dispute that under California law, AT&T's arbitration and class action waiver agreement is an adhesive contract and procedurally unconscionable. There was no possible negotiation over pre-printed terms too small to easily read in a computer program that the user had to scroll through to see, and that was provided only after the iPhone and the AT&T service were purchased. Significantly, since AT&T was the exclusive provider of service to the iPhone, the Stieners could not take any action to reject the arbitration clause of AT&T, without losing the value of the Apple iPhone.

As to substantive unconscionablity, AT&T ignores entirely the three-part test mandated by *Shroyer*, and takes the position that "*Shroyer* suggests that the class-arbitration prohibition in ATTM's *revised* arbitration provision is not unconscionable under *Discover Bank*," allegedly because AT&T " has built the necessary 'individual gain' into its arbitration provision by providing that any California customer who obtains an arbitral award in excess of ATTM's last settlement offer will receive a minimum of *$7,500*, while his or her counsel will receive *double* attorneys' fees. " AT&T Mem. at 12-13 , emphasis in the original. The argument has several separate fatal flaws.

First, the "incentive" argument ignores the critical fact that these incentives are entirely illusory: they evaporate entirely if AT&T offers the plaintiff a "settlement payment" equal to his

---

[5] AT&T attempts to avoid the three-part test established by the Ninth Circuit in *Shroyer*, by cherry picking some language from *Gatton v. T-Mobile USA, Inc.*, 152 Cal. App. 4th 571, 587 (Cal. Ct. App. 2007), that refers to a "take it or leave it" agreement as "minimally" procedurally unconscionable. *See Gatton* at 356, AT&T Mem. at 9. It then argues that its class action waiver does not have the required "high" degree of substantive unconscionablity required to result in non-enforcement, by ignoring the finding in *Gatton* that such a clause is highly unconscionable and unenforceable. Defendants also ignore the other defects in the class action waiver here which make these facts far more procedurally unconscionable that that in *Gatton*.

loss. Where the amount in dispute is predictably small, as it is in this case and the Ninth Circuit has found to be the case in cellular telephone contracts of this defendant, then a defendant subject to this incentive clause and a small claim would predictably offer a "settlement" in the small amount demanded. If that happens, the incentives no longer apply and the $20 case remains a $20 case.

More fundamentally, however, much as AT&T tries to argue to the contrary, the rule against class action waivers is not based on some Chicago School economic theory about the need for sufficient economic incentives for individual suits to proceed. Rather, it stems from the unfairness of an effectively one-sided agreement, and the benefits to the courts, to consumers, and to competition -- the benefit to society as a whole -- of discouraging unfair and fraudulent conduct by allowing identical wrongful conduct to be addressed in one collective action rather than millions of separate suits or arbitrations. A review of the development of the unconscionablity rule makes this clear.

In *Szetela v. Discover Bank*, 97 Cal. App. 4th 1094 (Cal. Ct. App. 2002), the California Court of Appeal held that a class action waiver in an arbitration clause that Discover Bank sought to enforce against its customers was unenforceable. As the Court of Appeal held, in words applicable here:

> It is the manner of arbitration, specifically, prohibiting class or representative actions, we take exception to here. The clause is not only harsh and unfair to Discover customers who might be owed a relatively small sum of money, but it also serves as a disincentive for Discover to avoid the type of conduct that might lead to class action litigation in the first place. By imposing this clause on its customers, Discover has essentially granted itself a license to push the boundaries of good business practices to their furthest limits, fully aware that relatively few, if any, customers will seek legal remedies, and that any remedies obtained will only pertain to that single customer without collateral estoppel effect. The potential for millions of customers to be overcharged small amounts without an effective method of redress cannot be ignored. Therefore, the provision violates fundamental notions of fairness.

*Id.* at 1101.

The Court of Appeal also noted that the class action waiver "provides the customer with no benefit whatsoever; to the contrary, it seriously jeopardizes customers' consumer rights by prohibiting any effective means of litigating Discover's business practices. This is not only substantively unconscionable, it violates public policy by granting Discover a 'get out of jail free' card while compromising important consumer rights." *Id.*, emphasis supplied. *See also, America Online, Inc. v. Superior Court*, 90 Cal. App. 4th 1, 5, 17, 36 (enforcing the California Legal Remedies Act) (2001).

Two years later, in *Ting v. AT&T*, 319 F.3d 1126, 1151 (9th Cir. 2003), the Ninth Circuit declared that AT&T's contractual class action waiver was unconscionable. The focus in *Ting* was the absence of a true bilateral effect of the class action waiver, citing the analysis in *Szetela*, that "companies typically do not sue their customers in class-action lawsuits." *Ting, supra.*, at 1150, citing *Szetela, supra.*, 118 Cal. Rptr. 2d at 867. The Ting court held:

> It is not only difficult to imagine AT&T bringing a class action against its own customers, but AT&T fails to allege that it has ever or would ever do so. Instead, it raises a number of alternative challenges to the district court's holding. However, because "bilaterality" is a requirement in all California arbitration agreements, see *Armendariz*, 24 Cal. 4th 83, 6 P.3d 669 at 692; Circuit City, 279 F.3d at 893, we affirm the district court's conclusion that the class-action ban violates California's unconscionability law.

*Ting, supra.*, 319 F.3d at 1150 (9th Cir. 2003). *See also, Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1176 (9th Cir. 2003) (employment agreement imposing arbitration on employee claims only held one-sided and unconscionable).

The California Supreme Court directly addressed the issue a few years later in *Discover Bank v. Superior Court*, (2005) 36 Cal. 4th 148. Prior to addressing the class action waiver issue,

Opposition Motion to Compel Arbitration
*Zoltan Stiener and Ynez Steiner et al. v. Apple, Inc., AT&T Mobility, LLC, et al.*
Page 11

the California Supreme Court first discussed the "justifications for class action lawsuits," and it did

so in terms that leave no room for doubt concerning the important values that class actions serve

under California law.

The Court reviewed California's history of class action jurisprudence starting with

what it described as "Justice Mosk's oft-quoted majority opinion in *Vasquez v. Superior

Court* 1971 4 Cal.3d 800, 808 [94 Cal. Rptr. 796, 484 P.2d 964] (Vasquez)," *id.* at 156.

Justice Mosk's opinion strongly supported consumer class actions, noting:

> Frequently numerous consumers are exposed to the same dubious practice
> by the same seller so that proof of the prevalence of the practice as to one consumer
> would provide proof for all. Individual actions by each of the defrauded consumers
> is often impracticable because the amount of individual recovery would be
> insufficient to justify bringing a separate action; thus an unscrupulous seller retains
> the benefits of its wrongful conduct. A class action by consumers produces several
> salutary by-products, including a therapeutic effect upon those sellers who indulge
> in fraudulent practices, aid to legitimate business enterprises by curtailing
> illegitimate competition, and avoidance to the judicial process of the burden of
> multiple litigation involving identical claims. The benefit to the parties and the
> courts would, in many circumstances, be substantial.

*Discover Bank, supra.*, at 156, quoting *Vasquez, supra.*, at 808.

The Court then quoted with approval Judge Tobriner's concurrence in *Blue Chip Stamps v.

Superior Court of Los Angeles County*, 18 Cal. 3d 381 (1976), previously cited with approval in

*Linder v. Thrifty Oil Co.*, 23 Cal. 4th 429, 445-446 (Cal. 2000), which emphasized "the role of the

class action in deterring and redressing wrongdoing. A company which wrongfully exacts a dollar

from each of millions of customers will reap a handsome profit; the class action is often the only

effective way to halt and redress such exploitation." *Discover Bank, supra.* at 1105, *quoting, Blue

Chip Stamps* at 387 (Tobriner, J., concurring); *see, also, Linder, supra.* at 445-46 ("Justice

Tobriner's separate opinion effectively clarified that trial courts remain under the obligation to

consider "the role of the class action in deterring and redressing wrongdoing").

1    The California Supreme Court made clear that the guiding principle to be considered is not

2    merely, as Defendants here would have it, the incentive for individual lawsuits based a potential

3    small amount of individual recoveries, but the "important role of class action remedies in

4    California law" as exemplified in the creation of class arbitration in *Keating v. Superior Court*

5    (1982) 31 Cal.3d 584. *See, Discover Card, supra*. at 1106.

6

7        *Keating* was a suit by a class of approximately 800 franchisees of 7-11 stores against the

8    franchisor, Southland Corporation ("Southland") asserting damages from unfair and inaccurate

9    accounting practices, and violation of California's Franchise Investment Law. The amounts

10   involved apparently were substantial and a number of individual suits, brought by the same law

11   firm as had sought to represent the class, were already on file. *See, id.* at 590. Southland's attempt

12   to enforce its arbitration clause, which did not have a class action waiver, was affirmed by the

13   California Supreme Court except for claims under the Franchise Investment Law which prohibited

14   mandatory arbitration.[6]

15

16       Even in this context, where the stakes certainly encouraged individual litigation, and

17   individual litigation was pending, the Court noted the importance of the ability to proceed as a

18   class, and ordered class arbitration. In considering the impact that enforcement of the arbitration

19   agreement would have on class action claims, the Supreme Court in *Discover Bank*, quoting the

20   *Keating* Court, stated:

21

22           "This court has repeatedly emphasized the importance of the class action
         device for vindicating rights asserted by large groups of persons. We have observed
23       that the class suit ' "both eliminates the possibility of repetitious litigation and
         provides small claimants with a method of obtaining redress for claims which would
24       otherwise be too small to warrant individual litigation. [Citation.]" ' [Citation.]
         Denial of a class action in cases where it is appropriate may have the effect of
25       allowing an unscrupulous wrongdoer to 'retain[] the benefits of its wrongful

26   ─────────────────────────
     [6] That prohibition was held to be pre-empted by the FAA in *Southland Corp. v. Keating* 465 U.S.
27   1 (1984).

conduct.' [Citation.] [Moreover,] '[c]ontroversies involving widely used contracts of adhesion present ideal cases for class adjudication; the contracts are uniform, the same principles of interpretation apply to each contract, and all members of the class will share a common interest in the interpretation of an agreement to which each is a party.' "

*Discover Bank, supra.*, 36 Cal. 4th at 157, *quoting Keating, supra*, 31 Cal.3d at p. 609, fn. and citations omitted in the original.

Following this analysis, *the Discover B*ank Court held:

> We do not hold that all class action waivers are necessarily unconscionable. But when the waiver is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money, then, at least to the extent the obligation at issue is governed by California law, the waiver becomes in practice the exemption of the party "from responsibility for [its] own fraud, or willful injury to the person or property of another." (Civ. Code, §1668.) Under these circumstances, such waivers are unconscionable under California law and should not be enforced.

*Discover Bank v. Superior Court*, 36 Cal. 4th 148, 162-163 (2005) [7]

AT&T's argument that the class action waiver "does not operate as an exculpatory clause," (*see* AT&T Mem. at 14) ignores the fact that even if AT&T would pay full damages to those who took the trouble to file a Notice of Dispute and arbitration demand (complete with filing fees), few would take the trouble to do so. Of the many millions of AT&T customers, according to AT&T only about 500 filed arbitration demands annually. *See*, Berinhout Dec. ¶¶20-21. Thus, payment

---

[7] Section 1668 provides:

§ 1668. Certain contracts unlawful

All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law.

That section expresses the public policy of the state against such contract provisions. *Little v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064, 1076 (2003).

of a few thousands of dollars could resolve all claims of wrongdoing that could have, in fact,

caused tens of millions or hundreds of millions of dollars of damages. In effect, AT&T's dispute

resolution procedure operates to exculpate them from damages they might have to face in a class

action proceeding. As the California Supreme Court found in *Discover Bank*, 36 Cal.4th at 161:

> But because, as discussed above, damages in consumer cases are often small and because "
> '[a] company which wrongfully exacts a dollar from each of millions of customers will reap
> a handsome profit' " (*Linder, supra,* 23 Cal.4th at p. 446), " 'the class action is often the
> only effective way to halt and redress such exploitation.' " (*Ibid.*) ... Such one-sided,
> exculpatory contracts in a contract of adhesion, at least to the extent they operate to insulate
> a party from liability that otherwise would be imposed under California law, are generally
> unconscionable.

There can be no argument that AT&T's class action waiver is both procedurally and

substantively unconscionable.

Finally, recognizing, and disagreeing with, the Ninth Circuit ruling in *Shroyer* that the FAA

does not preempt a finding that the AT&T arbitration clause is unconscionable, AT&T makes the

argument that this Court should nonetheless find preemption, since, allegedly, the finding of

unconscionability would be to "employ those general doctrines in ways that subject arbitration

clauses to special scrutiny." AT&T Mem. at 16, *quoting, Iberia Credit Bureau, Inc. v. Cingular

Wireless LLC,* 379 F.3d 159, 167 (5th Cir. 2004). That flawed reasoning was already rejected by

the Ninth Circuit in *Shroyer.* As the Ninth Circuit held:

> The California Supreme Court in *Discover Bank* placed arbitration agreements with
> class action waivers on the exact same footing as contracts that bar class action
> litigation outside the context of arbitration. 36 Cal. 4th at 165-66. To hold that
> California unconscionability law may be applied only to invalidate a class action
> waiver, but not a class arbitration waiver, would place arbitration agreements on a
> different footing than other contracts, in direct contravention of this principal
> purpose of the Federal Arbitration Act. *See Scott v. Cingular Wireless,* 160 Wn.2d
> 843, 161 P.3d 1000, 1008 (Wash. 2007) ("Congress simply requires us to put
> arbitration clauses on the same footing as other contracts, not make them the special
> favorites of the law." (citing 9 U.S.C. § 2)).

*Shroyer, supra.* at 990.

It is, of course, well settled under both California law and Federal law that

arbitration may be conducted on a class, as well as an individual basis. *See, e.g., Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444, 123 S. Ct. 2402, 156 L. Ed. 2d 414 (2003); *Keating v. Superior Court* 31 Cal.3d 584 (1982). If this Court finds, as it must under *Shroyer*, that the class action waiver is unconscionable and unenforceable, the arbitration clause also fails, but not because it is unconscionable with the class action waiver stricken. Rather, it fails because, as in *Shroyer*, AT&T's "arbitration provision has a nonseverability clause," which prohibits the arbitrator from conducting a class proceeding, and holds that if the limitations on class arbitration are unenforceable, then, as a matter of the contract which AT&T itself drafted, the entirety of the arbitration clause shall be null and void. Compare, *Shroyer*, at 986-87 with AT&T Exhibit 3, at 15.

To put it differently, it is not the Court who will link the right to proceed as a class with the right to proceed in arbitration. It is AT&T who does. Arbitration is not disfavored. Class action waivers are. There is no basis in law or in fact for finding FAA preemption.

### POINT II

#### IF THERE WERE AN ENFORCEABLE ARBITRATION AGREEMENT, THE MOTION STILL SHOULD BE DENIED BECAUSE THE STIENERS' CLAIMS FOR PUBLIC INJUNCTIVE RELIEF ARE NOT SUBJECT TO ARBITRATION

The Stieners assert a claim for injunctive relief. See, Complaint ¶59. Because claims for public injunctive relief are inherently incompatible with private arbitration, such claims cannot be arbitrated. *Cruz v. PacificCare Health Systems, Inc.,* (2003) 30 Cal.4th 303, 315-16.

### CONCLUSION

In the face of settled Ninth Circuit authority binding on this Court, AT&T seeks to have this Court rule in a contrary fashion and uphold its class action waiver. It seeks to wrap itself in the

mantle of being "pro-consumer" in an "unprecedented" way. But the reality is that it is seeking now, what it has sought, repeatedly and unsuccessfully and most recently in *Shroyer*, to force its customers to initiate millions of individual suits to right wrongful or overreaching conduct, to "grant[] itself a license to push the boundaries of good business practices to their furthest limits," and to "'retain[] the benefits of its wrongful conduct."

It is most telling that while preaching the great benefit of arbitration, it has determined that if the class action waiver is stricken it wants no part of arbitration at all. When there is real money or the possibility of a class wide injunction at stake, it wants the protection of a court proceeding. Protection that it hopes to deny its customers.

The issue before this Court is a simple one in light of binding precedent. AT&T's class action waiver must be stricken. Based on the contract it has drafted, the result of striking that provision means that as a matter of contract, and not as a matter of unconscionability law, the arbitration clause as a whole must fail.

Date: January 22, 2008

Respectfully submitted,

FOLKENFLIK & McGERITY

Max Folkenflik, Esq.
1500 Broadway, 21st Floor
New York, NY 10036
Telephone: (212) 757-0400


HOFFMAN & LAZEAR
H. Tim Hoffman, Esq.
Arthur W. Lazear, Esq.
180 Grand Avenue, Suite 1550
Oakland, CA 94612
Telephone: (510) 763-5700


*Attorneys for Plaintiffs*