DONALD M. FALK (SBN 150256)
 dfalk@mayerbrown.com
RENA CHNG (SBN 209665)
 rchng@mayerbrown.com
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA 94306-2112
Telephone: (650) 331-2000
Facsimile: (650) 331-2060
       -and-
VICTORIA R. COLLADO (*pro hac vice*)
 vcollado@mayerbrown.com
SARAH E. REYNOLDS (*pro hac vice*)
 sreynolds@mayerbrown.com
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 701-0700
Facsimile: (312) 701-7711

Attorneys for Defendant AT&T MOBILITY LLC

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| ZOLTAN STIENER and YNEZ STIENER, <br><br> Plaintiffs, <br><br> v. <br><br> APPLE COMPUTER, INC., AT&T MOBILITY, LLC, and DOES 1 through 50, inclusive, <br><br> Defendants. | Case No.: C 07-04486 SBA <br><br> REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANT AT&T MOBILITY LLC TO COMPEL ARBITRATION AND TO DISMISS CLAIMS PURSUANT TO THE FEDERAL ARBITRATION ACT <br><br> Date:  February 26, 2008 <br> Time:  1:00 p.m. <br> Courtroom: 400 <br> Judge:  Honorable Saundra B. Armstrong |

# TABLE OF CONTENTS

**Page**

I. ATTM'S Arbitration Provision Is Fully Enforceable ........................................................... 1

    A. Plaintiffs Are Mistaken In Claiming That California Law Forbids Enforcement Of ATTM's Arbitration Agreement ..................................................... 1

        1. It is, at most, minimally procedurally unconscionable to include terms in standard form contracts ............................................................. 2

        2. ATTM's arbitration provision is not substantively unconscionable because it satisfies the concerns expressed in *Shroyer* and *Discover Bank* ........................................................................................................... 5

    B. ATTM's Unprecdentedly Pro-Consumer Arbitration Provision Cannot Be Deemed Unconscionable Without Distorting California's Generally Applicable Unconscionability Doctrine In Violation Of Section 2 Of The FAA ............................................................................................................................... 9

II. Plaintiff's Claim For Public Injunctive Relief Is Arbitrable ............................................... 9

CONCLUSION ................................................................................................................................ 13

**TABLE OF AUTHORITIES**

**Cases**                                                                                                                     **Page(s)**

*Allied-Bruce Terminix Cos. V. Dobson*, 513 U.S. 265 (1995) ................................................................. 11

*Arriaga v. Cross Country Bank*, 163 F. Supp. 2d 1189 (S.D. Cal. 2001) ................................................. 11

*Boomer v. AT&T Corp.*, 309 F.3d 404 (7th Cir. 2002) .................................................................................. 8

*Broughton v. Cigna Healthplans*, 988 P.2d 67 (Cal. 1999) .............................................................. 9, 11, 12

*Buckeye Check Cashing, Inc. v. Cardegna*, 126 S. Ct. 1204 (2006) ......................................................... 11

*Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001) ............................................................................ 11

*Cruz v. PacifiCare Health Sys., Inc.*, 66 P.3d 1157 (Cal. 2003) ....................................................... 9, 11, 12

*Davis v. O'Melveny & Myers*, 485 F.3d 1066 (9th Cir. 2007) ...................................................................... 9

*Discover Bank v. Superior Court*, 113 P.3d 1100 (Cal. 2005) ............................................................ 1, 5, 6

*Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681 (1996) ............................................................................ 4

*Engalla v. Permanente Med. Group*, 938 P.2d 903 (Cal. 1997) .................................................................. 1

*Gatton v. T-Mobile USA, Inc.*, 61 Cal. Rptr. 3d 344 (Ct. App. 2007) ..................................................... 2, 3

*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991) .................................................................. 10

*Gonzales v. Raich*, 545 U.S. 1 (2005) ........................................................................................................ 10

*Gray v. Conseco, Inc.*, 2000 U.S. Dist. LEXIS 14821 (C.D. Cal. Sept. 29, 2000) .................................... 11

*Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79 (2000) .................................................................. 11

*Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159 (5th Cir. 2004) ................................. 4

*Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165 (9th Cir. 2003) ............................................................... 11

*Keating v. Superior Court*, 645 P.2d 1192 (Cal. 1982) ............................................................................. 10

*Lowden v. T-Mobile USA, Inc.*, ___ F.3d ___, 2008 WL 170279 (9th Cir. Jan. 22, 2008) ......... 6

*Metro East Center for Conditioning & Health v. Qwest Communications Int'l, Inc.*,
    294 F.3d 924 (7th Cir. 2002) ................................................................................................................. 8

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985) .................................... 11

*Omstead v. Dell, Inc.*, 2008 WL 341099 (N.D. Cal. Feb. 5, 2008) ............................................................. 3

# TABLE OF AUTHORITIES
## (Continued)

**Cases**                         **Page(s)**

*Perry v. Thomas*, 482 U.S. 483 (1987) ............................................................................... 10

*Preston v. Ferrer*, No. 06-1463 (U.S., argued Jan. 14, 2008) ................................................ 11

*Shroyer v. New Cingular Wireless Services, Inc.*, 498 F.3d 976 (9th Cir. 2007) ............... 2, 5, 6

*Southland Corp. v. Keating*, 465 U.S. 1 (1984) ............................................................. 10, 11

*Stuart v. Household Retails Servs., Inc.*, 2000 U.S. Dist. LEXIS 22509
    (C.D. Cal. Dec. 14, 2000) ............................................................................................. 12

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 636 (7th Cir. 2006) ....................... 8

**Statutes and Rules**                   **Page(s)**

9 U.S.C. §§ 1-16 ................................................................................................................... 1

9 U.S.C. § 2 ......................................................................................................................... 10

Cal. Civ. Code § 1668 ........................................................................................................... 5

**Other Authorities**                   **Page(s)**

http://www.amazon.com/gp/help/customer/display.html?nodeID=15015711 ............................ 3

http://www.apple.com/iphone/gettingstarted/activation.html ................................................... 4

http://www.bestbuy.com/site//olspage.jsp?type=page&contentID=1117177044087
    &id=cat12098 ................................................................................................................ 3

http://www.circuitcity.com/rpsm/cat/-13414/edOid/105452/rpem/ccd/lookLearn.do ............... 3

Christopher Drahozal, *Federal Arbitration Act Preemption*, 79 IND. L.J. 393 (2004) ............. 12

Jill E. Fisch, *Class Action Reform, Qui Tam, and the Role of the Plaintiff*,
    60 L. & CONTEMP. PROBS. 167 (1997) .......................................................................... 7

Gail Hildebrand & Daniel Torrence, *Claims Procedures in Large Consumer
    Class Actions and Equitable Distribution of Benefits*,
    28 SANTA CLARA L. REV. 747 (1988) ........................................................................... 8

# TABLE OF AUTHORITIES
# (Continued)

**Other Authorities** **Page(s)**

Susan P. Koniak & George M. Cohen, *Under Cloak of Settlement*,
    82 VA. L. REV. 1051 (1996) ................................................................................... 7

Christopher R. Leslie, *A Market-Based Approach to Coupon Settlements in Antitrust and
    Consumer Class Action Litigation*, 49 U.C.L.A. L. REV. 991 (2002) ............................ 8

Thomas A. Manakides, Note, *Arbitration of "Public Injunctions": Clash Between State
    Statutory Remedies and the Federal Arbitration Act*, 76 S. CAL. L. REV. 433
    (2003) ................................................................................................................ 12

http://www.target.com/b/602-2734622-7205415?ie=UTF8&node=10665391 ......................... 3

Stephen J. Ware, *The Case for Enforcing Adhesive Arbitration Agreements—With
    Particular Consideration of Class Actions and Arbitration Fees*,
    5 J. AM. ARB. 251 (2006) ..................................................................................... 8

Plaintiffs do not deny that when they activated their iPhones for use on ATTM's network and accepted ATTM's Terms of Service, they agreed to resolve their disputes in individual arbitration or small claims court. They nevertheless argue that they are entitled to disregard their agreements because (in their view) the agreements are unenforceable under California law. As we explain below, however, plaintiffs' arguments are mistaken for two reasons: First, their assertion that ATTM's arbitration provision is unconscionable rests on the erroneous premise that California law imposes a *per se* prohibition of individual arbitration agreements in consumer contracts. Second, while they rely on California precedent holding that arbitration is inherently incompatible with claims for "public injunctive relief," they fail to recognize that such a holding evidences the type of anti-arbitration hostility that is squarely preempted by the Federal Arbitration Act, 9 U.S.C. §§ 1-16.

**I.   ATTM'S ARBITRATION PROVISION IS FULLY ENFORCEABLE.**

At the outset, one thing should be made clear: California law does not impose a categorical ban on class waivers. Although the California Supreme Court has held that a class waiver in a consumer arbitration provision may in "some" circumstances be unconscionable, at the same time it emphasized that it was "***not*** hold[ing] that ***all*** class action waivers are necessarily unconscionable." *Discover Bank v. Superior Court*, 113 P.3d 1100, 1110 (Cal. 2005) (emphasis added). Thus, contrary to plaintiffs' suggestion (*see* Plaintiffs' Opposition to Motion to Compel Arbitration ("Opp.") 7-8), the enforceability of arbitration agreements containing class waivers must be examined on a case-by-case basis.

**A.   Plaintiffs Are Mistaken In Claiming That California Law Forbids Enforcement Of ATTM's Arbitration Agreement.**

Under California law, plaintiffs bear the burden of proving that ATTM's arbitration provision is both procedurally and substantively unconscionable. *See* ATTM Mem. in Support of Motion to Compel Arbitration ("ATTM Mem.") 8; *Engalla v. Permanente Med. Group*, 938 P.2d 903, 915-16 (Cal. 1997) (party opposing arbitration "bears the burden of proving by a preponderance of the evidence any fact necessary to its defense"). For the reasons we discuss below, they have failed to meet that burden.

### 1. It is, at most, minimally procedurally unconscionable to include terms in standard form contracts.

That ATTM's arbitration provision is contained in a contract of adhesion—*i.e.*, a standardized contract not subject to negotiation—renders ATTM's clause, at most, minimally procedurally unconscionable. *See* ATTM Mem. 9-11. While plaintiffs contend otherwise (*see* Opp. 9 & n.5), they are mistaken on both the law and the facts.

**a.** To begin with, plaintiffs accuse us of "cherry-picking" (Opp. 9 n.5) language from a recent opinion of the California Court of Appeal to the effect that when a contract is adhesive, that alone entails only "a ***minimal*** degree of procedural unconscionability." *Gatton v. T-Mobile USA, Inc.*, 61 Cal. Rptr. 3d 344, 356 (Ct. App. 2007) (emphasis added). But that is what the opinion says. Plaintiffs do not advance any alternative interpretation of *Gatton*'s procedural unconscionability holding; nor could they. And the holding in *Gatton* is not altered by the Ninth Circuit's decision in *Shroyer v. New Cingular Wireless Services, Inc.*, 498 F.3d 976 (9th Cir. 2007). While *Shroyer* found the (now-superseded) Cingular arbitration provision at issue to be procedurally unconscionable, it did not address the ***degree*** of procedural unconscionability. *Gatton* has resolved the issue as a matter of California law, and plaintiffs provide this Court with no reason to reject *Gatton*'s conclusion that including an arbitration provision in a standard form contract involves only minimal procedural unconscionability.

**b.** Plaintiffs next assert that ATTM's use of "pre-printed terms" and the existence of "other defects" entail "far more" procedural unconscionability than was present in *Gatton*. Opp. 9 & n.5. Specifically, plaintiffs contend that ATTM's terms of service (including the arbitration provision) are provided "only after the iPhone and the AT&T service were purchased." Opp. 9. They further assert that, because "ATTM was the exclusive provider of service to the iPhone, the Stieners could not take any action to reject the arbitration clause of [ATTM], without losing the value of the Apple iPhone." *Id.*

Plaintiffs overlook that a customer cannot activate ATTM service on an iPhone without first confirming that he or she has read and agrees to the Terms of Service. Declaration of Neal S. Berinhout ("Berinhout Decl.") ¶ 9 & Ex. 4 at 7. Moreover, as we explained in our opening

memorandum (at 3) and as plaintiffs do not dispute, ATTM's Terms of Service booklet was available both in the store where plaintiffs bought their iPhones and on ATTM's web site. Plaintiffs thus had ample opportunity to familiarize themselves with the details of ATTM's service plan *before* buying the iPhones. If they did not wish to review the terms in the store, they could have taken the booklet home with them and reviewed it before opening the boxes containing their iPhones and initiating the activation process. Had they done so, and had they then concluded that they did not want to agree to individual arbitration, they could have returned their iPhones for a refund up to 14 days after purchase (*see* Berinhout Decl. Ex. 2, at 1). As one of the documents they were given in the store informed them, they would have received a full refund if the box containing the iPhone was unopened, and a 90% refund if they had opened the box first. *See* Berinhout Decl. Ex. 2, at 1 (10% restocking fee is charged when a customer returns an iPhone after opening the box).[1] If they had already signed up for service, they could have canceled it within that time without paying a termination fee (*see id.* Ex. 1, at 1).[2] As Judge Hamilton recently explained, "[c]ourts have found that providing a consumer with an opportunity to rescind an agreement greatly diminishes any aspect of procedural unconscionability." *Omstead v. Dell, Inc.*, 2008 WL 341099, at * 26 (N.D. Cal. Feb. 5, 2008).

---

[1] Restocking fees are commonplace. For example, in *Gatton* itself, the terms of service provided that "[t]he Return Period is 14 calendar days from the date of Service activation * * *. ***You may be required to pay a restocking fee***. . . ." 61 Cal. Rptr. 3d at 359 (emphasis added). Major retailers including Amazon.com, Best Buy, Circuit City, and Target, charge 15% restocking fees for some opened electronic equipment. *See* http://www.amazon.com/gp/help/customer/display.html?nodeId=15015711 (for "[a]ny opened laptop or desktop computer," "[a] 15% restocking fee will apply"); http://www.bestbuy.com/site//olspage.jsp?type=page&contentId=1117177044087&id=cat12098 (for in-store returns, "restocking fee of 15% will be charged on opened notebook computers, projectors, camcorders, digital cameras, radar detectors, GPS/navigation and in-car video systems"); http://www.circuitcity.com/rpsm/cat/-13414/edOid/105452/rpem/ccd/lookLearn.do ("[d]igital cameras, camcorders, desktop PCs, notebook PCs, monitors, printers, scanners, projectors, PDAs, mobile video, GPS and radar detectors must be returned within 14 days of the sale date, and * * * are subject to a 15% restocking fee if returned opened or in a non-factory sealed box"); http://www.target.com/b/602-2734622-7205415?ie=UTF8&node=10665391 ("[c]amcorders, digital cameras, portable DVD, computers, portable electronics * * * purchased from Target.com are subject to a 15% restocking fee").

[2] The Stieners also could have obtained a full refund of their activation fee by returning the iPhone within three days of purchase. *See* Berinhout Decl. Ex. 1.

- 3 -

Plaintiffs here provide no evidence that they wished to rescind because of the arbitration clause, but were dissuaded from doing so.

    **c.** Plaintiffs' insinuation that the arbitration clause was hidden because the Terms of Service were "too small to easily read" and the "user had to scroll * * * to see" all of them (Opp. 9) is similarly unfounded. Far from "bur[ying]" the arbitration provision in the text box (Opp. 6), ATTM actually provided prominent notice of its existence: The ***very first sentence*** of the service terms in the text box states that the terms include a "binding arbitration clause." Berinhout Decl. Ex. 4 at 7. No other contractual term receives such marquee status. *Cf. Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 172 & n.14 (5th Cir. 2004) (rejecting a challenge to the print version of a Cingular arbitration provision based on its allegedly small "type-size" because "the first paragraph of the Cingular contract specifically adverts to the arbitration clause, the only provision given such prominent billing").

    Moreover, even if plaintiffs had difficulty reading the text on their computer screen, they could have printed the text by clicking on the "Printable Version" link immediately below the text box. Berinhout Decl. Ex. 4 at 7.[3] And, as we explained in our opening brief (at 3), ATTM also mailed plaintiffs a hard copy of the Terms of Service booklet—printed in large, easy-to-read type—that also prominently discloses the arbitration provision. *See* Berinhout Decl. Ex. 3 at 1, 11-15 (actual size).

    In any event, the argument that arbitration provisions must be prominently disclosed is foreclosed by Section 2 of the FAA, which forbids states from imposing any requirement that arbitration provisions be more prominent than other types of contractual terms. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686–88 (1996). Notwithstanding plaintiffs' invitation to do so, "courts cannot use unconscionability doctrines to achieve the same result" (*Iberia*, 379 F.3d at 172).

                        \*     \*     \*     \*     \*

---

[3] Plaintiffs cite a home video of the iTunes activation process that is posted on the YouTube web site. *See* Opp. 5, 6. An easier-to-watch video is posted on Apple's web site, at http://www.apple.com/iphone/gettingstarted/activation.html. Both videos confirm that a customer must accept the Terms of Service before activating wireless service with ATTM.

Thus, because ATTM's arbitration clause is at most only minimally procedurally unconscionable, it must be enforced unless plaintiffs can show a high degree of substantive unconscionability. *See Shroyer*, 498 F.3d at 981-82 ("[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unreasonable, and vice versa.") (citations and internal quotation marks omitted). They have failed to make such a showing.

> **2. ATTM's arbitration provision is not substantively unconscionable because it satisfies the concerns expressed in *Shroyer* and *Discover Bank*.**

Plaintiffs' substantive unconscionability arguments rely on cases (from California and other jurisdictions) that have invalidated either an earlier version of ATTM's arbitration provision or the arbitration provisions of other companies. But as we explained in our opening memorandum (at 1-2, 12-15) and discuss further below, ATTM's ***current*** arbitration provision—the one applicable to plaintiffs—is materially different and passes muster under *Shroyer* and *Discover Bank*.

**a.** Treating the particular features of ATTM's arbitration provision as irrelevant, plaintiffs assert that, under California law, a court must invalidate ***all*** class-arbitration waivers that (1) appear in consumer form contracts where (2) potential damages are "small" and (3) the complaint alleges a "scheme to deliberately cheat large numbers of customers out of individually small sums of money." Opp. 8 (internal quotation marks omitted). We do not deny that *Shroyer* and *Discover Bank* call for consideration of those factors. But those cases do not provide, as plaintiffs contend (Opp. 8-9), that the analysis begins and ends there, regardless of the practical effect of the arbitration provision.

Rather, in *Discover Bank* the California Supreme Court focused on whether a class waiver "***operate[s] to insulate a party from liability*** that otherwise would be imposed under California law" and "becomes ***in practice*** the exemption of the party 'from responsibility for [its] own fraud, or willful injury to the person or property of another.'" 113 P.3d at 1109, 1110 (quoting CAL. CIV. CODE § 1668) (emphasis added; alteration in original). Simply put, the way in which a class-arbitration waiver ***operates***—which must be measured by reference to the

1  particular arbitration provision at issue—is what matters.  Whether such a provision is
2  unconscionable thus requires a case-by-case analysis of the ***practical consequences*** of the
3  provision.

4      *Shroyer* supports this understanding of *Discover Bank*.  There, the Ninth Circuit
5  explained that in *Discover Bank* "the court was concerned that when the potential for individual
6  *gain* is small, very few plaintiffs, if any, will pursue individual arbitration or litigation, which
7  greatly reduces the aggregate liability a company faces when it has exacted small sums from
8  millions of consumers."  498 F.3d at 986 (emphasis in original).  And the Ninth Circuit has just
9  reiterated that "the California Supreme Court sought in *Discover Bank* to remedy its concern
10 that, when the potential for individual gain is small, few if any plaintiffs will pursue either
11 individual arbitration or litigation * * *."  *Lowden v. T-Mobile USA, Inc.*, __ F.3d __, 2008 WL
12 170279, * 7 (9th Cir. Jan. 22, 2008).[4]  As we explained in our opening brief and discuss further
13 below, the practical consequence of ATTM's arbitration provision is to encourage customers to
14 pursue any disputes they have under ATTM's cost-free dispute-resolution process.

15     **b.** Plaintiffs next argue that the significant premiums included in ATTM's current clause
16 do not distinguish the clause from prior provisions.  According to plaintiffs, the incentives under
17 the premiums "are illusory" because "a defendant subject to the incentive clause * * * would
18 predictably offer" a customer "a 'settlement payment' equal to his loss." Opp. 9, 10.  Plaintiffs'
19 beef, in short, is that ATTM's provision makes satisfaction of an individual consumer's claim
20 *too likely*—*i.e.*, that customers will not be motivated to pursue disputes against ATTM if those
21 claims are almost certain to be met with offers of payment in full.  That argument makes no
22 sense:  Customers will be more likely—not less—to make the minimal effort required to submit
23 a notice of dispute form in light of the incentives ATTM has to provide them with "'settlement
24 payment[s]' equal to [their] loss."

---

[4] Thus, despite their denigration of ATTM's position as "based on some Chicago School economic theory about the need for sufficient economic incentives for individual suits to proceed" (Opp. 10), there is no question that *Shroyer* and *Discover Bank* are founded on concerns about the lack of such incentives.

Plaintiffs also argue that there are inadequate incentives for attorneys to pursue claims, contending that no lawyer would take a case "on a contingency" when claims are small. Opp. 4. This argument ignores that, under ATTM's arbitration provision, most customers will likely be able to recover most or all the amount in dispute *without incurring any attorneys' fees at all*, simply by submitting a one-page Notice of Dispute and—if no resolution is reached after 30 days—a one-page Demand for Arbitration. *See* Berinhout Decl. Exs. 7, 8 (notice of dispute and arbitration demand forms). And customers who are aided by counsel in pursuing their disputes are likely to receive settlement offers that include reasonable attorneys' fees. *See* Berinhout Reply Decl. ¶ 4.[5]

In short, as plaintiffs essentially acknowledge, ATTM customers who invoke ATTM's 2006 arbitration provision to resolve their disputes are likely to have their claims settled for an amount approaching the full amount they requested. By contrast, consumers who are members of class actions do not fare nearly as well. It is well documented that class members in consumer class actions rarely receive more than pennies on the dollar for their claims, while their lawyers collect large fee awards—awards that are often deducted from the total class recovery. *See, e.g.*, Jill E. Fisch, *Class Action Reform, Qui Tam, and the Role of the Plaintiff*, 60 L. & CONTEMP. PROBS. 167, 168 (1997) ("Particularly problematic is the possibility that class action litigation will produce handsome compensation for class counsel but little discernible benefit for class members. * * * [P]laintiffs have even wound up owing rather than receiving money as a result of a class action settlement, although class counsel received a generous fee award."); Susan P. Koniak & George M. Cohen, *Under Cloak of Settlement*, 82 VA. L. REV. 1051, 1051-89 (1996). Compounding the problem is the low percentage of class members who typically bother to

---

[5] Particularly because ATTM has committed itself to pay the full costs of arbitration, it would be rational to offer to pay a customer's attorneys' fees to settle a dispute instead of proceeding to arbitration. Otherwise, win or lose, ATTM would have to pay the full cost of the arbitration—at minimum, $1,700 if there is a hearing (*see* ATTM Mem. 14 n.10). A customer who prevails on a claim under a fee-shifting statute (such as plaintiffs' claims here under California's Unfair Competition Law) would be entitled to attorneys' fees. Moreover, if the arbitrator were to award attorneys' fees, the customer could then argue to the arbitrator that the award exceeded ATTM's last written settlement offer, entitling the customer to the $7,500 premium, plus double attorneys' fees.

- 7 -

submit claims when the amounts that they can expect to receive are small.  *See, e.g.*, Christopher R. Leslie, *A Market-Based Approach to Coupon Settlements in Antitrust and Consumer Class Action Litigation*, 49 U.C.L.A. L. REV. 991, 1035 (2002) (reporting a study of ten consumer class-action settlements in which redemption rates ranged from 3 to 13.1 percent); Gail Hildebrand & Daniel Torrence, *Claims Procedures in Large Consumer Class Actions and Equitable Distribution of Benefits*, 28 SANTA CLARA L. REV. 747, 751-53 (1988) (discussing three settlements with claims rates of 3%, 10.5%, and 18%, respectively); *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 649-50 (7th Cir. 2006) (only "a paltry three percent" of the class had actually filed claims under the settlement).

Under such circumstances, there is nothing unfair about the tradeoff that AT&T's customers make:  In exchange for waiving their right to be part of a class action, customers receive a dispute resolution mechanism that affords them either a quick settlement offer that often will amount to a full recovery or cost-free arbitration that provides them with the potential for a significant "individual gain" in the form of a $7,500 premium—an amount that substantially exceeds the size of claims they might make.  And it is well established that agreements to arbitrate lead to lower prices.  *See Boomer v. AT&T Corp.*, 309 F.3d 404, 419 (7th Cir. 2002) ("[a]rbitration offers cost-saving benefits * * * and 'these benefits are reflected in a lower cost of doing business that in competition are passed along to customers.'") (quoting *Metro East Center for Conditioning & Health v. Qwest Communications Int'l, Inc.*, 294 F.3d 924, 927 (7th Cir. 2002)); *see also* Stephen J. Ware, *The Case for Enforcing Adhesive Arbitration Agreements—With Particular Consideration of Class Actions and Arbitration Fees*, 5 J. AM. ARB. 251, 254-56 (2006) (arbitration "lower[s] [businesses'] dispute-resolution costs," and this "benefit to businesses is also a benefit to consumers" "because whatever lowers costs to businesses tends over time to lower prices to consumers").

Accordingly, plaintiffs' agreement to arbitrate cannot be substantively unconscionable.  And it is certainly not substantively unconscionable to so great an extent that—given the minimal level of procedural unconscionability (*see* pages 2-5, *supra*)—it should be deemed unenforceable under California's sliding-scale approach to unconscionability.

### B. ATTM's Unprecedentedly Pro-Consumer Arbitration Provision Cannot Be Deemed Unconscionable Without Distorting California's Generally Applicable Unconscionability Doctrine In Violation Of Section 2 Of The FAA.

In addition, plaintiffs fail to confront our argument (*see* ATTM Mem. 15-17) that the distortion of California's generally applicable unconscionability standard would violate the FAA. Despite plaintiffs' assertions to the contrary (Opp. 15-16), neither the California courts nor the Ninth Circuit have addressed this argument in the context of ATTM's current arbitration provision. And it would require distortion of California's generally applicable standard of unconscionability to conclude that an arbitration provision that encourages a company to provide its customers with full recoveries—"shocks the conscience." *See* ATTM Mem. 16.[6]

## II. PLAINTIFFS' CLAIM FOR PUBLIC INJUNCTIVE RELIEF IS ARBITRABLE.

In a few sentences, plaintiffs assert that their claim for public injunctive relief under California's Unfair Competition Law ("UCL") is non-arbitrable under *Cruz v. PacifiCare Health Sys., Inc.*, 66 P.3d 1157 (Cal. 2003). *See* Opp. 16. That argument must be rejected because the rule of law adopted by the California Supreme Court in *Cruz*—that claims for "public injunctions" are non-arbitrable—is preempted by the FAA.[7] Although courts may conclude that

---

[6] Plaintiffs' argument boils down to the contention that, even though ***they*** can obtain adequate relief by invoking ATTM's arbitration provision, the provision is unconscionable because other customers will not choose to complain. *See* Opp. 14-15. But the unconscionability analysis focuses on whether the bargain is so unfair to ***the party*** as to shock the conscience. The Stieners' lawyers may not like the fact that the arbitration provision precludes any prospect of them aggregating the claims of all iPhone purchasers and obtaining a lucrative attorneys' fee award, but that does not render the requirement of individual arbitration conscience-shocking. To come to any other conclusion is to apply a standard that is manifestly inapplicable to any other contractual provision.

[7] The Ninth Circuit recently observed that, under *Cruz* and its predecessor, *Broughton v. Cigna Healthplans*, 988 P.2d 67 (Cal. 1999), "California law provides that certain 'public injunctions' are incompatible with arbitration (and that such a holding is consistent with the FAA)." *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1080 (9th Cir. 2007). The court further concluded that "[i]t follows that [an employment dispute resolution program] may not prohibit— i.e., require arbitration of—judicial actions seeking such public injunctive relief" and that, because the employee had sought such relief, "[t]o that extent, at minimum, the [dispute resolution program] is unenforceable." *Id.* at 1082. But the Ninth Circuit did not itself confront the argument that the FAA preempts the state-law rules announced in *Cruz* and *Broughton*.

*Congress* has rendered a *federal* statutory claim non-arbitrable if there is an "inherent conflict" between the "underlying purposes" of that claim and arbitration (*Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26 (1991)), there is no basis whatsoever for the California Supreme Court's assumption that states may declare state-law claims off limits to arbitration. To the contrary,

> [t]he Supremacy Clause unambiguously provides that if there is any conflict between federal and state law, federal law shall prevail. It is beyond peradventure that federal power over commerce is superior to that of the States to provide for the welfare or necessities of their inhabitants, however legitimate or dire those necessities may be.

*Gonzales v. Raich*, 545 U.S. 1, 29 (2005) (internal quotation marks omitted).

Consistent with this principle, the Supreme Court frequently has rejected the argument that state legislatures have a free hand in cutting back the scope of the FAA. For example, after the California Supreme Court construed the California Franchise Investment Law to render claims under that law non-arbitrable (*Keating v. Superior Court*, 645 P.2d 1192 (Cal. 1982)), the Supreme Court reversed, declaring that "[s]o interpreted the California Franchise Investment Law directly conflicts with § 2 of the Federal Arbitration Act and violates the Supremacy Clause." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984).

Shortly thereafter, the Supreme Court again reversed a decision of the California Supreme Court holding that the California legislature has the power to declare a claim non-arbitrable—this time one to collect wages under the California Labor Code. *Perry v. Thomas*, 482 U.S. 483 (1987). Explaining that California's "requirement that litigants be provided a judicial forum for resolving wage disputes" was in "unmistakable conflict" with Section 2 of the FAA and its underlying policy, the Court held that, "under the Supremacy Clause, the state statute must give way." *Id.* at 491.

More recently, the Court explained that the arbitrability of claims depends on "whether *Congress* has evinced an intention to preclude a waiver of judicial remedies for the statutory

---

Indeed, the appellee did not make that contention in its brief. *See* Brief of Defendant-Appellee O'Melveny & Myers LLP, *Davis v. O'Melveny & Myers*, No. 04-56039 (filed Oct. 21, 2004), available at 2004 WL 5469534.

rights at issue." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 (2000) (emphasis added). The following year, the Court refused to apply *Gilmer*'s "inherent conflict" exception to California's Fair Employment and Housing Act. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123-24 (2001). As the Court explained, "*Gilmer*, of course, involved a **federal** statute, while the argument here is that a state statute ought not be denied state judicial enforcement while awaiting the outcome of arbitration. That matter, though, was addressed in *Southland* and *Allied-Bruce* [*Terminix Cos. v Dobson*, 513 U.S. 265 (1995)], and we do not revisit the question here." *Id.* (emphasis added).

Even more recently, the Court reiterated that in *Southland* it "rejected the proposition that the enforceability of the arbitration agreement turned on the state legislature's judgment concerning the forum for enforcement of the state-law cause of action." *Buckeye Check Cashing, Inc. v. Cardegna*, 126 S. Ct. 1204, 1209 (2006); *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 623 n.10 (1985) ("[A]ny contention that the local antitrust claims [arising under Puerto Rico law] are nonarbitrable would be foreclosed by this Court's decision in *Southland*.") (citation omitted).[8]

In part because *Cruz is* far out of step with Supreme Court case law, few if any federal courts have followed it. To the contrary, one district judge in this Circuit has squarely held that the FAA preempts such a state-law rule:

> If it were enough for a state legislature to declare, through the nature of the remedies it offers in a statute, that it did not wish to have certain claims subjected to arbitration, states would essentially be allowed to undercut the FAA in an area in which Congress is supreme (i.e., interstate commerce).

*Arriaga v. Cross Country Bank*, 163 F. Supp. 2d 1189, 1199 (S.D. Cal. 2001), *overruled on other grounds by Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165 (9th Cir. 2003).[9]

---

[8] The Supreme Court has before it still one more effort by California to declare a category of claims non-arbitrable—this time disputes under the California Talent Agencies Act. *See Preston v. Ferrer*, No. 06-1463. The case was argued on January 14, 2008, and a decision is expected before the end of June.

[9] One unreported federal case from a different district has followed the rule adopted in *Broughton*. *See Gray v. Conseco, Inc.*, 2000 U.S. Dist. LEXIS 14821, at *23-*26 (C.D. Cal.

- 11 -

Commentators have come to the same conclusion. *See, e.g.*, Christopher Drahozal, *Federal Arbitration Act Preemption*, 79 IND. L.J. 393, 416 (2004) ("[A] state rule excluding claims from arbitration because arbitration is 'inappropriate' is preempted by the FAA * * * [and] exhibit[s] the exact same hostility to arbitration that the U.S. Supreme Court has found objectionable in its FAA preemption cases to date."); Thomas A. Manakides, Note, *Arbitration of "Public Injunctions": Clash Between State Statutory Remedies and the Federal Arbitration Act*, 76 S. CAL. L. REV. 433, 481 (2003) ("A state legislature cannot prevent a valid arbitration clause from being enforced, even if this results in the arbitration of a 'public injunction.' The U.S. Supreme Court has held that only Congress and not state legislatures can prevent the enforcement of arbitration clauses.").

Accordingly, this Court should hold that *Cruz* is preempted by the FAA and that plaintiffs' claim for a public injunction under the UCL therefore is every bit as subject to arbitration as the rest of plaintiffs' claims.

---

Sept. 29, 2000). A few months later, however, another case from that district "part[ed] company with *Broughton*." *Stuart v. Household Retail Servs., Inc.*, 2000 U.S. Dist. LEXIS 22509, at *18 (C.D. Cal. Dec. 14, 2000).

# CONCLUSION

The Court should compel arbitration of the plaintiffs' claims and dismiss this case.

DATED: February 12, 2008    MAYER BROWN LLP

By: /s/ Donald M. Falk_____
 Donald M. Falk

*Of Counsel*:
Evan M. Tager
Archis A. Parasharami
MAYER BROWN LLP
1909 K Street NW
Washington, DC 20036
Telephone: (202) 263-3000
Facsimile: (202) 263-3300

Donald M. Falk (SBN 150256)
Rena Chng (SBN 209665)
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA 94306-2112
Telephone: (650) 331-2000
Facsimile: (650) 331-2060

Victoria R. Collado (*pro hac vice*)
Sarah E. Reynolds (*pro hac vice*)
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 701-0700
Facsimile: (312) 701-7711

Attorneys for Defendant AT&T MOBILITY LLC