

--- S.Ct. ----
--- S.Ct. ----, 2008 WL 440670 (U.S.)
**(Cite as: --- S.Ct. ----)**

Page 1

**Preston** v. Ferrer
U.S.,2008.
Only the Westlaw citation is currently available.
Supreme Court of the United States
Arnold M. **PRESTON**, Petitioner,
v.
Alex E. FERRER.
**No. 06-1463.**

Argued Jan. 14, 2008.
Decided Feb. 20, 2008.

*Syllabus*[FN*]

FN* The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States v. Detroit Timber & Lumber Co.,* 200 U.S. 321, 337, 26 S.Ct. 282, 50 L.Ed. 499.

**\*1** A contract between respondent Ferrer, who appears on television as "Judge Alex," and petitioner Preston, an entertainment industry attorney, requires arbitration of "any dispute ... relating to the [contract's] terms ... or the breach, validity, or legality thereof ... in accordance with [American Arbitration Association (AAA) ] rules." Preston invoked this provision to gain fees allegedly due under the contract. Ferrer thereupon petitioned the California Labor Commissioner (Labor Commissioner) for a determination that the contract was invalid and unenforceable under California's Talent Agencies Act (TAA) because Preston had acted as a talent agent without the required license. After the Labor Commissioner's hearing officer denied Ferrer's motion to stay the arbitration, Ferrer filed suit in state court seeking to enjoin arbitration, and Preston moved to compel arbitration. The court denied Preston's motion and enjoined him from proceeding before the arbitrator unless and until the Labor Commissioner determined she lacked jurisdiction over the dispute. While Preston's appeal was pending, this Court held, in *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 446, 126 S.Ct. 1204, 163 L.Ed.2d 1038, that challenges to the validity of a contract requiring arbitration of disputes ordinarily "should ... be considered by an arbitrator, not a court." Affirming the judgment below, the California Court of Appeal held that the TAA vested the Labor Commissioner with exclusive original jurisdiction over the dispute, and that *Buckeye* was inapposite because it did not involve an administrative agency with exclusive jurisdiction over a disputed issue.

*Held:* When parties agree to arbitrate all questions arising under a contract, the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*, supersedes state laws lodging primary jurisdiction in another forum, whether judicial or administrative. Pp. ---- - ----.

(a) The issue is not whether the FAA preempts the TAA wholesale. Instead, the question is simply who decides-the arbitrator or the Labor Commissioner-whether Preston acted as an unlicensed talent agent in violation of the TAA, as Ferrer claims, or as a personal manager not governed by the TAA, as Preston contends. P. ----.

(b) FAA § 2 "declare[s] a national policy favoring arbitration" when the parties contract for that mode of dispute resolution. *Southland Corp. v. Keating,* 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1. That national policy "appli[es] in state as well as federal courts" and "foreclose[s] state legislative attempts to undercut the enforceability of arbitration agreements."*Id.,* at 16.The FAA's displacement of conflicting state law has been repeatedly reaffirmed. See, *e.g.,Buckeye,* 546 U.S., at 445-446;*Allied-Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 272, 115 S.Ct. 834, 130 L.Ed.2d 753. A recurring question under § 2 is who should decide whether "grounds ... exist at law or in equity" to invalidate an arbitration agreement. In *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403-404, 87 S.Ct. 1801, 18 L.Ed.2d 1270, which originated in federal court, this Court held that attacks on an entire contract's validity, as distinct from attacks on the arbitration clause alone, are within the arbitrator's ken. *Buckeye* held that the same rule applies in state court. See 546 U.S., at 446.

*Buckeye* largely, if not entirely, resolves the present dispute. The contract at issue clearly "evidenc[ed] a transaction involving commerce"

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

under § 2, and Ferrer has never disputed that the contract's written arbitration provision falls within § 2's purview. Ferrer sought invalidation of the contract as a whole. He made no discrete challenge to the validity of the arbitration clause, and thus sought to override that clause on a ground *Buckeye* requires the arbitrator to decide in the first instance. Pp. ---- - ----.

**\*2** (c) Ferrer attempts to distinguish *Buckeye,* urging that the TAA merely requires exhaustion of administrative remedies before the parties proceed to arbitration. This argument is unconvincing. Pp. ---- - ----.

(1) Procedural prescriptions of the TAA conflict with the FAA's dispute resolution regime in two basic respects: (1) One TAA provision grants the Labor Commissioner exclusive jurisdiction to decide an issue that the parties agreed to arbitrate, see *Buckeye,* 546 U.S., at 446; (2) another imposes prerequisites to enforcement of an arbitration agreement that are not applicable to contracts generally, see *Doctor's Associates, Inc. v. Casarotto,* 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902. Pp. ---- - ----.

(2) Ferrer contends that the TAA is compatible with the FAA because the TAA provision vesting exclusive jurisdiction in the Labor Commissioner merely postpones arbitration. That position is contrary to the one Ferrer took in the California courts and does not withstand examination. Arbitration, if it ever occurred following the Labor Commissioner's decision, would likely be long delayed, in contravention of Congress' intent "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible."*Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.,* 460 U.S. 1, 22, 103 S.Ct. 927, 74 L.Ed.2d 765. Pp. ---- - ----.

(3) Ferrer contends that the conflict between the arbitration clause and the TAA should be overlooked because Labor Commissioner proceedings are administrative rather than judicial. The Court rejected a similar argument in *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 28-29, 111 S.Ct. 1647, 114 L.Ed.2d 26. Pp. ---- - ----.

(d) Ferrer's reliance on *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.,* 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488, is misplaced for two reasons. First, arbitration was stayed in *Volt* to accommodate litigation involving third parties who were strangers to the arbitration agreement. Because the contract at issue in *Volt* did not address the order of proceedings and included a choice-of-law clause adopting California law, the *Volt* Court recognized as the gap filler a California statute authorizing the state court to stay either third-party court proceedings or arbitration proceedings to avoid the possibility of conflicting rulings on a common issue. Here, in contrast, the arbitration clause speaks to the matter in controversy; both parties are bound by the arbitration agreement; the question of Preston's status as a talent agent relates to the validity or legality of the contract; there is no risk that related litigation will yield conflicting rulings on common issues; and there is no other procedural void for the choice-of-law clause to fill. Second, the Court is guided by its decision in *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 115 S.Ct. 1212, 131 L.Ed.2d 76. Although the *Volt* contract provided for arbitration in accordance with AAA rules, 489 U.S., at 470, n. 1, Volt never argued that incorporation of those rules by reference trumped the contract's choice-of-law clause, so this Court never addressed the import of such incorporation. In *Mastrobuono,* the Court reached that open question, declaring that the "best way to harmonize" a New York choice-of-law clause and a clause providing for arbitration in accordance with privately promulgated arbitration rules was to read the choice-of-law clause "to encompass substantive principles that New York courts would apply, but not to include [New York's] special rules limiting [arbitrators'] authority." 514 U.S., at 63-64. Similarly here, the "best way to harmonize" the Ferrer-Preston contract's adoption of the AAA rules and its selection of California law is to read the latter to encompass prescriptions governing the parties' substantive rights and obligations, but not the State's "special rules limiting [arbitrators'] authority." *Ibid.* Pp. ---- - ----.

145 Cal.App. 4th 440, 51 Cal.Rptr.3d 628, reversed and remanded.

**\*3** GINSBURG, J., delivered the opinion of the Court, in which ROBERTS, C.J., and STEVENS, SCALIA, KENNEDY, SOUTER, BREYER, and ALITO, JJ., joined. THOMAS, J., filed a dissenting opinion.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

CERTIORARI TO THE COURT OF APPEAL OF CALIFORNIA, SECOND APPELLATE DISTRICT

Joseph D. Schleimer, Beverly Hills, CA, for petitioner.
G. Eric Brunstad, Jr., Hartford, Connecticut, for respondent.
Robert M. Dudnik, Mitchell, Silberberg & Knupp LLP, Los Angeles, CA, G. Eric Brunstad, Jr., Counsel of Record, Rheba Rutkowski, Brian R. Hole, Collin O'Connor Udell Bingham McCutchen LLP, Hartford, Connecticut, for Respondents.
Joseph D. Schleimer, Counsel of Record, Kenneth D. Freundlich, Schleimer & Freundlich, LLP, Beverly Hills, CA, for Petitioner.For U.S. Supreme Court Briefs, see:2007 WL 3276502 (Pet.Brief)2007 WL 487220 (Resp.Brief)2007 WL 4613422 (Reply.Brief)2008 WL 317049 (Resp.Supp.Brief)

Justice GINSBURG delivered the opinion of the Court.

As this Court recognized in *Southland Corp. v. Keating,* 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984), the Federal Arbitration Act (FAA or Act), 9 U.S.C. § 1 *et seq.* (2000 ed. and Supp. V), establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution. The Act, which rests on Congress' authority under the Commerce Clause, supplies not simply a procedural framework applicable in federal courts; it also calls for the application, in state as well as federal courts, of federal substantive law regarding arbitration. 465 U.S., at 16. More recently, in *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006), the Court clarified that, when parties agree to arbitrate all disputes arising under their contract, questions concerning the validity of the entire contract are to be resolved by the arbitrator in the first instance, not by a federal or state court.

The instant petition presents the following question: Does the FAA override not only state statutes that refer certain state-law controversies initially to a judicial forum, but also state statutes that refer certain disputes initially to an administrative agency? We hold today that, when parties agree to arbitrate all questions arising under a contract, state laws lodging primary jurisdiction in another forum, whether judicial or administrative, are superseded by the FAA.

I

This case concerns a contract between respondent Alex E. Ferrer, a former Florida trial court judge who currently appears as "Judge Alex" on a Fox television network program, and petitioner Arnold M. Preston, a California attorney who renders services to persons in the entertainment industry. Seeking fees allegedly due under the contract, Preston invoked the parties' agreement to arbitrate "any dispute ... relating to the terms of [the contract] or the breach, validity, or legality thereof ... in accordance with the rules [of the American Arbitration Association]." App. 18.

Preston's demand for arbitration, made in June 2005, was countered a month later by Ferrer's petition to the California Labor Commissioner charging that the contract was invalid and unenforceable under the California Talent Agencies Act (TAA), Cal. Lab.Code Ann. § 1700*et seq.* (West 2003 and Supp.2008). Ferrer asserted that Preston acted as a talent agent without the license required by the TAA, and that Preston's unlicensed status rendered the entire contract void.[FN1]

> FN1. The TAA uses the term "talent agency" to describe both corporations and individual talent agents. We use the terms "talent agent" and "talent agency" interchangeably.

**\*4** The Labor Commissioner's hearing officer, in November 2005, determined that Ferrer had stated a "colorable basis for exercise of the Labor Commissioner's jurisdiction."App. 33. The officer denied Ferrer's motion to stay the arbitration, however, on the ground that the Labor Commissioner lacked authority to order such relief. Ferrer then filed suit in the Los Angeles Superior Court, seeking a declaration that the controversy between the parties "arising from the [c]ontract, including in particular the issue of the validity of the [c]ontract, is not subject to arbitration."*Id.,* at 29.As interim relief, Ferrer sought an injunction restraining Preston from proceeding before the arbitrator. Preston responded by moving to compel arbitration.

In December 2005, the Superior Court denied Preston's motion to compel arbitration and enjoined

Preston from proceeding before the arbitrator "unless and until the Labor Commissioner determines that ... she is without jurisdiction over the disputes between Preston and Ferrer."No. BC342454 (Dec. 7, 2005), App. C to Pet. for Cert. 18a, 26a-27a. During the pendency of Preston's appeal from the Superior Court's decision, this Court reaffirmed, in *Buckeye,* that challenges to the validity of a contract providing for arbitration ordinarily "should ... be considered by an arbitrator, not a court."546 U.S., at 446.

In a 2-to-1 decision issued in November 2006, the California Court of Appeal affirmed the Superior Court's judgment. The appeals court held that the relevant provision of the TAA, Cal. Lab.Code Ann. § 1700.44(a) (West 2003), vests "exclusive original jurisdiction" over the dispute in the Labor Commissioner. 145 Cal.App.4th 440, 447, 51 Cal.Rptr.3d 628, 634. *Buckeye* is "inapposite," the court said, because that case "did not involve an administrative agency with exclusive jurisdiction over a disputed issue."145 Cal.App.4th, at 447, 51 Cal.Rptr.3d, at 634. The dissenting judge, in contrast, viewed *Buckeye* as controlling; she reasoned that the FAA called for immediate recognition and enforcement of the parties' agreement to arbitrate and afforded no basis for distinguishing prior resort to a state administrative agency from prior resort to a state court. 145 Cal.App.4th, at 450-451, 51 Cal.Rptr.3d, at 636-637 (Vogel, J., dissenting).

The California Supreme Court denied Preston's petition for review. No. S149190 (Feb. 14, 2007), 2007 Cal. LEXIS 1539, App. A to Pet. for Cert. 1a. We granted certiorari to determine whether the FAA overrides a state law vesting initial adjudicatory authority in an administrative agency. 551 U.S. ---- (2007).

II

*5 An easily stated question underlies this controversy. Ferrer claims that Preston was a talent agent who operated without a license in violation of the TAA. Accordingly, he urges, the contract between the parties, purportedly for "personal management," is void and Preston is entitled to no compensation for any services he rendered. Preston, on the other hand, maintains that he acted as a personal manager, not as a talent agent, hence his contract with Ferrer is not governed by the TAA and is both lawful and fully binding on the parties.

Because the contract between Ferrer and Preston provides that "any dispute ... relating to the ... validity, or legality" of the agreement "shall be submitted to arbitration," App. 18, Preston urges that Ferrer must litigate "his TAA defense in the arbitral forum," Reply Brief 31. Ferrer insists, however, that the "personal manager" or "talent agent" inquiry falls, under California law, within the exclusive original jurisdiction of the Labor Commissioner, and that the FAA does not displace the Commissioner's primary jurisdiction. Brief for Respondent 14, 30, 40-44.

The dispositive issue, then, contrary to Ferrer's suggestion, is not whether the FAA preempts the TAA wholesale. See *id.,* at 44-48.The FAA plainly has no such destructive aim or effect. Instead, the question is simply who decides whether Preston acted as personal manager or as talent agent.

III

Section 2 of the FAA states:
"A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."9 U.S.C. § 2.

Section 2"declare[s] a national policy favoring arbitration" of claims that parties contract to settle in that manner. *Southland Corp.,* 465 U.S., at 10. That national policy, we held in *Southland,*"appli[es] in state as well as federal courts" and "foreclose[s] state legislative attempts to undercut the enforceability of arbitration agreements."*Id.,* at 16.The FAA's displacement of conflicting state law is "now well-established," *Allied-Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 272, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995), and has been repeatedly reaffirmed, see, *e.g.,Buckeye,* 546 U.S., at 445-446;*Doctor's Associates, Inc. v. Casarotto,* 517 U.S. 681, 684-685, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996); *Perry v. Thomas,* 482 U.S. 483, 489, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987).[FN2]

FN2. Although Ferrer urges us to overrule

*Southland,* he relies on the same arguments we considered and rejected in *Allied-Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). Compare Brief for Respondent 55-59, with Brief for Attorney General of Alabama et al. as *Amici Curiae* in *Allied-Bruce Terminix Cos. v. Dobson,* O.T.1993, No. 93-1001, pp. 11-19. Adhering to precedent, we do not take up Ferrer's invitation to overrule *Southland.*

A recurring question under § 2 is who should decide whether "grounds ... exist at law or in equity" to invalidate an arbitration agreement. In *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403-404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), we held that attacks on the validity of an entire contract, as distinct from attacks aimed at the arbitration clause, are within the arbitrator's ken.

**\*6** The litigation in *Prima Paint* originated in federal court, but the same rule, we held in *Buckeye,* applies in state court. 546 U.S., at 447-448. The plaintiffs in *Buckeye* alleged that the contracts they signed, which contained arbitration clauses, were illegal under state law and void *ab initio. Id.,* at 443.Relying on *Southland,* we held that the plaintiffs' challenge was within the province of the arbitrator to decide. See 546 U.S., at 446.

*Buckeye* largely, if not entirely, resolves the dispute before us. The contract between Preston and Ferrer clearly "evidenc[ed] a transaction involving commerce,"9 U.S.C. § 2, and Ferrer has never disputed that the written arbitration provision in the contract falls within the purview of § 2. Moreover, Ferrer sought invalidation of the contract as a whole. In the proceedings below, he made no discrete challenge to the validity of the arbitration clause. See 145 Cal.App.4th, at 449, 51 Cal.Rptr.3d, at 635 (Vogel, J., dissenting).FN3 Ferrer thus urged the Labor Commissioner and California courts to override the contract's arbitration clause on a ground that *Buckeye* requires the arbitrator to decide in the first instance.

> FN3. Ferrer's petition to the Labor Commissioner sought a declaration that the contract "is void under the [TAA]." App. 23. His complaint in Superior Court seeking to enjoin arbitration asserted: "[T]he [c]ontract is void by reason of [Preston's] attempt to procure employment for [Ferrer] in violation of the [TAA]," and "the [c]ontract's arbitration clause does not vest authority in an arbitrator to determine whether the contract is void."*Id.,* at 27.His brief in the appeals court stated: "Ferrer does not contend that the arbitration clause in the [c]ontract was procured by fraud. Ferrer contends that Preston unlawfully acted as an unlicensed talent agent and hence cannot enforce the [c]ontract."Brief for Respondent in No. B188997, p. 18.

IV

Ferrer attempts to distinguish *Buckeye* by arguing that the TAA merely requires exhaustion of administrative remedies before the parties proceed to arbitration. We reject that argument.

A

The TAA regulates talent agents and talent agency agreements. "Talent agency" is defined, with exceptions not relevant here, as "a person or corporation who engages in the occupation of procuring, offering, promising, or attempting to procure employment or engagements for an artist or artists."Cal. Lab.Code Ann. § 1700.4(a) (West 2003). The definition "does not cover other services for which artists often contract, such as personal and career management (i.e., advice, direction, coordination, and oversight with respect to an artist's career or personal or financial affairs)."*Styne v. Stevens,* 26 Cal.4th 42, 51, 109 Cal.Rptr.2d 14, 26 P.3d 343, 349 (2001) (emphasis deleted). The TAA requires talent agents to procure a license from the Labor Commissioner. § 1700.5. "In furtherance of the [TAA's] protective aims, an unlicensed person's contract with an artist to provide the services of a talent agency is illegal and void."*Id.,* at 51, 109 Cal.Rptr.2d 14, 26 P.3d, at 349.FN4

> FN4. Courts "may void the entire contract" where talent agency services regulated by the TAA are "inseparable from [unregulated] managerial services." *Marathon Entertainment, Inc. v. Blasi,* No. S145428, 2008 WL 216532, \*13 (Cal., Jan.28, 2008). If the contractual terms are

severable, however, "an isolated instance" of unlicensed conduct "does not automatically bar recovery for services that could lawfully be provided without a license."*Ibid.*

Section 1700.44(a) of the TAA states:

**\*7** "In cases of controversy arising under this chapter, the parties involved shall refer the matters in dispute to the Labor Commissioner, who shall hear and determine the same, subject to an appeal within 10 days after determination, to the superior court where the same shall be heard de novo."

Absent a notice of appeal filed within ten days, the Labor Commissioner's determination becomes final and binding on the parties. *REO Broadcasting Consultants v. Martin,* 69 Cal.App.4th 489, 495, 81 Cal.Rptr.2d 639, 642-643 (1999).[FN5]

> FN5. To appeal the Labor Commissioner's decision, an aggrieved party must post a bond of at least $1,000 and up to twice the amount of any judgment approved by the Commissioner. § 1700.44(a).

The TAA permits arbitration in lieu of proceeding before the Labor Commissioner if an arbitration provision "in a contract between a talent agency and [an artist]" both "provides for reasonable notice to the Labor Commissioner of the time and place of all arbitration hearings" and gives the Commissioner "the right to attend all arbitration hearings." § 1700.45. This prescription demonstrates that there is no inherent conflict between the TAA and arbitration as a dispute resolution mechanism. But § 1700.45 was of no utility to Preston. He has consistently maintained that he is *not* a talent agent as that term is defined in § 1700.4(a), but is, instead, a personal manager not subject to the TAA's regulatory regime. 145 Cal.App.4th, at 444, 51 Cal.Rptr.3d, at 631. To invoke § 1700.45, Preston would have been required to concede a point fatal to his claim for compensation-*i.e.*, that he is a talent agent, albeit an unlicensed one-and to have drafted his contract in compliance with a statute that he maintains is inapplicable.

Procedural prescriptions of the TAA thus conflict with the FAA's dispute resolution regime in two basic respects: First, the TAA, in § 1700.44(a), grants the Labor Commissioner exclusive jurisdiction to decide an issue that the parties agreed to arbitrate, see *Buckeye,* 546 U.S., at 446; second, the TAA, in § 1700.45, imposes prerequisites to enforcement of an arbitration agreement that are not applicable to contracts generally, see *Doctor's Associates, Inc.,* 517 U.S., at 687.

B

Ferrer contends that the TAA is nevertheless compatible with the FAA because § 1700.44(a) merely postpones arbitration until after the Labor Commissioner has exercised her primary jurisdiction. Brief for Respondent 14, 40. The party that loses before the Labor Commissioner may file for *de novo* review in Superior Court. See § 1700.44(a). At that point, Ferrer asserts, either party could move to compel arbitration under Cal.Civ.Proc.Code Ann. § 1281.2 (West 2007), and thereby obtain an arbitrator's determination prior to judicial review. See Brief for Respondent 13.

That is not the position Ferrer took in the California courts. In his complaint, he urged the Superior Court to declare that "the [c]ontract, including in particular the issue of the validity of the [c]ontract, *is not subject to arbitration,*" and he sought an injunction stopping arbitration "unless and until, *if ever,* the Labor Commissioner determines that he/she has no jurisdiction over the parties' dispute."App. 29 (emphasis added). Ferrer also told the Superior Court: "[I]f ... the Commissioner rules that the [c]ontract is void, Preston may appeal that ruling and have a hearing de novo *before this Court.*"Appellant's App. in No. B188997 (Cal.App.), p. 157, n. 1 (emphasis added).

Nor does Ferrer's current argument-that § 1700.44(a) merely postpones arbitration-withstand examination. Section 1700.44(a) provides for *de novo* review in Superior Court, not elsewhere.[FN6] Arbitration, if it ever occurred following the Labor Commissioner's decision, would likely be long delayed, in contravention of Congress' intent "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible."*Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.,* 460 U.S. 1, 22, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). If Ferrer prevailed in the California courts, moreover, he would no doubt argue

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

that judicial findings of fact and conclusions of law, made after a full and fair *de novo* hearing in court, are binding on the parties and preclude the arbitrator from making any contrary rulings.

> FN6. From Superior Court an appeal lies in the Court of Appeal. Cal. Civ. Proc. Ann. § 904.1(a) (West 2007); Cal. Rule of Court 8.100(a) (Appellate Rules) (West 2007 rev. ed.). Thereafter, the losing party may seek review in the California Supreme Court, Rule 8.500(a)(1) (Appellate Rules), perhaps followed by a petition for a writ of certiorari in this Court, 28 U.S.C. § 1257. Ferrer has not identified a single case holding that California law permits interruption of this chain of appeals to allow the arbitrator to review the Labor Commissioner's decision. See Tr. of Oral Arg. 35.

**\*8** A prime objective of an agreement to arbitrate is to achieve "streamlined proceedings and expeditious results." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 633, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). See also *Allied-Bruce Terminix Cos.,* 513 U.S., at 278;*Southland Corp.,* 465 U.S., at 7. That objective would be frustrated even if Preston could compel arbitration in lieu of *de novo* Superior Court review. Requiring initial reference of the parties' dispute to the Labor Commissioner would, at the least, hinder speedy resolution of the controversy.

Ferrer asks us to overlook the apparent conflict between the arbitration clause and § 1700.44(a) because proceedings before the Labor Commissioner are administrative rather than judicial. Brief for Respondent 40-48. Allowing parties to proceed directly to arbitration, Ferrer contends, would undermine the Labor Commissioner's ability to stay informed of potentially illegal activity, *id.,* at 43, and would deprive artists protected by the TAA of the Labor Commissioner's expertise, *id.,* at 41-43.

In *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), we considered and rejected a similar argument, namely, that arbitration of age discrimination claims would undermine the role of the Equal Employment Opportunity Commission (EEOC) in enforcing federal law. The "mere involvement of an administrative agency in the enforcement of a statute," we held, does not limit private parties' obligation to comply with their arbitration agreements. *Id.,* at 28-29.

Ferrer points to our holding in *EEOC v. Waffle House, Inc.,* 534 U.S. 279, 293-294, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002), that an arbitration agreement signed by an employee who becomes a discrimination complainant does not bar the EEOC from filing an enforcement suit in its own name. He further emphasizes our observation in *Gilmer* that individuals who agreed to arbitrate their discrimination claims would "still be free to file a charge with the EEOC."500 U.S., at 28. Consistent with these decisions, Ferrer argues, the arbitration clause in his contract with Preston leaves undisturbed the Labor Commissioner's independent authority to enforce the TAA. See Brief for Respondent 44-48. And so it may.[FN7] But in proceedings under § 1700.44(a), the Labor Commissioner functions not as an advocate advancing a cause before a tribunal authorized to find the facts and apply the law; instead, the Commissioner serves as impartial arbiter. That role is just what the FAA-governed agreement between Ferrer and Preston reserves for the arbitrator. In contrast, in *Waffle House* and in the *Gilmer* aside Ferrer quotes, the Court addressed the role of an agency, not as adjudicator but as prosecutor, pursuing an enforcement action in its own name or reviewing a discrimination charge to determine whether to initiate judicial proceedings.

> FN7. Enforcement of the parties' arbitration agreement in this case does not displace any independent authority the Labor Commissioner may have to investigate and rectify violations of the TAA. See Brief for Respondent 47 ("[T]he Commissioner has independent investigatory authority and may receive information concerning alleged violations of the TAA from any source."(citation omitted)). See also Tr. of Oral Arg. 13-14.

Finally, it bears repeating that Preston's petition presents precisely and only a question concerning the forum in which the parties' dispute will be heard. See *supra,* at 4."By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an

arbitral ... forum."*Mitsubishi Motors Corp.,* 473 U.S., at 628. So here, Ferrer relinquishes no substantive rights the TAA or other California law may accord him. But under the contract he signed, he cannot escape resolution of those rights in an arbitral forum.

**\*9** In sum, we disapprove the distinction between judicial and administrative proceedings drawn by Ferrer and adopted by the appeals court. When parties agree to arbitrate all questions arising under a contract, the FAA supersedes state laws lodging primary jurisdiction in another forum, whether judicial or administrative.

V

Ferrer's final attempt to distinguish *Buckeye* relies on *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.,* 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989).*Volt* involved a California statute dealing with cases in which "[a] party to [an] arbitration agreement is also a party to a pending court action ... [involving] a third party [not bound by the arbitration agreement], arising out of the same transaction or series of related transactions."Cal.Civ.Proc.Code Ann. § 1281.2(c) (West 2007). To avoid the "possibility of conflicting rulings on a common issue of law or fact," the statute gives the Superior Court authority, *inter alia,* to stay the court proceeding "pending the outcome of the arbitration" or to stay the arbitration "pending the outcome of the court action."*Ibid.*

Volt Information Sciences and Stanford University were parties to a construction contract containing an arbitration clause. When a dispute arose and Volt demanded arbitration, Stanford sued Volt and two other companies involved in the construction project. Those other companies were not parties to the arbitration agreement; Stanford sought indemnification from them in the event that Volt prevailed against Stanford. At Stanford's request, the Superior Court stayed the arbitration. The California Court of Appeal affirmed the stay order. Volt and Stanford incorporated § 1281.2(c) into their agreement, the appeals court held. They did so by stipulating that the contract-otherwise silent on the priority of suits drawing in parties not subject to arbitration-would be governed by California law. *Board of Trustees of Leland Stanford Junior Univ. v. Volt Information Sciences, Inc.,* 240 Cal.Rptr. 558, 561 (1987) (officially depublished). Relying on the Court of Appeal's interpretation of the contract, we held that the FAA did not bar a stay of arbitration pending the resolution of Stanford's Superior Court suit against Volt and the two companies not bound by the arbitration agreement.

Preston and Ferrer's contract also contains a choice-of-law clause, which states that the "agreement shall be governed by the laws of the state of California."App. 17. A separate saving clause provides: "If there is any conflict between this agreement and any present or future law," the law prevails over the contract "to the extent necessary to bring [the contract] within the requirements of said law."*Id.,* at 18.Those contractual terms, according to Ferrer, call for the application of California procedural law, including § 1700.44(a)'s grant of exclusive jurisdiction to the Labor Commissioner.

**\*10** Ferrer's reliance on *Volt* is misplaced for two discrete reasons. First, arbitration was stayed in *Volt* to accommodate litigation involving third parties who were strangers to the arbitration agreement. Nothing in the arbitration agreement addressed the order of proceedings when pending litigation with third parties presented the prospect of inconsistent rulings. We thought it proper, in those circumstances, to recognize state law as the gap filler.

Here, in contrast, the arbitration clause speaks to the matter in controversy; it states that "any dispute ... relating to ... the breach, validity, or legality" of the contract should be arbitrated in accordance with the American Arbitration Association (AAA) rules. App. 18. Both parties are bound by the arbitration agreement; the question of Preston's status as a talent agent relates to the validity or legality of the contract; there is no risk that related litigation will yield conflicting rulings on common issues; and there is no other procedural void for the choice-of-law clause to fill.

Second, we are guided by our more recent decision in *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995). Although the contract in *Volt* provided for "arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association,"489 U.S., at 470, n. 1 (internal quotation marks omitted), Volt never

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

argued that incorporation of those rules trumped the choice-of-law clause contained in the contract, see Brief for Appellant, and Reply Brief, in *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.,* O.T.1987, No. 87-1318.Therefore, neither our decision in *Volt* nor the decision of the California appeals court in that case addressed the import of the contract's incorporation by reference of privately promulgated arbitration rules.

In *Mastrobuono,* we reached that open question while interpreting a contract with both a New York choice-of-law clause and a clause providing for arbitration in accordance with the rules of the National Association of Securities Dealers (NASD).514 U.S., at 58-59.FN8 The "best way to harmonize" the two clauses, we held, was to read the choice-of-law clause "to encompass substantive principles that New York courts would apply, but not to include [New York's] special rules limiting the authority of arbitrators."*Id.,* at 63-64.

> FN8. The question in *Mastrobuono* was whether the arbitrator could award punitive damages. See *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 53-54, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995). New York law prohibited arbitrators, but not courts, from awarding such damages. *Id.,* at 55.The NASD rules, in contrast, authorized "damages and other relief," which, according to a NASD arbitration manual, included punitive damages.*Id.,* at 61 (internal quotation marks omitted). Relying on *Volt,* respondents argued that the choice-of-law clause incorporated into the parties' arbitration agreement New York's ban on arbitral awards of punitive damages. Opposing that argument, petitioners successfully urged that the agreement to arbitrate in accordance with the NASD rules controlled.

Preston and Ferrer's contract, as noted, provides for arbitration in accordance with the AAA rules. App. 18. One of those rules states that "[t]he arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part."AAA, Commercial Arbitration Rules ¶ R-7(b) (2007), online at http://www.adr.org/sp.asp? id=22440 (as visited Feb. 15, 2008, and in Clerk of Court's case file). The incorporation of the AAA rules, and in particular Rule 7(b), weighs against inferring from the choice-of-law clause an understanding shared by Ferrer and Preston that their disputes would be heard, in the first instance, by the Labor Commissioner. Following the guide *Mastrobuono* provides, the "best way to harmonize" the parties' adoption of the AAA rules and their selection of California law is to read the latter to encompass prescriptions governing the substantive rights and obligations of the parties, but not the State's "special rules limiting the authority of arbitrators."514 U.S., at 63-64.

\* \* \*

**\*11** For the reasons stated, the judgment of the California Court of Appeal is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

It is so ordered.

JUSTICE THOMAS, dissenting.

As I have stated on many previous occasions, I believe that the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.* (2000 ed. and Supp. V), does not apply to proceedings in state courts. See *Allied-Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 285-297, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) (THOMAS, J., dissenting); see also *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 449, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006) (same); *Green Tree Financial Corp. v. Bazzle,* 539 U.S. 444, 460, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003) (same); *Doctor's Associates, Inc. v. Casarotto,* 517 U.S. 681, 689, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996) (same). Thus, in state-court proceedings, the FAA cannot displace a state law that delays arbitration until administrative proceedings are completed. Accordingly, I would affirm the judgment of the Court of Appeals.

U.S.,2008.
Preston v. Ferrer
--- S.Ct. ----, 2008 WL 440670 (U.S.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.