1 of 30 DOCUMENTS


Analysis
As of: Feb 21, 2008

**KATHLEEN LOWDEN and JOHN MAHOWALD, individually and on behalf of all the members of the class of persons similarly situated, Plaintiffs-Appellees, v. T-MOBILE USA, INC., a foreign corporation, Defendant-Appellant.**

No. 06-35395

UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

2008 U.S. App. LEXIS 1190

November 7, 2007, Argued and Submitted, Seattle, Washington
January 22, 2008, Filed

**PRIOR HISTORY:** [*1]
Appeal from the United States District Court for the Western District of Washington. D.C. No. CV-05-01482-MJP. Marsha J. Pechman, District Judge, Presiding.
*Lowden v. T-Mobile, USA, Inc.*, 2006 U.S. Dist. LEXIS 94861 (W.D. Wash., Apr. 13, 2006)

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiffs, customers, brought a class action against defendant cell phone company alleging breach of contract and violation of the Washington Consumer Protection Act (CPA). The United States District Court for the Western District of Washington denied the company's motion to compel arbitration. The company appealed.

**OVERVIEW:** The customers' service agreements contained mandatory arbitration provisions with slightly varying terms. The customers alleged that the company had improperly charged them for certain fees beyond the advertised price of service, charged them for calls during a billing period other than that in which the calls were made, and charged them for roaming and other services that should have been free. The company moved to compel arbitration in accordance with the arbitration provisions in the service agreements. The appellate court found that based on recent state case law, the arbitration provision was substantively unconscionable and unenforceable because it expressly prohibited class actions which was invalid under state law. There was no federal preemption because the class action waiver was within a contract of adhesion that governed claims likely to concern only small sums of money that the company was alleged to have fraudulently obtained from the consumers. The Federal Arbitration Act (FAA), *9 U.S.C.S. § 1 et seq.*, proscribed states from giving arbitration special treatment, whether it be positive or negative.

**OUTCOME:** The judgment was affirmed.

**CORE TERMS:** arbitration, class action, arbitration agreements, unconscionable, unconscionability, unenforceable, arbitration provisions, consumer, service agreements, substantively, customer's, compel arbitration, punitive, invalid, preempt, state law, substantive unconscionability, small sums, invalidate, footing, arbitration clause, agreement to arbitrate, enforceability, individually, preempted, wireless, consolidated, collection, mandatory, Federal Arbitration Act FAA

**LexisNexis(R) Headnotes**

*Civil Procedure > Justiciability > Standing > General Overview*
*Civil Procedure > Class Actions > General Overview*
[HN1] A court must be assured that the constitutional standing requirements are satisfied before proceeding to the merits. In a class action, standing is satisfied if at least one named plaintiff meets the requirements.

*Civil Procedure > Alternative Dispute Resolution > Arbitrations > Federal Arbitration Act > Orders to Compel Arbitration*
*Civil Procedure > Alternative Dispute Resolution > Judicial Review*
*Civil Procedure > Appeals > Standards of Review > Clearly Erroneous Review*
*Civil Procedure > Appeals > Standards of Review > De Novo Review*
[HN2] An appellate court reviews de novo the denial of a motion to compel arbitration. An appellate court also reviews de novo a district court's interpretation of the validity and scope of the arbitration clause. An appellate court reviews for clear error a district court's findings of fact.

*Civil Procedure > Alternative Dispute Resolution > Arbitrations > Arbitrability*
*Civil Procedure > Alternative Dispute Resolution > Arbitrations > Federal Arbitration Act > Arbitration Agreements*
[HN3] Congress enacted the Federal Arbitration Act (FAA), *9 U.S.C.S. § 1 et seq.*, more than 80 years ago to advance the federal policy favoring arbitration agreements. Section 2 of the FAA, *9 U.S.C.S. § 2*, states that arbitration agreements made as part of contracts evidencing a transaction involving interstate commerce shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. Where a party attempts to litigate claims covered by a commercial contract containing an arbitration agreement subject to the FAA, the court must determine (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. The United States Court of Appeals for the Ninth Circuit applies state-law principles that govern the formation of contracts to determine whether a valid arbitration agreement exists.

*Contracts Law > Defenses > Public Policy Violations*
[HN4] An agreement that violates public policy may be void and unenforceable.

*Civil Procedure > Class Actions > General Overview*
[HN5] When consumer claims are small but numerous, a class-based remedy is the only effective method to vindicate the public's rights.

*Contracts Law > Defenses > Unconscionability > General Overview*
[HN6] A clause that unilaterally and severely limits the remedies of only one side is substantively unconscionable under Washington law for denying any meaningful remedy.

*Civil Procedure > Alternative Dispute Resolution > Arbitrations > Arbitrability*
*Civil Procedure > Alternative Dispute Resolution > Arbitrations > Federal Arbitration Act > Arbitration Agreements*
[HN7] The Federal Arbitration Act (FAA), *9 U.S.C.S. § 1 et seq.*, provides that contractual arbitration agreements shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. *9 U.S.C.S. § 2.*

*Civil Procedure > Federal & State Interrelationships > Federal Common Law > Preemption*
*Civil Procedure > Alternative Dispute Resolution > Arbitrations > Federal Arbitration Act > Arbitration Agreements*
*Contracts Law > Defenses > Unconscionability > Arbitration Agreements*
[HN8] The United States Supreme Court has interpreted *9 U.S.C.S. § 2* to require that any state legal principle attempting to invalidate an arbitration agreement must be a principle that applies to contracts generally. Generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2. Courts may not, however, invalidate arbitration agreements under state laws applicable only to arbitration provisions. By enacting § 2, Congress precluded states from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed upon the same footing as other contracts.

*Civil Procedure > Alternative Dispute Resolution > Arbitrations > Federal Arbitration Act > Arbitration Agreements*
[HN9] A state law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with the requirement of *9 U.S.C.S. § 2* and is preempted.

*Civil Procedure > Alternative Dispute Resolution > Arbitrations > Federal Arbitration Act > General Overview*
[HN10] Congress simply requires a court to put arbitration clauses on the same footing as other contracts, not make them the special favorites of the law.

*Civil Procedure > Alternative Dispute Resolution > Arbitrations > Arbitrability*
*Contracts Law > Defenses > Unconscionability > Arbitration Agreements*
[HN11] The Washington Supreme Court's unconscionability principles embody grounds to revoke any contract, not just arbitration agreements. The principles apply equally to a contract that permits only individual, not aggregate, litigation in court. Stated another way, the Washington Supreme Court's holding targets not the arbitration context, but rather the class action waiver, which the Washington State Supreme Court has determined would deprive Washington consumers of a right generally applicable to arbitration and litigation contracts alike.

*Civil Procedure > Alternative Dispute Resolution > Arbitrations > Arbitrability*
*Civil Procedure > Alternative Dispute Resolution > Arbitrations > Federal Arbitration Act > Arbitration Agreements*
[HN12] *9 U.S.C.S. § 2* embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts. The Federal Arbitration Act (FAA), *9 U.S.C.S. § 1 et seq.*, proscribes states from giving arbitration special treatment, whether it be positive or negative.

**COUNSEL:** Stephen M. Rummage, Davis Wright Tremaine LLP, Seattle, Washington, for the defendant-appellant.

David E. Breskin, and Daniel F. Johnson, Breskin Johnson & Townsend, Seattle, Washington, for the plaintiffs-appellees.

**JUDGES:** Before: William C. Canby, Jr., Susan P. Graber, and Ronald M. Gould, Circuit Judges.

**OPINION BY:** Ronald M. Gould

**OPINION**

GOULD, Circuit Judge:

I

The issues on appeal are whether the arbitration provisions in Defendant T-Mobile's service agreements with two of its customers are enforceable under Washington state law and, if not, whether the state law is preempted by the Federal Arbitration Act ("FAA"), *9 U.S.C. §§ 1-16*. After two consumers of T-Mobile's cellular phone service brought a class action against T-Mobile in state court for breach of contract and violation of the Washington Consumer Protection Act (the "CPA"), *Wash. Rev. Code § 19.86.010-19.86.920*, T-Mobile removed the case to federal district court and moved to compel arbitration per its service agreements. The district court denied T-Mobile's motion to compel arbitration, holding [*2] that the arbitration agreements were tainted by substantive unconscionability and thus were unenforceable. We conclude that the Washington State Supreme Court's decision in *Scott v. Cingular Wireless, 160 Wn.2d 843, 161 P.3d 1000 (Wash. 2007)*, establishes that T-Mobile's arbitration provision is substantively unconscionable and unenforceable under Washington state law, and that there is no federal preemption in light of our decision in *Shroyer v. New Cingular Wireless Servs., Inc., 498 F.3d 976 (9th Cir. 2007)*. We therefore affirm.

II

The two named Plaintiffs, Kathleen Lowden and John Mahowald, are or were T-Mobile customers whose service agreements contained mandatory arbitration provisions with slightly varying terms. Plaintiffs sued T-Mobile, alleging that the service provider had improperly charged them for certain fees beyond the advertised price of service, charged them for calls during a billing period other than that in which the calls were made, and charged them for roaming and other services that should have been free. T-Mobile moved to compel

arbitration in accord with the arbitration provisions in Lowden's and Mahowald's service agreements.

In Lowden's service agreement, [1] immediately above [*3] the signature line, the following provision appeared: "Disputes are subject to mandatory arbitration pursuant to paragraph 19. See Reverse." Paragraph 19 stated:

> **Mandatory Arbitration.** Any controversy, claim or dispute between you and Company arising under this Agreement, excluding actions by Company to collect unpaid charges, shall be submitted to final, binding arbitration under the auspices of the American Arbitration Association ("AAA") pursuant to its published Wireless Industry Arbitration Rules, incorporated herein by this reference and available by calling the AAA at 800-778-7879 or visiting its web site at http://www.adr.org. Notice of an arbitration commenced by you shall be served on Company's registered agent. All claims shall be arbitrated individually and you agree that no person shall bring a punitive [sic] or certified class action to arbitration or seek to consolidate or bring previously consolidated claims in arbitration. The arbitrator shall have no authority to award punitive damages. YOU ACKNOWLEDGE THAT THIS ARBITRATION PROVISION CONSTITUTES A WAIVER OF ANY RIGHT TO A JURY TRIAL.

Those provisions were also in the Terms & Conditions that accompanied the phone delivered [*4] to Lowden and that stated that, "By activating Service with Company, you acknowledge that you have read and agree to the terms of this Agreement." T-Mobile asserts that, had Lowden or her then-husband disagreed with those terms, they could have canceled service and thereby avoided arbitration.

> 1  [HN1] We must assure ourselves that the constitutional standing requirements are satisfied before proceeding to the merits. *United States v. Hays*, 515 U.S. 737, 742, 115 S. Ct. 2431, 132 L. Ed. 2d 635 (1995); *Casey v. Lewis*, 4 F.3d 1516, 1524 (9th Cir. 1993). Although the district court and T-Mobile suggest that Lowden may not have standing to pursue her claims, we need not reach this issue. In a class action, standing is satisfied if at least one named plaintiff meets the requirements. *See Armstrong v. Davis*, 275 F.3d 849, 860 (9th Cir. 2001). Here, the parties do not dispute that Mahowald has standing from his alleged injury in fact that is both traceable to T-Mobile's alleged conduct and likely to be redressed by the damages that Mahowald seeks. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (discussing Article III standing requirements).

The service agreement in effect when Mahowald signed up with T-Mobile was slightly [*5] different in substance. While containing an almost identical provision above the signature line, the provision on the reverse stated:

> **Mandatory Arbitration; Dispute Resolution.** ANY CLAIM OR DISPUTE BETWEEN YOU AND US ARISING UNDER OR IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, AND/OR OUR PROVISION TO YOU OF GOODS, SERVICE, OR UNITS, SHALL BE SUBMITTED TO FINAL, BINDING ARBITRATION WITH THE AMERICAN ARBITRATION ASSOCIATION ("AAA") PURSUANT TO ITS PUBLISHED WIRELESS INDUSTRY ASSOCIATION RULES, INCORPORATED HEREIN BY THIS REFERENCE AND AVAILABLE BY CALLING THE AAA AT 800-778-7879 OR VISITING ITS WEBSITE AT http://www.adr.org. Any arbitration proceeding shall be subject to the choice of law provision in Paragraph 22. Notice of an arbitration commenced by you must be served on our registered agent. No party may act as a representative of other claimants or potential claimants in any dispute, and two or more individuals' disputes may not be consolidated or otherwise determined in one proceeding. An arbitrator may not award relief in excess of or inconsistent with the

provisions of the Agreement, order consolidation or arbitration on a class wide basis, or award lost profits, punitive, [*6] incidental, or consequential damages or any other damages other than the prevailing party's direct damages, except that the arbitrator may order injunctive or declaratory relief pursuant to applicable law. All administrative expenses of an arbitration will be equally divided between you and Us, except that if the claim is less that $ 1,000, you will be obligated to pay only $ 25. If the claim is less than $ 25, We will pay all administrative expenses. Each party agrees to pay the fees and costs of its own counsel, experts, and witnesses at arbitration. Subject to the foregoing limitations on consolidated or classwide proceedings, you agree, however, that if you fail to timely pay amounts due, We may assign your account for collection and the collection agency may pursue such claims in court limited strictly to the collection of the past due debt and any interest or cost of collection permitted by law or the Agreement.

YOU ACKNOWLEDGE AND AGREE THAT THIS ARBITRATION PROVISION CONSTITUTES A WAIVER OF ANY RIGHT TO LOST PROFITS, PUNITIVE, SPECIAL, INDIRECT, INCIDENTAL, CONSEQUENTIAL OR TREBLE DAMAGES ("DISCLAIMED DAMAGES"), A JURY TRIAL, OR PARTICIPATION AS A PLAINTIFF OR AS A CLASS MEMBER [*7] IN A CLASS ACTION. IF FOR ANY REASON THIS ARBITRATION CLAUSE IS DEEMED INAPPLICABLE OR INVALID, YOU AND WE BOTH WAIVE ANY CLAIMS TO RECOVER DISCLAIMED DAMAGES AND ANY RIGHT TO PURSUE, OR PARTICIPATE AS A PLAINTIFF OR A CLASS MEMBER IN, CLAIMS ON A CLASSWIDE, CONSOLIDATED, OR REPRESENTATIVE BASIS.

As in Lowden's case, the Terms & Conditions accompanying the phones delivered to Mahowald contained the same arbitration provision, along with a similar warning that service activation constituted an agreement to be bound thereby.

Relying on those arbitration provisions, T-Mobile brought its motion to compel individual arbitration. The district court denied the motion, holding that T-Mobile's arbitration provisions were tainted by substantive unconscionability and were therefore unenforceable.

The district court first determined that each named Plaintiff had an agreement. Then, after dismissing Plaintiffs' argument that the agreements as a whole were procedurally unconscionable, the court assessed the agreements for substantive unconscionability. The court preliminarily noted that the Washington State Supreme Court was considering *Scott, 160 Wn.2d 843, 161 P.3d 1000*, which, the court stated, "places squarely [*8] at issue the question of whether class action prohibitions contained in arbitration agreements are unconscionable under Washington law and therefore unenforceable." However, at the urging of the parties to decide the issue nonetheless, the district court declined to stay its ruling pending *Scott*. The district court next turned to the unconscionability of each contested provision within the two arbitration agreements.

The district court held that the prohibition on class relief and the limitation on punitive damages, found in both agreements, were each substantively unconscionable. The district court also concluded that Mahowald's attorney fees provision was substantively unconscionable. Although the court rejected the arguments that the remaining provisions were invalid, it nonetheless declared both arbitration agreements to be unenforceable, despite the severability provisions, because they were "tainted with substantive unconscionability." The district court denied T-Mobile's motion to compel arbitration and entered a stay so that T-Mobile could bring the present interlocutory appeal. We have jurisdiction of this appeal pursuant to *9 U.S.C. § 16(a)(1)(A)* and *(B)*.

III

[HN2] We review *de novo* [*9] the denial of a motion to compel arbitration. *Ticknor v. Choice Hotels Int'l, Inc., 265 F.3d 931, 936 (9th Cir. 2001)*. We also review *de novo* the district court's interpretation of the

validity and scope of the arbitration clause. *Id.* We review for clear error the district court's findings of fact. *Bradley v. Harris Research, Inc., 275 F.3d 884, 888 (9th Cir. 2001).*

## IV

T-Mobile urges us to compel Plaintiffs to arbitrate in accord with the terms of the agreement. T-Mobile argues that the service agreements' terms and the Federal Arbitration Act mandate this result. [HN3] Congress enacted the FAA more than eighty years ago to advance the federal policy favoring arbitration agreements. *Section 2* states that arbitration agreements made as part of contracts "evidencing a transaction involving [interstate] commerce . . . shall be valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract.*" *9 U.S.C. § 2* (emphasis added). Where, as here, a party attempts to litigate claims covered by a commercial contract containing an arbitration agreement subject to the FAA, the court must determine "(1) whether a valid agreement to arbitrate exists [*10] and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000).* We apply state-law principles that govern the formation of contracts to determine whether a valid arbitration agreement exists. *First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995).*

### A

We first address whether, under Washington state contract law, a valid agreement to arbitrate exists. This requires us to consider what is unconscionable and unenforceable under Washington state law. After the district court denied T-Mobile's motion to compel arbitration, the Washington State Supreme Court decided *Scott v. Cingular Wireless, 160 Wn.2d 843, 161 P.3d 1000.* In that case, the Washington State Supreme Court considered the enforceability of an arbitration provision within a service agreement binding Cingular Wireless customers, and held that the agreement was unconscionable and unenforceable under Washington law. *Id. at 1002-03.* As in T-Mobile's case, Cingular's arbitration provision contained a clause barring class action litigation or arbitration. [2] *Id. at 1003.*

> 2  The remaining Cingular provisions differed slightly from T-Mobile's provisions. [*11] For instance, Cingular's agreement provided that Cingular would "pay the filing, administrator, and arbitration fees unless the customer's claim was found to be frivolous; that Cingular would reimburse the customer for reasonable attorney fees and expenses incurred for the arbitration (provided that the customer recovered at least the demand amount); and that the arbitration would take place in the county of the customer's billing address." *Scott, 161 P.3d at 1003.* The agreement had also initially limited punitive damages, but Cingular subsequently removed that limitation. *Id.*

The Washington State Supreme Court initially noted that the plaintiffs had submitted a declaration from the former division chief for consumer protection in the Washington State Attorney General's office, declaring that that office "did not have sufficient resources to respond to many individual cases and often 'relied on . . . private class action to correct the deceptive or unfair industry practice and to reimburse consumers for their losses.' " *Id. at 1004.* The court also acknowledged the clear split of authority on the enforceability of class action waivers in arbitration clauses. *Id.*

Turning to the class [*12] action waiver's enforceability, the court first observed that "[a]n [HN4] agreement that violates public policy may be void and unenforceable." *Id. at 1005* (citing *Restatement (Second) of Contracts § 178* (1981)). The court then discussed Washington's "state policy favoring aggregation of small claims for purposes of efficiency, deterrence, and access to justice." *Id.* It noted that [HN5] "when consumer claims are small but numerous, a class-based remedy is the only effective method to vindicate the public's rights." *Id.*

The court held that Cingular's particular class action waiver was unconscionable. The court discussed the public policies that class actions advance, declaring that, "without class actions, consumers would have far less ability to vindicate the CPA." *Id. at 1006.* It also stated that the class action waiver clause was "an unconscionable violation of [Washington's] policy to protect the public and foster fair and honest competition because it drastically forestall[ed] attempts to vindicate consumer rights" and was, therefore, "substantively unconscionable." *Id.* (internal quotation marks and citation omitted).

The court then noted that the agreement was

additionally unconscionable because [*13] it "in effect . . . exculpate[d] Cingular from legal liability for any wrong where the cost of pursuit outweighs the potential amount of recovery." *Id. at 1007.* It asserted that the availability of a class action mechanism would "transform[ ] a merely theoretically possible remedy into a real one." *Id.* The court reasoned that merely shifting the cost of arbitration to Cingular did not seem likely to "make it worth the time, energy, and stress to pursue such individually small claims," especially when attorney fees would be awarded only if the plaintiffs recovered at least the full amount of their demand. *Id.*

The court reasoned that, because the clause barred any class action, in or outside arbitration, it functioned to "exculpate the drafter from liability for a broad range of undefined wrongful conduct, including potentially intentional wrongful conduct, and that such exculpation clauses are substantively unconscionable." *Id. at 1008.* The court concluded: "[HN6] A clause that unilaterally and severely limits the remedies of only one side is substantively unconscionable under Washington law for denying any meaningful remedy." *Id.*

The Cingular class action waiver provision that *Scott* declares [*14] to be unenforceable is indistinguishable in all material respects from T-Mobile's class action waiver. The Washington State Supreme Court's holding in *Scott* requires us to determine that T-Mobile's class action waiver is substantively unconscionable, and unenforceable, under Washington law. T-Mobile's class action waiver, like Cingular's, bars class actions in both litigation and arbitration, and the Washington State Supreme Court's unconscionability analysis in *Scott* applies as forcefully to T-Mobile's agreement.

We need not reach whether T-Mobile's remaining provisions are unconscionable. T-Mobile has expressly stated that it does not consent to class action arbitration and that, as a result, if we deem the class action waiver clause unconscionable under Washington law, the entire arbitration provision should be rendered unenforceable. Having determined that the (nonseverable) class action waiver is invalid under Washington law, we hold that T-Mobile's arbitration agreement is unenforceable under Washington law.

B

We next consider T-Mobile's argument that the Federal Arbitration Act preempts Washington law from thus rendering T-Mobile's class action waiver unconscionable, and thereby [*15] rendering unenforceable its arbitration agreement. [HN7] The FAA provides that contractual arbitration agreements "shall be valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2* (emphasis added).

[HN8] The United States Supreme Court has interpreted this statute to require that any state legal principle attempting to invalidate an arbitration agreement must be a principle that applies to contracts generally. In *Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 116 S. Ct. 1652, 134 L. Ed. 2d 902 (1996),* for example, the Supreme Court stated:

> "[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening *§ 2.* Courts may not, however, invalidate arbitration agreements under state laws applicable *only* to arbitration provisions. By enacting *§ 2,* we have several times said, Congress precluded States from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed 'upon the same footing as other contracts.' "

*Id. at 687* (citations omitted). *See also Southland Corp. v. Keating, 465 U.S. 1, 16 n.11, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984).*

T-Mobile argues [*16] that the FAA preempts Washington's determination that its class action waiver is unconscionable. T-Mobile asserts that the Washington State Supreme Court's holding in *Scott* that Cingular's class action waiver is unconscionable is not a contractual rule of general applicability under the FAA.

We recently decided *Shroyer v. New Cingular Wireless Servs., Inc., 498 F.3d 976.* In *Shroyer,* we considered the enforceability of another Cingular arbitration agreement containing a class action waiver. We determined not only that the agreement was unconscionable under California law, but also that the FAA did not preempt California law on this issue. *Id. at 987.* We first surveyed California law on

unconscionability, and in particular the test the California Supreme Court set forth in *Discover Bank v. Superior Court of Los Angeles, 36 Cal. 4th 148, 30 Cal. Rptr. 3d 76, 113 P.3d 1100 (Cal. 2005)*, requiring a finding of both procedural and substantive unconscionability to render a provision invalid. *Shroyer, 498 F.3d at 981-82* (citing *Discover Bank, 113 P.3d at 1108*). We quoted *Discover Bank*'s reasoning:

> "We do not hold that all class action waivers are necessarily unconscionable. But when the waiver is found in a consumer contract of adhesion [*17] in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money, then, at least to the extent the obligation at issue is governed by California law, the waiver becomes in practice the exemption of the party 'from responsibility for [its] own fraud, or willful injury to the person or property of another.' (Civ. Code, § 1668.) Under these circumstances, such waivers are unconscionable under California law and should not be enforced."

*Id. at 983* (alteration in *Shroyer*) (quoting *Discover Bank, 113 P.3d at 1100*).

Applying *Discover Bank*'s test, we concluded that Cingular's class action waiver was unconscionable under California law because the agreement was of the type that *Discover Bank* foreclosed--a contract of adhesion in a setting involving disputes between contracting parties that predictably concerned only small amounts of damages and where, according to the *Shroyer* plaintiffs, the party with the superior bargaining power (i.e., the wireless provider) had [*18] carried out a fraudulent scheme deliberately to cheat large numbers of consumers out of individually small sums of money. *Id. at 983-84.* We observed that in *Discover Bank* the California Supreme Court had been concerned "that when the potential for individual gain is small, very few plaintiffs, if any, will pursue individual arbitration or litigation, which greatly reduces the aggregate liability a company faces when it has exacted small sums from millions of consumers." *Id. at 986* (emphasis omitted). As in T-Mobile's present case, the invalidating of Cingular's class action waiver rendered the entire arbitration agreement unenforceable. *Id. at 986-87.*

Having decided that the agreement was unenforceable under California law, we next considered Cingular's argument that the FAA preempted California law. Cingular had argued that *Discover Bank*'s unconscionability provisions subjected arbitration agreements to special scrutiny. *Id. at 987.* The United States Supreme Court had previously observed that " '[a] state-law [HN9] principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with th[e] requirement of § 2' and is preempted." *Id.* (first [*19] alteration in original) (quoting *Perry v. Thomas, 482 U.S. 483, 492 n.9, 107 S. Ct. 2520, 96 L. Ed. 2d 426 (1987))*. We held, however, that such a principle was not at issue in *Shroyer*; rather, the California principle of unconscionability was a generally applicable contract defense, which could be applied to invalidate an arbitration agreement without contravening the FAA. *Id. at 987-88.* We further commented that we had previously rejected Cingular's argument that California's unconscionability doctrine was preempted by the FAA and that *Discover Bank*'s statement that the doctrine applied to contracts generally, not only to arbitration agreements, affirmed that California law on this point did not contravene the FAA. *Id. at 988.*

We rejected Cingular's argument that application of California's unconscionability principles would obstruct Congress's purposes in enacting the FAA. Congress's primary purpose behind the FAA requires that we enforce the terms of arbitration agreements like other contracts, not more so. *Id. at 989.* We reasoned: "To hold that California unconscionability law may be applied only to invalidate a class action waiver, but not a class arbitration waiver, would place arbitration agreements on a different [*20] footing than other contracts, in direct contravention of th[e] principal purpose of the [FAA]." *Id. at 990* (citing *Scott, 161 P.3d at 1008* ("[HN10] Congress simply requires us to put arbitration clauses on the same footing as other contracts, not make them the special favorites of the law.")).

We also rejected Cingular's suggestions that the FAA implicitly exalted individual arbitration but disfavored

class arbitration, *id. at 990*, and that class arbitration would reduce arbitration's alleged general efficiency, *id. at 990-92*. We concluded that the FAA did not preempt California unconscionability principles from invalidating Cingular's class action waiver and therefore its arbitration agreement. *Id. at 993*.

The invalid class action waiver in *Shroyer* is, in all material respects, identical to T-Mobile's waiver. As in *Shroyer*, T-Mobile's class action waiver lies within a contract of adhesion governing claims likely to concern only small sums of money that the defendant is alleged to have fraudulently obtained from the plaintiffs. Most significantly, the Washington State Supreme Court grounded its unconscionability determination in *Scott* in concerns almost identical to those underpinning California's [*21] unconscionability determination in *Discover Bank*. Thus *Shroyer*'s conclusion with respect to California unconscionability law applies equally here: Just as the FAA does not preempt California's unconscionability law, it does not preempt Washington's unconscionability law. As we explained in *Shroyer*, the California Supreme Court sought in *Discover Bank* to remedy its concern that, when the potential for individual gain is small, few if any plaintiffs will pursue either individual arbitration *or* litigation, thereby greatly reducing the aggregate liability a company faces when it has exacted small sums from millions. Those are the same concerns that underlie the Washington State Supreme Court's holding in *Scott*.

We reject T-Mobile's argument that *Scott*'s unconscionability principles do not apply in all contracts--in other words, that they treat arbitration agreements differently than other contracts. In *Shroyer*, we rejected Cingular's analogous argument, notwithstanding the California Supreme Court's recognition in *Discover Bank* that it was not holding that all class action waivers are necessarily unconscionable, but rather only those in certain circumstances. As *Shroyer*'s holding suggests, [*22] [HN11] *Scott*'s unconscionability principles embody grounds to revoke any contract, not just arbitration agreements. The *Scott* principles apply equally to a contract that permits only individual, not aggregate, litigation in court. Stated another way, the *Scott* holding targets not the arbitration context, but rather the class action waiver, which the Washington State Supreme Court has determined would deprive Washington consumers of a right generally applicable to arbitration and litigation contracts alike and which only happens to be within an arbitration agreement in this case. [3]

> 3 We also decline T-Mobile's invitation to follow the Third Circuit's holding in *Gay v. CreditInform*, No. 06-4036 2007 U.S. App. LEXIS 29302 (3d Cir. Dec. 19, 2007). Unlike the Third Circuit's conclusion as to the applicable state law in *Gay*, we determine that the Washington Supreme Court in *Scott* does not hold "that an agreement to arbitrate may be unconscionable simply because it is an agreement to arbitrate." *2007 U.S. App. LEXIS 29302 at *63*.

Finally, T-Mobile's claim, in essence, that the FAA requires a state to enforce a class action waiver merely because it lies within an arbitration agreement--whereas a state would be free to find [*23] the same waiver to be invalid in the litigation context--contravenes the FAA's mandate of an "equal footing" between arbitration and other forms of dispute resolution. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443, 126 S. Ct. 1204, 163 L. Ed. 2d 1038 (2006) ("[HN12] Section 2 embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts . . . ."). The FAA proscribes states from giving arbitration special treatment, whether it be positive or negative.

**AFFIRMED.**